**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **In Re:** | § § | |
| **900 CESAR CHAVEZ, LLC,** *et al.*, | § § | **CASE NO. 19-11527-tmd** |
| **DEBTORS.** | § § § | **CHAPTER 11** |
| | § § | **(Request for Joint Administration Pending)** |

**OBJECTION OF ATX LENDER 5, LLC TO DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE SALE OF 7400 SOUTH CONGRESS AND GRANTING RELATED RELIEF**

ATX LENDER 5, LLC ("ATX") files this *Objection* (the "Objection") to the *Debtors' Motion for Entry of an Order Authorizing and Approving the Sale of 7400 South Congress and Granting Related Relief* [D.I. 6] (the "Motion"), which was filed in the above-styled, Chapter 11 bankruptcy cases (the "Bankruptcy Cases") on November 4, 2019, and would show the Court as follows:

## I.  PRELIMINARY STATEMENT

1. ATX holds a fully perfected lien and deed of trust against, among other assets, the tract of undeveloped property located at 7400 South Congress Avenue, Austin, Texas (the "South Congress Property"). ATX opposes the Debtors'[1] Motion to sell the South Congress Property on barely forty-eight (48) hours' notice. The problems with the proposed sale (the "Sale") to Rastegar Property Company, LLC ("Rastegar") are legion. Among other things, (1) the Sale is based on an erroneous and incomplete contract that, on its face, should have been consummated months ago, (2) the Debtors do not appear to have hired a broker or marketed the South Congress Property according to any sort of fair and open process, (3) the Sale is to an insider (Rastegar)

---

[1] All capitalized terms not otherwise defined in this Objection have the meanings ascribed to them in the Motion.

who has submitted no evidence that it has the financial capability—or even the willingness—to close, (4) the Sale will be free and clear of liens under Bankruptcy Code § 363(f) even though the proposed sale price does not exceed the value of all the liens against the South Congress Property, and (5) the Sale is sought on an emergency basis just two (2) business days after these Bankruptcy Cases were filed even though the Debtors have no proof of any emergency. ATX requests that this Court deny the Sale outright, or, in the alternative, continue the hearing on the Motion so that ATX can conduct discovery of, among other parties, the Debtors and Rastegar regarding the proposed Sale and the Motion.

## II. BACKGROUND FACTS

2. On September 21, 2018, the Debtors executed a *Promissory Note* (the "Note") evidencing a $22,932,250 commercial real estate loan (the "Loan") in favor of U.S. Real Estate Credit Holdings III-A, LP ("Original Lender").[2] The Loan was memorialized in, among other things, a *Loan Agreement* (the "Loan Agreement") between the Original Lender and the Debtors.[3] The Loan is further secured by certain real property, together with improvements thereon, located at: (1) 504 East 5th Street in Austin, Texas, (2) 900 and 904 East Cesar Chavez Street in Austin, Texas, (3) 905 and 907 East Cesar Chavez Street in Austin, Texas, and (4) the South Congress Property located at 7400 South Congress Avenue in Austin, Texas (collectively, the "Properties"). The Debtors granted the Original Lender a lien, deed of trust, and security interest against the Properties pursuant to that *Deed of Trust, Security Agreement, and Financing Statement,* dated September 21, 2018 (the "Deed of Trust").[4] The Deed of Trust was recorded in the real property records of Travis County, Texas ("Real Property Records") on September 25, 2018 under

---

[2] A true and correct copy of the Note is attached as Exhibit 1. The Original Lender subsequently assigned all its rights under the Loan Documents (as defined below) to an affiliate, U.S. Real Estate Credit Holdings III, LP. ("USRECH-III"). For purposes of this Objection, any references to the Original Lender include USRECH-III.
[3] A true and correct copy of the Loan Agreement is attached as Exhibit 2.
[4] A true and correct copy of the Deed of Trust is attached as Exhibit 3.

81623055v.2

Recording No. 2018151772. The Debtors also provided the Original Lender with an *Assignment of Leases and Rents*, dated September 21, 2018 (the "Rental Assignment"), assigning all rents, proceeds, deposits, agreements, and other amounts associated with the Properties to the Original Lender.[5] The Rental Assignment was recorded in the Real Property Records on September 25, 2018 under Recording No. 2018151773.

3. On or about September 24, 2019, the Original Lender and ATX entered into the *Assignment and Assumption Agreement*, dated September 24, 2019 (the "Assumption Agreement"), under which, *inter alia*, the Original Lender assigned all its rights, title, and interest under the Loan Documents and in connection with the Loan to ATX. In addition, the Original Lender also executed both (i) an *Allonge* (the "Allonge") to the Note in ATX's favor and (ii) an *Assignment of Mortgage/Deed of Trust and Assignment of Rents and Leases,* dated September 24, 2019 (the "Deed of Trust Assignment") whereby, *inter alia*, the Deed of Trust, the Rental Assignment, and all other liens, deed-of-trust rights, and assignments previously held by the Original Lender were assigned to ATX.[6] The Deed of Trust Assignment was recorded in the Real Property Records on September 25, 2019 under Recording No. 2019148483.

4. By the time the Assignment Documents were executed, the Debtors had been in default for months. In that regard, the Debtors failed to make two payments that were due in July 2019: (1) the monthly principal and interest payment due on July 1, 2019, and (2) a required $550,000 principal pre-payment due on July 6, 2019 for failure to satisfy certain construction covenants. Thereafter, the Original Lender sent the Debtors, Mr. Nate Paul ("Mr. Paul"), and the

---

[5] A true and correct copy of the Rental Assignment is attached as Exhibit 4. The Note, the Loan Agreement, the Deed of Trust, the Rental Assignment, and all other documents, agreements, and instruments executed in connection with the Loan are collectively referred to herein as the "Loan Documents".

[6] True and correct copies of the Assumption Agreement, the Allonge, and the Deed of Trust Assignment are attached as Exhibit 5, Exhibit 6, and Exhibit 7, respectively. The Assumption Agreement, the Allonge, the Deed of Trust Assignment, and all other related documents and instruments are collectively referred to herein as the "Assignment Documents". The Loan Documents and the Assignment Documents together are referred to as the "Credit Documents".

Debtors' legal counsel several notices of default, as well as a notice accelerating all principal and interest due under the Note. On September 23, 2019, a month after all amounts due under the Note had been accelerated, Mr. Paul admitted that the Debtors were in default, stating that the Debtors hoped to "get [the] loan back in good standing," while offering to pay only a fraction of the amounts that were due.[7]

5. In the weeks that followed, and in response to requests from Mr. Brian Elliott, in-house corporate counsel to World Class Capital Group ("WCCG"), ATX provided the Debtors with current payoff statements clearly stating the amount due under the Note. On October 10, 2019, with the events of default uncured, ATX provided the Debtors with a *Notice of Substitute Trustee's Sale* of the non-judicial foreclosure sale scheduled for November 5, 2019 (the "Notice of Foreclosure Sale"). This Notice of Foreclosure Sale was provided well in advance of the 21-day advance notice required under Texas law.

6. On October 31, 2019, the Debtors filed a lawsuit against ATX styled *900 Cesar Chavez, LLC, 905 Cesar Chavez, LLC, 5th and Red River, LLC, and 7400 South Congress, LLC v. ATX Lender 5, LLC*, Cause No. D-1-GN-19-007562 (the "State Court Lawsuit") in the 345th Judicial District Court of Travis County, Texas (the "State Court"). Among other things, the Debtors requested a temporary restraining order ("TRO") against ATX's effort to foreclose the Properties on the theory that ATX owed a fiduciary duty to the Debtors as their lender. At a hearing on the TRO request on November 1, 2019 (the "TRO Hearing"), the presiding judge denied the requested TRO.[8]

7. The Debtors filed these Bankruptcy Cases on November 4, 2019—one (1) business day after the TRO was denied. The unpaid principal amount currently due on the Note is

---

[7] A true and correct copy of the September 23, 2019 e-mail is attached as Exhibit 8.
[8] A true and correct copy of the Order Denying the Application for Temporary Restraining Order is attached as Exhibit 9.

$17,858,636.54 (which amount does not include unpaid interest (including default interest), fees, charges, and other amounts properly due under the Credit Documents).

### III. OBJECTION AND AUTHORITIES IN SUPPORT

**A. The Debtors Have Not Provided a Sound Business Reason for the Proposed Sale As Required by Bankruptcy Code § 363(b).**

8. The Debtors seek to sell the South Congress Property outside the ordinary course of business pursuant to Bankruptcy Code § 363(b). 11 U.S.C. § 363(b). Section 363(b) provides, in part, that a debtor-in-possession "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate…." *Id.* This authority under § 363(b) is not unlimited, however. Before a court may approve a sale outside the ordinary course under § 363(b), a debtor-in-possession must provide an "articulated business justification" for the sale. *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Airlines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986); *In re 9 Houston LLC*, 578 B.R. 600, 610-11 (Bankr. S.D. Tex. 2017) (citing *Cont'l Airlines*). The Fifth Circuit outlines certain criteria in *In re Continental Airlines, Inc.* that the bankruptcy court may consider when deciding whether the debtor-in-possession has provided the required business justification for a proposed sale:

> [T]he bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike. He might, for example, look to such relevant factors as the proportionate value of the asset to the estate as a whole, the amount of elapsed time since the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasing or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

*Cont'l Airlines,* 780 F.2d at 1226 (quoting *Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)). Ultimately, the court must satisfy itself that a sound business reason exists for the sale and that the sale is in the best interests of the

81623055v.2

debtors' bankruptcy estate. *9 Houston*, 578 B.R. at 611.

9. Even the briefest survey of the *Continental Airline* factors compels the conclusion that the Debtors have not articulated the "required business justification" necessary to sell the South Congress Property under the circumstances outlined in the Motion. *See Cont'l Airlines,* 780 F.2d at 1226. Numerous problems afflict the Sale that, taken together, suggest that the Sale is not in the bankruptcy estates' best interests.

10. The first set of issues all appear on the face of the proposed sale contract (the "Sale Contract") itself. These problems demonstrate that this Sale Contract does not represent a good-faith proposal to sell the South Congress Property. (The Sale Contract is attached as Exhibit "1" to the Motion). For instance, Sections 7A, 12, and 22.D.5 all refer to an attached addendum that is not, in fact, attached to the Sale Contract. The Sale Contract is therefore incomplete. Second, the Sale Contract continually refers to an "effective date" by which it supposedly becomes operative (*see, e.g.*, Section 24 of the Sale Contract), but neither Debtor 7400 South Congress nor Rastegar appears to have dated the Sale Contract as required to give this "effective date" term any meaning. Thus, the "Effective Date" of the Sale Contract is uncertain. Third, the Sale Contract itself is the wrong sort of contract for the sale of the South Congress Property. The Sale Contract is a Texas Association of Realtors ("TEA") Commercial Contract for the sale of Improved Property. Yet, the South Congress Property is an unimproved piece of raw land. The Debtors should have instead used the TEA contract for unimproved commercial properties. Fourth, and most significant, Section 26—the final numbered paragraph of the Sale Contract—states on its face that the Sale Contract lapses and becomes ***"null and void"*** on May 16, 2019 if not accepted prior to that time:

> **26. CONTRACT AS OFFER:** The execution of this contract by the first party constitutes an offer to buy or sell the Property. Unless the other party accepts the offer by 5:00 p.m., in the time zone in which the Property is located, on <u>May 16, 2019</u>. the offer will lapse and become null and void.
>
> **READ THIS CONTRACT CAREFULLY.** The brokers and agents make no representation or recommendation as to the legal sufficiency, legal effect, or tax consequences of this document or transaction. **CONSULT your attorney BEFORE signing.**
>
> Seller: 7400 South Congress, LLC        Buyer: Rastegar Property Company, LLC
> *Nate Paul*
> 1B2F6F5CE0D64A7...                      EB978839DD9A43D...

Section 26's requirement raises a fundamental issue about the Sale. If the Sale Contract had been executed prior to May 16, 2019 as Section 26 requires, then the Sale should have closed no later than mid-June 2019 because the Sale Contract also contains both a fifteen-day feasibility period and a fifteen-day closing requirement following that feasibility period. (*See* Motion, D.I. 6, Exhibit 1, §§ 7.B., 15.A). Thus, if the Debtors propose to use this same Sale Contract without any modifications, then the Sale should have already closed months ago—indeed, it is impossible under this particular Sale Contract for the Sale *not* to have been consummated already. On its face, then, this Sale Contract appears to be a sham. At the very least, ATX is entitled to discovery regarding the Sale Contract, including whether the Sale did, in fact, close in mid-June 2016, whether the earnest money has gone hard, and whether Rastegar can still walk away from the Sale. ATX should also receive a complete copy of the Sale Contract, including all missing addendums, amendments, and related documents.

11.     Second, the Motion provides no evidence that the Debtors marketed the South Congress Property to other third parties by hiring a reputable broker or that the Debtors facilitated any sort of competitive bidding for the South Congress Property. Many courts employing the *Continental Airlines* analysis have looked to the absence of competitive bidding as a reason to deny a sale's approval under Bankruptcy Code § 363(b). *E.g., In re Gulf Coast Oil Corp.*, 404

81623055v.2

B.R. 407 (Bankr. S.D. Tex. 2009); *9 Houston*, 578 B.R. at 614. The lack of evidence of a competitive marketing process is especially troublesome here. As even the Debtors concede, Rastegar was founded by Mr. Ari Rastegar ("Mr. Rastegar"), a former employee of WCCG and a personal friend of WCCG's founder, Mr. Paul. (Motion, D.I., 6, p. 4 n.3) ("Ari Rastegar, Founder of Purchaser, was an employee of WCCG from 2013 to 2014. Since departing WCCG, Mr. Rastegar has transacted with WCCG or its affiliates on multiple occasions."). Mr. Rastegar—and by extension Rastegar itself—are thus arguably "insiders" of the Debtors under the broadest definition of that term under Bankruptcy Code § 101(31). *See* 11 U.S.C. § 101(31) (providing a non-exclusive definition of "insider" for purposes of the Bankruptcy Code). In other words, the Sale looks like an insider transaction. At the very least, ATX is entitled to conduct discovery on the nature of Mr. Rastegar's relationship with Mr. Paul, WCCG, and the Debtors before the Sale is approved.[9]

12. The insider-character of this transaction raises yet a third set of questions about the Sale. Specifically, the Motion provides no evidence that Rastegar has the financial capacity to close the Sale (such as proof that Rastegar has obtained a loan commitment from a reputable financial institution or has $10,000,000 in cash available to it in order to close) or is even ready and willing to close (based as the Sale apparently is on a Sale Contract that is already null and void). The absence of any proof of Rastegar's capacity and intentions is curious given other odd aspects of the Sale. For instance, the proposed sale price of $10,000,000 is approximately ***three (3) times*** what World Class Acquisitions, LLC ("WC Acquisitions") paid for the South Congress

---

[9] Mr. Paul has been described as one of Mr. Rastegar's "influential allies," a "close friend," and a "partner" on other investments. https://www.dmagazine.com/publications/d-ceo/2017/january-february/why-ari-rastegar-thinks-an-economic-downturn-is-looming/. Mr. Rastegar appears to have regularly appeared at the eleventh-hour to help his friend, former boss and employer stave off creditors. See https://www.statesman.com/news/20190924/austin-developer-buys-three-properties-on-south-first-street.

81623055v.2

Property only eight (8) months ago.[10] Even in Austin's hot real-estate market, raw land does not usually appreciate 300% in just eight (8) months. Rastegar's apparent willingness to pay so much for the South Congress Property raises questions about the Sale's provenance and about who the actual beneficiaries of the Sale really are. Here again, ATX has had no opportunity to probe through discovery the relationship among the Debtors, WCCG, and Mr. Paul, on the one hand, and Rastegar and Mr. Rastegar, on the other hand. If Mr. Paul stands to benefit from the Sale (either directly because he is a member of Rastegar or indirectly through some prior arrangement), then this Court should deny the Sale. *9 Houston*, 578 B.R. at 615 ("An entity that the debtor controls, or that the debtor's principal controls, must not benefit from the sale of the asset."). At the very least, Mr. Rastegar should have to provide evidence to ATX that Rastegar has actually made the required earnest-money deposit and has the financial capacity to close the Sale.

13. Fourth, and most important, the Debtors have not demonstrated that a sound business reason exists for entering into this Sale so early in these Bankruptcy Cases. These Bankruptcy Cases were filed on Monday, November 4, 2019. The Debtors have not filed their Schedules and Statements of Financial Affairs or provided a single operating report. Local Rule 9014(e) of the Local Rules of the United States Bankruptcy Court for the Western District of Texas (the "Local Rules") requires that motions brought on an expedited or emergency basis "contain a detailed statement as to the need for an expedited hearing and the date by which relief is needed." W.D. TEX. LOC. BANKR. R. 9014(e). The Motion contains no such statement. Given all the questions raised by this Sale that need further investigation—and the lack of any demonstrated need for this Sale to proceed so quickly—this Court should either deny the Sale or

---

[10] A copy of the *Commercial Contract – Unimproved Property* (the "2018 Sale Contract") by which WC Acquisitions acquired the South Congress Property is attached as Exhibit 10.

19-11527-tmd Doc#12 Filed 11/06/19 Entered 11/06/19 18:04:27 Main Document Pg 10 of 15

adjourn its consideration to a later date. The "amount of elapsed time since the [bankruptcy] filing" represents one of the principal factors that the Fifth Circuit in *Continental Airlines* identifies as meriting consideration when deciding whether to approve a sale under § 363(b). *Cont'l Airlines*, 780 F.2d at 1226. In this case, this factor weighs heavily against approving the Sale at this time.

14. For all these reasons, the Debtors have not shown that they have a sound business justification for approving the Sale of the South Congress Property to Rastegar on the extraordinarily short notice they have requested in the Motion. This Court should therefore deny the Motion outright or adjourn its consideration to a later date.

**B.** **The Debtors Cannot Sell the South Congress Property Free and Clear of ATX's Liens Under Bankruptcy Code § 363(f).**

15. Besides seeking authority to sell the South Congress Property under Bankruptcy Code § 363(b), the Debtors also request that the Sale be made free and clear of ATX's liens and encumbrances under the Credit Documents pursuant to Bankruptcy Code § 363(f). The Debtors have not demonstrated that they are entitled to such relief.

16. Section 363(f) of Title 11 of the United States Code (the "Bankruptcy Code") states in part as follows:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*Id.*; *see also GBL Holding Co., Inc. v. Blackburn/Travis/Cole, Ltd. (In re State Park Bldg. Group,*

81623055v.2

*Ltd.),* 331 B.R. 251, 254 (N.D. Tex. 2005) (analyzing § 363(f) in context of a sale of real property). The Debtors assert that at least three (3) of these conditions have been satisfied: (1) ATX's interest is a lien and the price at which the South Congress Property will be sold exceeds the aggregate value of all liens against the South Congress Property, (2) ATX's liens and deed of trust are in "bona fide dispute", and (3) ATX could be compelled to accept a money satisfaction of its interest. (Motion, D.I. 6, pp. 8-10). The Debtors are wrong on each point.

17. First, the proposed sale of the South Congress Property does not exceed the aggregate value of all liens against the South Congress Property. As of today's date, the unpaid principal balance alone owed to ATX under the Note is $17,858,636.54. This figure does not include all the accrued interest (including default interest), fees, charges, and other amounts due in connection with the Loan. Under the Credit Documents, this entire balance encumbers each of the Properties individually. The proposed proceeds of the Sale are only $10,000,000. Thus, on its face, the proposed Sale will not pay off the entire aggregate value of all liens against the South Congress Property. Indeed, the Debtors recognize this fact when they state that "the outstanding principal is approximately $17,500,000 and the proceeds of the Sale will not completely extinguish the Note…." (Motion, D.I. 6, pp. 8-9). That the Sale may theoretically pay off a portion of the liens is irrelevant. On its face, § 363(f)(3) is not satisfied.

18. Second, the Debtors also assert that § 363(f)(4) is met because a "bona fide dispute" supposedly exists regarding the nature of ATX's interest. (Motion, D.I. 6, p. 9). However, the only "evidence" that the Debtors offer for the claimed existence of such a dispute is their bald assertion that a dispute exists. Merely announcing a bona fide dispute does not, in fact, qualify as a dispute. This consideration may be rejected out of hand.

19. Third, and finally, the Debtors claim that ATX could be compelled to accept

payment of their liens in a legal or equitable proceeding. In support of this position, the Debtors argue that the fact that Bankruptcy Code § 1129(b)(2)(A) permits a debtor-in-possession to sell property under its provisions means that the Debtors can force a sale of the South Congress Property to Rastegar over ATX's objection. The Debtors offer no case citations to support this assertion. The Debtors also fail to mention that both § 1129(b)(2)(A)(ii) and § 1129(b)(2)(A)(iii) expressly preserve a secured creditor's right to credit bid under any such proposed sale pursuant to Bankruptcy Code § 363(k). 11 U.S.C. § 1129(b)(2)(A)(ii)-(iii); *see also RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 647, 132 S.Ct. 2065, 2072, 182 L.Ed.2d 967 (2012). Suffice it to say, the Debtors' proposed Sale does not preserve ATX's credit-bid rights. The Debtors' apparent effort to force the sale over ATX's objections thus contravenes both Bankruptcy Code §§ 363(k) and 1129(b)(2)(A) and should therefore be denied. *RadLAX Gateway*, 566 U.S. at 647 (holding that "debtors may not sell their property free of liens under § 1129(a)(2)(A) without allowing lienholders to credit-bid, as required by clause (ii).").

C. **ATX Is Entitled to Adequate Protection of Its Liens under Bankruptcy Code § 363(e) and to Credit Bid At Any Sale of the South Congress Property Under Bankruptcy Code § 363(k).**

20. Finally, if this Court were inclined to permit the Debtors to sell the South Congress Property to Rastegar as requested in the Motion, then ATX is entitled both to adequate protection of its existing liens and interest under § 363(e) and to credit-bid up to the amount of all its liens encumbering the South Congress Property under § 363(k). 11 U.S.C. §§ 363(e), 363(k). ATX's adequate protection may take many forms, and the definition of adequate protection under Bankruptcy Code § 361 is not exclusive. At a minimum, ATX should receive perfected, post-petition liens on any and all proceeds of the Sale. Further, ATX also, as adequate protection, requests additional time to examine the underlying details of the Sale and to conduct discovery of

the Debtors, Rastegar, WCCG, Mr. Paul, and Mr. Rastegar in order, *inter alia*, to answer the many questions ATX has about the Sale. Finally, ATX also asks that it be granted the right to credit bid for the South Congress Property under Bankruptcy Code § 363(k). The Debtors have not provided any justification or "cause' for denying ATX this right to which it would ordinarily be entitled under Bankruptcy Code § 363(k). This Court should therefore preserve this right and permit ATX to credit bid for the South Congress Property if it wishes to do so.

## IV. RESERVATION OF RIGHTS

21. ATX further reserves all its rights and claims in connection with the Motion, the Sale, the South Congress Property, and the proposed sale to Rastegar. ATX further reserves the right to amend, modify, or supplement this Objection at any time, including at the hearing on the Motion currently scheduled for November 7, 2019.

WHEREFORE ATX LENDER 5, LLC, requests that (i) the Motion be denied in its entirety, (ii), in the alternative, that this Court adjourn consideration of the Motion to a later date convenient for all the parties, and (iii) that ATX be granted all other proper relief to which it may be entitled under law or at equity

81623055v.2

Dated: November 5, 2019.    Respectfully submitted,

By: */s/ W. Steven Bryant*
W. Steven Bryant
Texas Bar No. 24027413
Federal I.D. No.  32913
LOCKE LORD LLP
600 Congress Ave., Suite 2200
Austin, Texas  78701
Phone: (512) 305-4726
Fax: (512) 305 4800
Email address: sbryant@lockelord.com

-and-

C. Davin Boldissar (La. #29094)
*(pro hac vice to be submitted)*
Locke Lord LLP
601 Poydras Street, Suite 2660
New Orleans, Louisiana 70130-6036
Telephone: (504) 558-5100
Fax: (504) 681-5211

**COUNSEL FOR ATX LENDER 5, LLC**

81623055v.2

## **CERTIFICATE OF SERVICE**

      I certify that, on November 6, 2019, a true and correct copy of the foregoing *Objection* was served via ECF on all parties who receive service in this Bankruptcy Case via electronic case filing and, for those parties listed below and on the attached Service List who do not receive service by ECF, on November 7, 2019 by United States first-class mail, postage prepaid.

Waller Lansden Dortch & Davis, LLP
Attn: Morris D. Weiss and Evan J. Atkinson
100 Congress Avenue, Ste. 1800
Austin, Texas 78701

                                                            */s/ W. Steven Bryant*
                                                            W. Steven Bryant