**ELECTRONICALLY RECORDED**        **2018151772**

TRV        **58**        PGS

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Safarian Choi & Bolstad LLP
555 South Flower St., Suite 650
Los Angeles, California 90071
Attention: Alex Choi, Esq.

11-GF#2018010918 DRK
RETURN TO: HERITAGE TITLE
401 CONGRESS AVE., SUITE 1500
AUSTIN, TEXAS 78701

(Space Above For Recorder's Use)

## DEED OF TRUST,
## SECURITY AGREEMENT AND FINANCING STATEMENT

by

**900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC,
5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC, each a Delaware limited
liability company**

having an office at

401 Congress Avenue, 33rd Floor, Austin, Texas 78701

**(collectively, "Borrower")**

to

**CYRUS N. ANSARI, ESQ.**
having an office at

c/o Stutzman, Bromberg, Esserman & Plifka,
2323 Bryan Street, Suite 2200, Dallas, Texas 75201

**("Trustee")**

for the benefit of

**U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish limited partnership**

having an office at
c/o Calmwater Capital, 11755 Wilshire Blvd., Suite 1425, Los Angeles, CA 90025

**("Lender")**

---

**EXHIBIT "4"**

ATX000087

Filed Electronically
ID 0018159112
County  TRAVIS
Date 1·25·18    Time 2:07
Simplifile.com  800.460.5657

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

Safarian Choi & Bolstad LLP
555 South Flower St., Suite 650
Los Angeles, California 90071
Attention:  Alex Choi, Esq.

11-GF#201801091A  DRK
RETURN TO: HERITAGE TITLE
401 CONGRESS AVE., SUITE 1500
AUSTIN, TEXAS  78701

(Space Above For Recorder's Use)

## DEED OF TRUST,
## SECURITY AGREEMENT AND FINANCING STATEMENT

by

**900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC,
5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC, each a Delaware limited
liability company**

having an office at

401 Congress Avenue, 33rd Floor, Austin, Texas 78701

**(collectively, "Borrower")**

to

**CYRUS N. ANSARI, ESQ.**

having an office at

c/o Stutzman, Bromberg, Esserman & Plifka,
2323 Bryan Street, Suite 2200, Dallas, Texas  75201

**("Trustee")**

for the benefit of

**U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish limited partnership**

having an office at
c/o Calmwater Capital, 11755 Wilshire Blvd., Suite 1425, Los Angeles, CA 90025

**("Lender")**

_____

ATX000088

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT**
(World Class – Austin Portfolio)

　　　**THIS DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT** (this "Security Instrument") is made as of September 21, 2018 ("Effective Date"), by **900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC**, each a Delaware limited liability company (collectively, jointly, severally and collectively, as the context may require, "Borrower"), the address of which is 401 Congress Avenue, 33rd Floor, Austin, Texas 78701, to CYRUS N. ANSARI, ESQ. (together with any successor or substitute Trustee from time to time designated or acting in accordance herewith, the "Trustee"), the address of which is c/o Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201, for the benefit of U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP, an Irish limited partnership ("Lender"), the address of which is c/o Calmwater Capital, 11755 Wilshire Blvd., Suite 1425, Los Angeles, CA 90025.

W I T N E S S E T H  T H A T:

BORROWER HEREBY IRREVOCABLY GRANTS, BARGAINS, TRANSFERS, MORTGAGES, CONVEYS AND ASSIGNS TO TRUSTEE, IN TRUST FOR THE BENEFIT OF LENDER, WITH POWER OF SALE AND RIGHT OF ENTRY, all of Borrower's right, title and interest now owned or hereafter acquired in and to the following property, all of which is hereinafter individually and collectively defined as the "Property":

　　　A.　　　All that certain land situated at (i) 504 E. 5th Street, Austin, Texas, and legally described on Exhibit A-1 attached hereto and incorporated herein by reference (the "5th Real Property"), (ii) 900 & 904 East Cesar Chavez Street, Austin, Texas, and legally described on Exhibit A-2 attached hereto and incorporated herein by reference (the "900 Cesar Chavez Real Property"), (iii) 905 & 907 East Cesar Chavez Street, Austin, Texas, and legally described on Exhibit A-3 attached hereto and incorporated herein by reference (the "905 Cesar Chavez Real Property"), and (iv) 7400 South Congress Avenue, Austin, Texas, and legally described on Exhibit A-4 attached hereto and incorporated herein by reference (individually and collectively, as the context may require, the "Land"), together with all of the easements, rights, privileges, franchises, tenements, hereditaments and appurtenances now or hereafter thereunto belonging or in any way appertaining and all of the estate, right, title, interest, claim and demand whatsoever of Borrower therein or thereto, either at law or in equity, in possession or in expectancy, now or hereafter acquired;

　　　B.　　　All structures, buildings and improvements of every kind and description now or at any time hereafter located or placed on the Land (the "Improvements");

ATX000089

C.     All furniture, furnishings, fixtures, goods, equipment, inventory or personal property owned by Borrower and now or hereafter located on, attached to or used in and about the Improvements, including, but not limited to, all machines, engines, boilers, dynamos, elevators, stokers, tanks, cabinets, awnings, screens, shades, blinds, carpets, draperies, lawn mowers, and all appliances, plumbing, heating, air conditioning, lighting, ventilating, refrigerating, disposal and incinerating equipment, and all fixtures and appurtenances thereto, and such other goods and chattels and personal property owned by Borrower as are now or hereafter used or furnished in operating the Improvements, or the activities conducted therein, and all building materials and equipment hereafter situated on or about the Land or the Improvements, and all warranties and guaranties relating thereto, and all additions thereto and substitutions and replacements therefor (exclusive of any of the foregoing owned or leased by tenants of space in the Improvements);

D.     All easements, rights of way, strips and gores of land, vaults, streets, ways, alleys, passages, sewer rights, air rights and other development rights now or hereafter located on or appurtenant to the Land and/or the Improvements or under or above the same or any part or parcel thereof, and all estates, rights, titles, interests, tenements, hereditaments and appurtenances, reversions and remainders whatsoever, in any way belonging, relating or appertaining to the Land and/or the Improvements or any part thereof, or which hereafter shall in any way belong, relate or be appurtenant thereto, whether now owned or hereafter acquired by Borrower;

E.     All water, ditches, wells, reservoirs and drains and all water, ditch, well, reservoir and drainage rights which are appurtenant to, located on, under or above or used in connection with the Land and/or the Improvements, or any part thereof, whether now existing or hereafter created or acquired;

F.     All minerals, crops, timber, trees, shrubs, flowers and landscaping features now or hereafter located on, under or above the Land;

G.     All cash funds, deposit accounts and other rights and evidence of rights to investments or cash, now or hereafter created or held by Lender pursuant to this Security Instrument or any other of the Loan Documents (as hereinafter defined), including, without limitation, all funds now or hereafter on deposit in any reserves or accounts held by or on behalf of Lender pursuant to this Security Instrument or any other of the Loan Documents (including, without limitation, the reserves established pursuant to Article I of this Security Instrument) (collectively, the "Reserves");

H.     All leases (including, without limitation, oil, gas and mineral leases), licenses, rental agreements, concessions and occupancy agreements of all or any part the Land and/or the Improvements now or hereafter entered into (each, a "Lease" and collectively, "Leases"), and all rents, royalties, issues, profits, revenue, income and other benefits (collectively, the "Rents and Profits") of the Land and/or the Improvements, now or hereafter arising from the use or enjoyment of all or any portion thereof or from any present or future Lease or other agreement pertaining thereto or arising from any of the Contracts (as hereinafter defined) or any of the General Intangibles (as hereinafter defined) and all cash or securities deposited to secure performance by the tenants, lessees, licensees or occupants (each, a "Tenant" and collectively,

ATX000090

"Tenants"), as applicable, of their obligations under any such Leases, whether said cash or securities are to be held until the expiration of the terms of said Leases or applied to one or more of the installments of rent coming due prior to the expiration of said terms, subject to, however, the provisions contained in Section 1.8 hereinbelow;

I.     All contracts and agreements now or hereafter entered into covering any part of the Land and/or the Improvements (except Leases), together with any management agents, leasing agents, sales agents, service and maintenance agents, contractors and other third parties (collectively, the "Contracting Parties", or, singularly, a "Contracting Party"), whether now existing or hereafter arising, relating to the management, operation, leasing, sale, maintenance and repair of the Land and Improvements, including, without limitation, management agreements, franchise agreements, equipment leases and personal property leases (collectively, the "Contracts" or, singularly, a "Contract") and all revenue, income and other benefits thereof, including, without limitation, management agreements, service contracts, maintenance contracts, equipment leases, personal property leases and any contracts or documents relating to construction on any part of the Land and/or the Improvements (including plans, drawings, surveys, tests, reports, bonds and governmental approvals) or to the management or operation of any part of the Land and/or the Improvements;

J.     Any and all warranties and guaranties relating to the Property or any fixtures, equipment or personal property owned by Borrower and located on and/or used in connection with the Property, whether now existing or hereafter arising; and any and all permits, licenses, certificates of use and occupancy (or their equivalent) and applications and approvals issued by any governmental authority or agency relating to the construction, ownership, operation and/or use of the Property, to the extent assignable, whether now existing or hereafter arising (collectively, the "Warranties")

K.     All present and future deposits given to any public or private utility with respect to utility services furnished to any part of the Land and/or the Improvements;

L.     All present and future funds, accounts, instruments, accounts receivable, documents, causes of action, claims, general intangibles (including without limitation, patents, copyrights, trademarks, trade names, service marks and symbols now or hereafter used in connection with any part of the Land and/or the Improvements, all names by which the Land or the Improvements may be operated or known, all rights to carry on business under such names, and all rights, interest and privileges which Borrower has or may have as developer or declarant under any covenants, restrictions or declarations now or hereafter relating to the Land and/or the Improvements) and all notes or chattel paper now or hereafter arising from or by virtue of any transactions related to the Land and/or the Improvements (together with the Contracts, and the Warranties, collectively, the "General Intangibles");

M.     All water taps, sewer taps, certificates of occupancy, permits, licenses, franchises, certificates, consents, approvals and other rights and privileges now or hereafter obtained in connection with the Land and/or the Improvements and all present and future warranties and guaranties relating to the Improvements or to any equipment, fixtures, furniture, furnishings, personal property or components of any of the foregoing now or hereafter located or installed on the Land and/or the Improvements;

ATX000091

N. All building materials, supplies and equipment now or hereafter placed on the Land and/or in the Improvements and all architectural renderings, models, drawings, plans, specifications, studies and data now or hereafter relating to the Land and/or the Improvements;

O. All right, title and interest of Borrower in any insurance policies or binders now or hereafter referred to in clauses (A)-(N) and (P)-(R) including any unearned premiums thereon;

P. All proceeds, products, substitutions and accessions (including without limitation, claims and demands therefor) of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims, including, without limitation, proceeds of insurance and condemnation awards;

Q. All present and future tax refunds relating to the Property. The term "Tax" includes, without limitation, all real estate and personal property taxes, assessments and impositions, whether special or general, and any similar governmental charges or assessments that are levied upon the Property; and

R. All other or greater rights and interests of every nature in the Land and/or the Improvements and in the possession or use thereof and income therefrom, whether now owned or hereafter acquired by Borrower.

FOR THE PURPOSES OF SECURING:

(1) The debt evidenced by that certain Promissory Note (such Promissory Note, together with any and all renewals, modifications, consolidations and extensions thereof, substitutions therefor, replacements thereof and any other evidence of indebtedness given in exchange therefor, is hereinafter referred to as the "Note") signed as of the Effective Date, made by Borrower to the order of Lender in the original principal amount of $22,932,250.00, with a maturity date of October 1, 2020, as may be extended in accordance with the Note, together with interest as therein provided;

(2) The full and prompt payment and performance of all of the provisions, agreements, covenants and obligations contained herein and contained in any other agreements, documents or instruments now or hereafter evidencing, securing, guaranteeing or otherwise relating to the indebtedness evidenced by the Note (the Note, this Security Instrument, the Loan Agreement between the parties of even date herewith (the "Loan Agreement"), and such other agreements, documents and instruments executed and/or delivered in connection with the Loan, together with any and all renewals, amendments, extensions and modifications thereof, supplements thereof and other changes of any kind thereto are hereinafter collectively referred to as the "Loan Documents"; capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Loan Agreement) and the payment of all other amounts therein covenanted to be paid and performance of all other obligations therein covenanted to be performed;

(3) Any and all additional advances made by Lender to protect or preserve the Property or the lien or security interest created hereby on or in the Property, or for Taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Borrower's obligations hereunder or under the other Loan Documents or for any other purpose

ATX000092

provided herein or in the other Loan Documents (whether or not the original Borrower remains the owner of the Property at the time of such advances); and

(4)     Any and all other indebtedness now owing or which may hereafter be owing by Borrower to Lender, including, without limitation, Yield Maintenance and the Exit Fee (as each such term is defined in the Note) and any other prepayment fees, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, consolidations, replacements and extensions thereof.

(All of the sums referred to in Paragraphs (1) through (4) above are herein sometimes referred to as the "secured indebtedness" or the "indebtedness secured hereby"). Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in the Loan Agreement.

TO HAVE AND TO HOLD the above granted and described Property, together with all and singular the rights, hereditaments and appurtenances in any way appertaining or belonging thereto, unto Trustee and Trustee's successors or substitutes in this trust, and for their successors and assigns, in trust and for the uses and purposes hereafter set forth, forever, subject, however, to all Permitted Exceptions (defined in Section 1.1 below).

Borrower, for Borrower and Borrower's successors and assigns, hereby agrees to warrant and forever defend, all and singular, title to the Property unto Trustee, and Trustee's successors or substitutes in the trust, forever, against every person whomsoever lawfully claiming, or to claim, the same or any part thereof;

PROVIDED, HOWEVER, that if Borrower shall pay in full or cause to be paid in full to Lender the secured indebtedness and all other covenants contained in the Loan Documents shall have been performed on or before the Maturity Date, then this Security Instrument shall be satisfied and the estate, right, title and interest of Lender in the Property shall cease, and, upon payment to Lender of all costs and expenses incurred for the preparation of the release hereinafter referenced and all recording costs, if allowed by law, Lender shall release this Security Instrument and the lien hereof by proper instrument.

Anything to the contrary herein or elsewhere notwithstanding, the obligations of the guarantor under (i) the Hazardous Substances Indemnity Agreement, dated as of the date here, from Borrower and Natin Paul, an individual, to Lender (the "Hazardous Substances Indemnity"), and (ii) the Indemnity and Guaranty Agreement, dated as of the date hereof, from Natin Paul, an individual, to Lender (the "Indemnity and Guaranty Agreement"), or any other guarantor under any other separate guaranty accepted by Lender, shall not be secured by this Security Instrument, any separate assignment of leases or assignment of rents, or any other lien encumbering the Property.

ATX000093

# ARTICLE I
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF BORROWER

For the purpose of further securing the indebtedness secured hereby and for the protection of the security of this Security Instrument, for so long as the indebtedness secured hereby or any part thereof remains unpaid, Borrower covenants and agrees as follows:

1.1   Certain Representations, Warranties and Covenants of Borrower.   Borrower, for itself and its successors and assigns, does hereby represent, warrant and covenant to and with Lender, its successors and assigns, that, except as disclosed to Lender in writing prior to the Effective Date:

(a)   Borrower has good and marketable title to the Land and to the Improvements located thereon, subject only to those matters set forth as exceptions to or subordinate matters that Lender has agreed to accept in the title insurance policy issued to Lender insuring the lien of this Security Instrument, excepting therefrom all preprinted and/or standard exceptions (the "Permitted Exceptions"), and has full power and lawful authority to grant, bargain, sell, convey, assign, transfer and mortgage the Land and the Improvements located thereon in the manner and form hereby done or intended.   Borrower will preserve Borrower's interest in and title to the Land and to the Improvements located thereon and will forever warrant and defend the same to Lender against any and all claims whatsoever and will forever warrant and defend the validity and priority of the lien and security interest created herein against the claims of all persons and parties whomsoever, subject to the Permitted Exceptions.   The foregoing warranty of title shall survive the foreclosure of this Security Instrument and shall inure to the benefit of and be enforceable by Lender in the event Lender acquires title to the Land and to the Improvements located thereon pursuant to any foreclosure.

(b)   The Land and the Improvements, and the intended use thereof by Borrower comply in all material respects with all applicable restrictive covenants, zoning ordinances, subdivision and building codes, flood disaster laws, applicable health and environmental laws and regulations and all other ordinances, orders or requirements issued by any state, federal or municipal authorities having or claiming jurisdiction over the Property.   The Land and the Improvements constitute one or more separate tax parcels for purposes of ad valorem taxation. The Land and the Improvements do not require any rights over, or restrictions against, other property in order to comply with any of the aforesaid governmental ordinances, orders or requirements or such rights over or restrictions against have been obtained.   Without limitation of the foregoing, the Improvements have been designed and shall be constructed and completed, and thereafter maintained, in strict accordance and full compliance with all of the requirements of the Americans with Disabilities Act, of July 26, 1990, Pub. L. No. 101-336, 104 Stat. 327, 42 U.S.C. § 12101, et. seq., as amended from time to time.   Borrower shall be responsible for all ADA compliance costs.   All certifications, permits, licenses and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property, whether temporary or permanent, have been obtained and are in full force and effect.   Borrower shall keep and maintain, or cause Property Manager to keep and maintain, all certifications, permits, licenses and approvals necessary for the operation of the Property.   The use being made of the Property is in conformity with the certificate of occupancy issued for the Property, or any portion thereof.

(c)    All utility services necessary and sufficient for the full use, occupancy, operation and disposition of the Land and the Improvements for their intended purposes are available to the Property, including water, storm sewer, sanitary sewer, gas, electric, cable and telephone facilities, through public rights of way or perpetual private easements approved by Lender.

(d)    All streets, roads, highways, bridges and waterways necessary for access to and full use, occupancy, operation and disposition of the Land and the Improvements have been completed, have been dedicated to and accepted by the appropriate municipal authority and are open and available to the Land and the Improvements without further condition or cost to Borrower.

(e)    All curb cuts, driveways and traffic signals shown on the survey delivered to Lender prior to the execution and delivery of this Security Instrument are existing and have been fully approved by the appropriate governmental authority.

(f)    The Property is free from delinquent water charges, sewer rents, taxes and assessments.

(g)    As of the date of this Security Instrument, the Property is free from unrepaired material damage caused by fire, flood, accident or other casualty.

(h)    As of the date of this Security Instrument, no part of the Land or the Improvements has been taken in condemnation, eminent domain or like proceeding nor is any such proceeding pending or, to Borrower's knowledge and belief, threatened or contemplated.

(i)    Except as otherwise disclosed in the Loan Agreement, the Improvements are structurally sound, in good repair and free of material defects in materials and workmanship and have been constructed and installed in substantial compliance with the plans and specifications relating thereto.  All major building systems located within the Improvements, including, without limitation, the heating, ventilating and air conditioning systems and the electrical and plumbing systems, are in working order and condition. There are no defects, facts or conditions affecting the Property or any portion thereof which would make the Property unsuitable for the occupancy, use or sale thereof.  There are no surface or subsurface soil conditions adversely affecting the Property, including, without limitation, unstable soil or landfills.

(j)    Borrower has delivered to Lender, and will deliver to Lender upon written request, true, correct and complete copies of any Contracts and all amendments thereto or modifications thereof.

(k)    Each Contract constitutes the legal, valid and binding obligation of Borrower and, to the best of Borrower's knowledge and belief, is enforceable against any other party thereto. No default exists, or with the passing of time or the giving of notice or both would exist, under any Contract which would, in the aggregate, have a material adverse effect on Borrower or the Property.

ATX000095

(l)     No Contract provides any party with the right to obtain a lien or encumbrance upon the Property superior to the lien of this Security Instrument.

(m)     Borrower and the Property are free from any past due obligations for sales and payroll taxes, including, but not limited to, transient accommodation taxes.

1.2     <u>Defense of Title</u>.  If, while this Security Instrument is in force, the title to the Property or the interest of Lender therein shall be the subject, directly or indirectly, of any action at law or in equity, or be attached, directly or indirectly, or endangered, clouded or adversely affected, directly or indirectly, in any manner, Borrower, at Borrower's expense, shall take all necessary and proper steps for the defense of said title or interest, including without limitation the employment of counsel approved by Lender, the prosecution or defense of litigation, and the compromise or discharge of claims made against said title or interest.  Notwithstanding the foregoing, in the event that Lender determines that Borrower is not adequately performing Borrower's obligations under this <u>Section 1.2</u>, or in good faith determines that a conflict of interest or potential conflict of interest exists therein, Lender may, without limiting or waiving any other rights or remedies of Lender hereunder, take such steps, with respect thereto as Lender shall deem necessary or proper and any and all costs and expenses paid by Lender in connection therewith, together with interest thereon at the Default Interest Rate (as defined in the Note) from the date incurred by Lender until actually paid by Borrower, shall be immediately paid by Borrower on demand and shall be secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

1.3     <u>Performance of Obligations</u>.  Borrower shall pay when due the principal of and the interest on the indebtedness evidenced by the Note.  Borrower shall also pay all charges, fees and other sums required to be paid by Borrower as provided in the Loan Documents, and shall observe, perform and discharge all obligations, covenants and agreements to be observed, performed or discharged by Borrower set forth in the Loan Documents in accordance with their terms.  Further, Borrower shall promptly and strictly perform and comply with all covenants, conditions, obligations and prohibitions required of Borrower in connection with any other document or instrument affecting title to the Property, or any part thereof, regardless of whether such document or instrument is superior or subordinate to this Security Instrument.

1.4     <u>Insurance</u>.  Borrower shall, at Borrower's expense, maintain in force and effect on the Property at all times while this Security Instrument continues in effect all required insurance pursuant to the Loan Agreement.

1.5     <u>Payment of Taxes</u>.  Borrower shall pay or cause to be paid all Taxes which are or may become a lien on the Property or which are assessed against or imposed upon the Property.  Borrower shall furnish Lender with receipts (or if receipts are not immediately available, with copies of canceled checks evidencing payment with receipts to follow promptly after they become available) showing payment of such Taxes at least fifteen (15) days prior to the applicable delinquency date therefor.  Notwithstanding the foregoing, Borrower may in good faith, by appropriate proceedings and upon notice to Lender, contest the validity, applicability or amount of any asserted Tax so long as (a) such contest is diligently pursued, (b) Lender determines, in Lender's subjective opinion, that, if such Tax is not paid, such contest suspends the obligation to pay the Tax and that nonpayment of such Tax will not result in the sale, loss,

forfeiture or diminution of the Property or any part thereof or any interest of Lender therein, and, (c) prior to the earlier of the commencement of such contest or the delinquency date of the asserted Tax, Borrower deposits in the Tax and Insurance Reserve  an amount determined by Lender to be adequate to cover the payment of such Tax (if unpaid) and a reasonable additional sum to cover possible interest, costs and penalties; provided, however, that Borrower shall promptly cause to be paid any amount adjudged by a court of competent jurisdiction to be due, with all interest, costs and penalties thereon, promptly after such judgment becomes final; and provided, further, that as and when each such contest shall be concluded, the Taxes, interest, costs and penalties shall be paid prior to the date any writ or order is issued under which the Property may be sold, lost or forfeited.

1.6    Casualty and Condemnation.  Borrower shall give Lender prompt written notice of the occurrence of any casualty affecting, or the institution of any proceedings for eminent domain or for the condemnation of, the Property or any portion thereof.  All insurance proceeds on the Property, and all causes of action, claims, compensation, awards and recoveries for any damage, condemnation or taking of all or any part of the Property or for any damage or injury to the Property for any loss or diminution in value of the Property, are hereby assigned to and shall be paid to Lender.  Lender may participate in any suits or proceedings relating to any such proceeds, causes of action, claims, compensation, awards or recoveries and Lender is hereby authorized, in Lender's own name or in Borrower's name, to adjust any loss covered by insurance or any condemnation claim or cause of action, and to settle or compromise any claim or cause of action in connection therewith, and Borrower shall from time to time deliver to Lender any instruments required to permit such participation, provided, however, that, so long as no Default or Event of Default shall have occurred and be continuing, Lender shall not have the right to participate in the adjustment of any loss which is not in excess of ten percent (10%) of the then outstanding principal balance of the Note.  Lender shall apply any sums received by Lender under this Section 1.6, first, to the payment of all of Lender's costs and expenses (including, but not limited to, legal fees and disbursements) incurred in obtaining those sums, and, then, as follows:

(a)    In the event that less than ten percent (10%) of the Improvements have been taken or destroyed, then if:

(1)    no Default or Event of Default is then continuing hereunder or under any of the other Loan Documents, and

(2)    the Property can, in Lender's reasonable judgment, with diligent restoration or repair, be returned to a condition at least equal to the condition thereof that existed prior to the casualty or partial taking causing the loss or damage within the earlier to occur of (i) six (6) months after the receipt of insurance proceeds or condemnation awards by either Borrower or Lender and (ii) six (6) months prior to the then applicable maturity date of the Note, and

(3)    all necessary governmental approvals can be obtained to allow the timely restoration and repair of the Property as described in Section 1.6(a)(2) above, and the reoccupancy thereof, and

ATX000097

(4)    there are sufficient sums available (through insurance proceeds or condemnation awards and contributions by Borrower, the full amount of which shall, at Lender's option, have been deposited with Lender) for such restoration or repair (including, without limitation, for any costs and expenses of Lender to be incurred in administering said restoration or repair) and for payment of principal and interest to become due and payable under the Note during such restoration or repair, and

(5)    the economic feasibility of the Improvements after such restoration or repair will be such that income from their operation is reasonably anticipated to be sufficient to pay operating expenses of the Property and debt service on the indebtedness secured hereby in full in accordance with Lender's then current underwriting standards, and

(6)    in the event that the insurance proceeds or condemnation awards received as a result of such casualty or partial taking exceed ten percent (10%) of the then outstanding principal balance of the Note, Borrower shall have delivered to Lender, at Borrower's sole cost and expense, an appraisal report in form and substance reasonably satisfactory to Lender appraising the value of the Property as proposed to be restored or repaired to be not less than the appraised value of the Property considered by Lender in Lender's determination to make the loan secured hereby, and

(7)    Borrower so elects by written notice delivered to Lender within five (5) days after settlement of the aforesaid insurance or condemnation claim, then, Lender shall, solely for the purposes of such restoration or repair, advance so much of the remainder of such sums as may be required for such restoration or repair, and any funds deposited by Borrower therefor, to Borrower in the manner and upon such terms and conditions as would be required by a prudent construction lender, including, but not limited to, the prior reasonable approval by Lender of plans and specifications, contractors and form of construction contracts and the furnishing to Lender of permits, bonds, lien waivers, invoices, receipts and affidavits from contractors and subcontractors, in form and substance satisfactory to Lender in Lender's discretion, with any remainder being applied by Lender for payment of the indebtedness secured hereby in whatever order Lender directs in its absolute discretion.

(b)    In all other cases, namely, in the event that ten percent (10%) or more of the Improvements have been taken or destroyed or Borrower does not elect to restore or repair the Property pursuant to clause (a), above, or otherwise fails to meet any of the requirements of subsection (a) above of this Section 1.6, then, in any of such events, Lender may elect, in Lender's absolute discretion and without regard to the adequacy of Lender's security, to do either of the following:  (1) accelerate the maturity date of the Note and declare any and all indebtedness secured hereby to be immediately due and payable and apply the remainder of such sums received pursuant to this Section 1.6(b) to the payment of the indebtedness secured hereby in whatever order Lender directs, in Lender's absolute discretion, with any remainder being paid to Borrower, or, (2) notwithstanding that Borrower may have elected not to restore or repair the Property pursuant to the provisions of Section 1.6(a)(7) above, require Borrower to restore or repair the Property in the manner and upon such terms and conditions as would be required by a prudent construction lender, including, but not limited to:  the deposit by Borrower with Lender, within thirty (30) days after demand therefor, of any deficiency necessary in order to assure the availability of sufficient funds to pay for such restoration or repair, including without limitation

ATX000098

Lender's costs and expenses to be incurred in connection therewith; the prior approval by Lender of plans and specifications, contractors and form of construction contracts; and the furnishing to Lender of permits, bonds, lien waivers, invoices, receipt and affidavits from contractors and subcontractors, in form and substance satisfactory to Lender in Lender's discretion, and apply the remainder of such sums toward such restoration and repair, with any balance thereafter remaining being applied by Lender for payment of the indebtedness secured hereby in whatever order Lender directs in Lender's absolute discretion.

Any reduction in the indebtedness secured hereby resulting from Lender's application of any sums received by Lender hereunder shall take effect only when Lender actually receives such sums and elects to apply such sums to the indebtedness secured hereby and, in any event, the unpaid portion of the indebtedness secured hereby shall remain in full force and effect and Borrower shall not be excused in the payment thereof. Partial payments received by Lender, as described in the preceding sentence, shall be applied, first, to the final payment due under the Note and, thereafter, to installments due under the Note in the inverse order of their due date. If Borrower elects or Lender directs Borrower to restore or repair the Property after the occurrence of a casualty or partial taking of the Property as provided above, Borrower shall promptly and diligently, at Borrower's sole cost and expense and regardless of whether the insurance proceeds or condemnation award, as appropriate, shall be sufficient for the purpose, restore, repair, replace and rebuild the Property as nearly as possible to the Property's value, condition and character immediately prior to such casualty or partial taking in accordance with the foregoing provisions and Borrower shall pay to Lender all costs and expenses of Lender incurred in administering said rebuilding, restoration or repair, provided the Lender makes such proceeds or award available for such purpose. Borrower agrees to execute and deliver from time to time such further instruments as may be reasonably requested by Lender to confirm the foregoing assignment to Lender of any award, damage, insurance proceeds, payment or other compensation. Following an Event of Default, Lender shall be irrevocably constituted and appointed the attorney in fact of Borrower (which power of attorney shall be irrevocable so long as any indebtedness secured hereby is outstanding, shall be deemed coupled with an interest, shall survive the voluntary or involuntary dissolution of Borrower and shall not be affected by any disability or incapacity suffered by Borrower subsequent to the date hereof), with full power of substitution, subject to the terms of this Section 1.6, to settle for, collect and receive any such awards, damages, insurance proceeds, payments or other compensation from the parties or authorities making the same, to appear in and prosecute any proceedings therefor and to give receipts and acquittances therefor.

1.7    Mechanics' Liens. Borrower shall pay when due all claims and demands of mechanics, materialmen, laborers and others for any work performed or materials delivered for the Property; provided, however, that Borrower shall have the right to contest in good faith any such claim or demand, so long as Borrower does so diligently, by appropriate proceedings and without prejudice to Lender and provided that neither the Property nor any interest therein would be in any danger of sale, loss or forfeiture as a result of such proceeding or contest. In the event Borrower shall contest any such claim or demand, Borrower shall promptly notify Lender of such contest and thereafter shall, upon Lender's request, promptly provide a bond, cash deposit or other security satisfactory to Lender to protect Lender's interest and security should the contest be unsuccessful. If Borrower shall fail to immediately discharge or provide security against any such claim or demand as aforesaid, Lender may do so and any and all expenses incurred by Lender, together with interest thereon at the Default Interest Rate from the date paid

ATX000099

by Lender until actually paid by Borrower, shall be immediately paid by Borrower on demand and shall be secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

    1.8    <u>Rents and Profits</u>.

    (a)    <u>Collateral Assignment of Rents, Revenues, Income and Profits</u>. Borrower hereby collaterally assigns to Lender all rents, revenues, income and profits and all other "Rents" (as such term is defined in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code) ("<u>Rents and Profits</u>") payable under each Lease now or at any time hereinafter existing, such collateral assignment being upon the terms set forth in this Section 1.8. Each time Borrower enters into a Lease, such Lease shall automatically become subject to this Section 1.8 without further action.

    (b)    <u>Right to Direct Payment of Rents and Profits After an Default</u>. The collateral assignment of Rents and Profits to Lender shall be upon the following terms: (a) upon receipt from Lender of notice that an Event of Default exists, each Tenant is hereby authorized and directed to pay directly to Lender all Rents and Profits thereafter accruing or payable and receipt of Rents and Profits by Lender shall be a release of such Tenant to the extent of all amounts so paid; (b) Rents and Profits so received by Lender shall be applied by Lender, first to the expenses, if any, of collection and then in accordance with the distribution of foreclosure sale proceeds as described herein hereof; (c) without impairing its rights hereunder, Lender may, at its option, at any time and from time to time, release to Borrower Rents and Profits so received by Lender, or any part thereof; (d) Lender shall not be liable for its failure to collect or its failure to exercise diligence in the collection of Rents and Profits, but shall be accountable only for Rents and Profits that it shall actually receive; (e) the collateral assignment contained in this Article shall terminate upon the release of this Security Instrument, but no Tenant shall be required to take notice of termination until a copy of such release shall have been delivered to such Tenant; and (f) Lender grants to Borrower a license to collect all Rents and Profits and expend same as required and permitted pursuant to the Loan Documents, such Rents and Profits being held by Borrower in trust for the benefit of Lender, until the occurrence of an Event of Default. Without limiting the foregoing, during such time as Borrower is permitted to collect all Rents and Profits, Borrower shall be entitled to distribute all Rents and Profits, after payment of all of its obligations that are then-due, to its sole member. Lender shall be without liability for and is hereby released from any loss which may arise from a failure or inability to collect Rents and Profits, proceeds or other payments.

    (c)    <u>Remedies</u>. Should an Event of Default occur, and during continuance of an Event of Default, Borrower agrees to deliver to Lender possession and control of all Rents and Profits held by Borrower in trust for the benefit of Lender. Borrower specifically agrees that Lender may upon the occurrence of any Default or at any time thereafter, personally or through an agent selected by Lender, take or have the Trustee take possession and control of all or any part of the Property and may receive and collect all Rents and Profits theretofore accrued and all thereafter accruing therefrom until the cure of the Event of Default (if such Event of Default is suitable of being revoked) or the final termination of this Security Instrument or until the foreclosure of the lien of this Security Instrument, applying so much thereof as may be collected before sale of the Property by the Trustee or judicial foreclosure of this Security Instrument first

ATX000100

to the expenses of Lender incurred in obtaining the Rents and Profits and then applying the Rents and Profits so received in accordance with the provisions hereof describing the distribution of foreclosure sale proceeds. Any such action by Lender shall not operate as a waiver of the default in question, or as an affirmance of any Lease or of the rights of any Tenant in the event title to that part of the Property covered by the Lease or held by the Tenant should be acquired by Lender or other purchaser at foreclosure sale. Lender, Lender's agent or the Trustee may use against Borrower or any other person such lawful or peaceable means as the person acting may see fit to enforce the collection of any such Rents and Profits or to secure possession of the Property, or any part of it and may settle or compromise on any terms as Lender, Lender's agent or the Trustee sees fit, the liability of any person or persons for any such Rents and Profits. In particular, Lender, Lender's agent or the Trustee may institute and prosecute to final conclusion actions of forcible entry and detainer, or actions of trespass to try title, or actions for damages, or any other appropriate actions, in the name of Lender, Borrower, or the Trustee, and may settle, compromise or abandon any such actions as Lender, Lender's agent or the Trustee may see fit; and Borrower binds itself and its successors and assigns to take whatever lawful or peaceable steps Lender, Lender's agent or the Trustee may ask of it or any such person or concern so claiming to take for such purposes, including the institution and prosecution of actions of the character above stated. However, neither Lender, Lender's agent nor the Trustee shall be obligated to collect any such Rents and Profits or be liable or chargeable for failure to do so. Upon any sale of the Property or any part thereof in foreclosure of the lien or security interest created by this Security Instrument, such Rents and Profits so sold which thereafter accrues shall be deemed included in such sale and shall pass to the purchaser free and clear of the assignment made in this Article.

(d)     Lender in Possession; No Liability of Lender. Lender's acceptance of this collateral assignment shall not, before entry upon and taking possession of the Property by Lender, be deemed to constitute Lender a "Lender in possession," nor obligate Lender to appear in or defend any proceeding relating to any of the Leases or to the Property, take any action hereunder, expend any money, incur any expenses or perform any obligation or liability under the Leases, or assume any obligation under the Leases including the obligation to return any deposit delivered to Borrower by any Tenant. Lender shall not be liable for any injury or damage to person or property in or about the Property. Neither the collection of Rents and Profits due under the Leases herein described nor possession of the Property by Lender shall render Lender liable with respect to any obligations of Borrower under any of the Leases.

(e)     Additional Covenants, Warranties and Representations Concerning Leases and Rents and Profits. Borrower covenants, warrants and represents that:

(1)     Neither Borrower nor any previous owner affiliated with Borrower has entered into any prior oral or written assignment, pledge or reservation of the Rents and Profits, entered into any prior assignment or pledge of Borrower's landlord interests in any Lease or performed any act or executed any other instruments which remains in force and might prevent or limit Lender from operating under the terms and conditions of this Article;

(2)     Borrower has good title to the Leases and Rents and Profits hereby assigned and the authority to assign same, and no other person or entity has any right, title or interest in and to the landlord's interests therein;

ATX000101

(3)     All existing Leases are valid, unmodified and in full force and effect, except as indicated herein, and no default exists thereunder;

(4)     No Rents and Profits has been, nor does Borrower anticipate that any Rents and Profits will be, waived, released, discounted, set off or compromised, except as disclosed to Lender in writing before the date hereof;

(5)     Except as disclosed to Lender in writing before the date hereof, Borrower has not received any funds or deposits from any tenant for which credit has not already been made on account of accrued Rents and Profits;

(6)     Borrower shall (1) perform all of the terms and conditions of the Leases, (2) upon Lender's request, execute an additional collateral assignment to Lender of all Leases then affecting the Property and all Rents and Profits and other sums due thereunder by collateral assignment(s) in form and substance satisfactory to Lender and (3) at the request of Lender, record such Leases and the collateral assignment(s) thereof to Lender.  Borrower will not, without the prior written consent of Lender, amend, modify, extend, renew, terminate, cancel or surrender any Lease or suffer or permit any of the foregoing, orally or in writing;

(7)     Borrower shall not execute any Lease (or amendment to any Lease) unless the form of the Lease has been approved by Lender and the Tenant under such Lease and the terms of such Lease shall comply with leasing standards for the Property from time to time approved by Lender in writing;

(8)     Borrower shall give immediate notice to Lender of any notice Borrower received from any tenant or subtenant under any Leases specifying any claimed default by any party under such Leases;

(9)     Borrower shall enforce the Tenants' obligations under the Leases;

(10)     Borrower shall defend, at Borrower's expense, any proceeding pertaining to the Leases, including, if Lender so requests, any such proceeding to which Lender is a party;

(11)     Borrower shall neither create nor permit any encumbrance upon its interest as landlord under the Leases, except for this Security Instrument and any other encumbrances permitted by this Security Instrument;

(12)     Borrower shall not encumber or assign, or permit the encumbrance or assignment of, any Leases or Rents and Profits without the prior written consent of Lender;

(13)     Borrower shall not waive or release any obligation of any Tenant under the Leases without Lender's prior written consent;

(14)     Each Lease executed after the date hereof shall contain a statement signed by the Borrower that such Lease is subject to this Security Instrument;

ATX000102

(15)    Borrower shall from time to time furnish to Lender, within thirty (30) days after demand therefor, true, correct and complete copies of all Leases or any portion of the Leases specified by Lender; and

(16)    Borrower shall not in any event collect any Rents and Profits more than one (1) month in advance of the time it will be earned without the prior written consent of Lender (and if Borrower does so, in addition to any other rights or remedies available by reason of such Default, all Rents and Profits so collected more than one (1) month in advance of the time it is earned shall be delivered to Lender to be applied to the secured indebtedness).

(f)    Merger.  There shall be no merger of the leasehold estates created by the Leases with the fee or any other estate in the Property without the prior written consent of Lender.

(g)    Reassignment.  By Lender's acceptance of this Security Instrument, it is understood and agreed that a full and complete release of this Security Instrument shall operate as a full and complete reassignment to Borrower of the Lender's rights and interests under this Article.

(h)    Subordination of Security Instrument to Leases.  It is agreed and understood that Lender hereby reserves the right and shall have the right, at any time and from time to time, without the consent or joinder of any other party, to subordinate this Security Instrument and the liens, assignments and security interests created by this Security Instrument to all or any of the Leases regardless of the respective priority of any of such Leases and this Security Instrument.  Upon doing so and filing evidence of such subordination in the real property records in the county or counties where the Real Property is located, a foreclosure of Lender's liens, assignments and security interests under this Security Instrument shall be subject to and shall not operate to extinguish any of said Leases as to which such subordination is operative.

1.9    Texas Assignment of Rents Act.  Without in any way limiting or restricting any of Lender's other rights, benefits or privileges hereunder, Borrower and Lender hereby expressly agree that Lender shall be entitled to all rights, benefits or privileges provided for in the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code.

1.10    Leases and Licenses.  Upon the occurrence, and during the continuance, of an Event of Default under this Security Instrument, whether before or after the whole principal sum secured hereby is declared to be immediately due or whether before or after the institution of legal proceedings to foreclose this Security Instrument, forthwith, upon demand of Lender, Borrower shall surrender to Lender and Lender shall be entitled to take actual possession of the Property or any part thereof personally, or by Lender's agent or attorneys.  In such event, Lender shall have, and Borrower hereby gives and grants to Lender, the right, power and authority to make and enter into Leases with respect to the Property or portions thereof for such rents and for such periods of occupancy and upon conditions and provisions as Lender may deem desirable in Lender's absolute discretion, and Borrower expressly acknowledges and agrees that the term of any such Lease may extend beyond the date of any foreclosure sale at the Property; it being the intention of Borrower that in such event Lender shall be deemed to be and shall be the attorney-

ATX000103

in-fact of Borrower for the purpose of making and entering into Leases of parts or portions of the Property for the rents and upon the terms, conditions and provisions deemed desirable to Lender in Lender's sole discretion and with like effect as if such Leases had been made by Borrower as the owner in fee simple of the Property free and clear of any conditions or limitations established by this Security Instrument. The power and authority hereby given and granted by Borrower to Lender shall be deemed to be coupled with an interest, shall not be revocable by Borrower so long as any indebtedness secured hereby is outstanding, shall survive the voluntary or involuntary dissolution of Borrower and shall not be affected by any disability or incapacity suffered by Borrower subsequent to the date hereof. In connection with any action taken by Lender pursuant to this Section 1.9, Lender shall not be liable for any loss sustained by Borrower resulting from any failure to let the Property, or any part thereof, or from any other act or omission of Lender in managing the Property, nor shall Lender be obligated to perform or discharge any obligation, duty or liability under any Lease covering the Property or any part thereof or under or by reason of this instrument or the exercise of rights or remedies hereunder. Borrower shall, and does hereby, indemnify Lender for, and hold Lender harmless from, any and all claims, actions, demands, liabilities, loss or damage which may or might be incurred by Lender under any such Lease or under this Security Instrument or by the exercise of rights or remedies hereunder and from any and all claims and demands whatsoever which may be asserted against Lender by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in any such Lease, other than those finally determined to have resulted solely from the gross negligence or intentional misconduct of Lender. Should Lender incur any such liability, the amount thereof, including, without limitation, costs, expenses and attorneys' fees, together with interest thereon at the Default Interest Rate from the date incurred by Lender until actually paid by Borrower, shall be immediately due and payable to Lender by Borrower on demand and shall be secured hereby and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note. Nothing in this Section 1.9 shall impose on Lender any duty, obligation or responsibility for the control, care, management or repair of the Property, or for the carrying out of any of the terms and conditions of any such Lease nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the Tenants or by any other parties or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property. Borrower hereby assents to, ratifies and confirms any and all actions of Lender with respect to the Property taken under this Section 1.9.

1.11    Payment of Utilities, Assessments, Charges, Etc. Borrower shall pay when due all utility charges which are incurred by Borrower or which may become a charge or lien against any portion of the Property for gas, electricity, water and sewer services furnished to the Land and/or the Improvements and all other assessments or charges of a similar nature, or assessments payable pursuant to any restrictive covenants, whether public or private, affecting the Land and/or the Improvements or any portion thereof, whether or not such assessments or charges are or may become liens thereon.

1.12    Access Privileges and Inspections. Lender and the agents, representatives and employees of Lender shall, subject to the rights of Tenants, have full and free access to the Land and the Improvements and any other location where books and records concerning the Property are kept at all reasonable times for the purposes of inspecting the Property and of examining, copying and making extracts from the books and records of Borrower relating to the Property.

ATX000104

Borrower shall lend assistance to all such agents, representatives and employees of Lender. Lender shall have the right to take one (1) asset management trip a year at Borrower's cost and expense, not to exceed One Thousand Dollars ($1,000) per trip.

     1.13   <u>Waste; Alteration of Improvements</u>.  Borrower shall not commit, suffer or permit any intentional waste on the Property nor take any actions that might invalidate any insurance carried on the Property.  Borrower shall maintain the Property in good condition and repair.  No part of the Improvements may be removed, demolished or materially altered, without the prior written consent of Lender.  Without the prior written consent of Lender, Borrower shall not commence construction of any improvements on the Land other than improvements required for the maintenance or repair of the Property.

     1.14   <u>Zoning</u>.  Without the prior written consent of Lender, Borrower shall not seek, make, suffer, consent to or acquiesce in any change in the zoning or conditions of use of the Land or the Improvements.  Borrower shall comply with and make all payments required under the provisions of any covenants, conditions or restrictions affecting the Land or the Improvements.  Borrower shall comply with all existing and future requirements of all governmental authorities having jurisdiction over the Property.  Borrower shall keep all licenses, permits, franchises and other approvals necessary for the operation of the Property in full force and effect.  Borrower shall operate the Property as the Property is currently operated and maintained and shall maintain any non-conforming use for so long as the indebtedness secured hereby is outstanding.  Borrower shall not cause or permit any nonconforming use of the Land and the Improvements to be discontinued or abandoned without the prior written consent of Lender.

     1.15   <u>Security Interest</u>.  This Security Instrument is also intended to encumber and create a security interest in, and Borrower hereby grants to Lender a security interest in, all sums on deposit with Lender in any of the Reserves set forth herein and all fixtures, chattels, accounts, equipment, inventory, contract rights, General Intangibles and other personal property included within the Property, all renewals, replacements of any of the aforementioned items, or articles in substitution therefor or in addition thereto or the proceeds thereof (all of said property is hereinafter referred to collectively as the "<u>Collateral</u>"), whether or not the same shall be attached to the Land or the Improvements in any manner.  It is hereby agreed that to the extent permitted by law, all of the foregoing Collateral is to be deemed and held to be a part of and affixed to the Land and the Improvements.  The foregoing security interest shall also cover Borrower's leasehold interest in any of the foregoing property which is leased by Borrower. Notwithstanding the foregoing, all of the foregoing property shall be owned by Borrower and no leasing or installment sales or other financing or title retention agreement in connection therewith shall be permitted without the prior written approval of Lender.  Borrower shall, from time to time upon the request of Lender, supply Lender with a current inventory of all of the Collateral in which Lender is granted a security interest hereunder, in such detail as Lender may reasonably require.  Borrower shall promptly replace all of the Collateral subject to the lien or security interest of this Security Instrument when worn or obsolete with Collateral comparable to the worn out or obsolete Collateral when new and will not, without the prior written consent of Lender, remove from the Land or the Improvements any of the Collateral subject to the lien or security interest of this Security Instrument except such as is replaced by an article of equal suitability and value as above provided, owned by Borrower free and clear of any lien or security

ATX000105

interest except that created by this Security Instrument and the other Loan Documents and except as otherwise expressly permitted by the terms of this Security Instrument. All of the Collateral shall be kept at the location of the Land except as otherwise required by the terms of the Loan Documents. Borrower shall not use any of the Collateral in violation of any applicable statute, ordinance or insurance policy.

1.16    Security Agreement. This Security Instrument constitutes a security agreement between Borrower and Lender with respect to the Collateral in which Lender is granted a security interest hereunder, and, cumulative of all other rights and remedies of Lender hereunder, Lender shall have all of the rights and remedies of a secured party under any applicable Uniform Commercial Code. Borrower hereby agrees to execute and deliver on demand, and in the event Borrower shall fail to so execute and deliver within two (2) Business Days of Lender's request therefor, hereby authorizes Lender to execute as the attorney in fact on behalf of Borrower, and deliver and, if appropriate, to file with the appropriate filing officer or office such security agreements, financing statements, continuation statements or other instruments as Lender may request or require in order to impose, perfect or continue the perfection of the lien or security interest created hereby. Except with respect to Rents and Profits to the extent specifically provided herein to the contrary, Lender shall have the right of possession of all cash, securities, instruments, negotiable instruments, documents, certificates and any other evidences of cash or other property or evidences of rights to cash rather than property, which are now or hereafter a part of the Property and Borrower shall promptly deliver the same to Lender, endorsed to Lender, without further notice from Lender. Borrower agrees to furnish Lender with notice of any change in the name, identity, organizational structure, residence, or principal place of business or mailing address of Borrower within ten (10) days of the effective date of any such change (without implying Lender's consent to any such change in violation of the provisions of this Security Instrument). Upon the occurrence of any Event of Default, Lender shall have the rights and remedies as prescribed in this Security Instrument, or as prescribed by general law, or as prescribed by any applicable Uniform Commercial Code, all at Lender's election. Any disposition of the Collateral may be conducted by an employee or agent of Lender. Any person, including without limitation both Borrower and Lender, shall be eligible to purchase any part or all of the Collateral at any such disposition. Expenses of retaking, holding, preparing for sale, selling or the like (including, without limitation, Lender's attorneys' fees and legal expenses), together with interest thereon at the Default Interest Rate from the date incurred by Lender until actually paid by Borrower, shall be paid by Borrower on demand and shall be secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note. Lender shall have the right to enter upon the Land and the Improvements or any real property where any of the Collateral which is the subject of the security interest granted herein is located to take possession of, assemble and collect the same or to render it unusable, or Borrower, upon demand of Lender, shall assemble such Collateral and make it available to Lender at the Land, a place which is hereby deemed to be reasonably convenient to Lender and Borrower. If notice is required by law, Lender shall give Borrower at least ten (10) days' prior written notice of the time and place of any public sale of such Collateral or of the time of or after which any private sale or any other intended disposition thereof is to be made, and if such notice is sent to Borrower, as the same is provided for the mailing of notices herein, it is hereby deemed that such notice shall be and is reasonable notice to Borrower. No such notice is necessary for any such Collateral which is perishable, threatens to decline speedily in value or is of a type customarily sold on a recognized market. Any sale made pursuant to the

provisions of this Section 1.15 shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the foreclosure sale as provided in Section 3.1 hereof upon giving the same notice with respect to the sale of the Property hereunder as is required under said Section 3.1. Furthermore, to the extent permitted by law, in conjunction with, in addition to or in substitution for the rights and remedies available to Lender pursuant to any applicable Uniform Commercial Code:

       (a)    In the event of a foreclosure sale, the Property may, at the option of Lender, be sold as a whole; and

       (b)    It shall not be necessary that Lender take possession of the aforementioned Collateral, or any part thereof, prior to the time that any sale pursuant to the provisions of this Section 1.15(b) is conducted and it shall not be necessary that said Collateral, or any part thereof, be present at the location of such sale; and

       (c)    Lender may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Lender, including the sending of notices and the conduct of the sale, but in the name and on behalf of Lender.

The name and address of Borrower (as Debtor under any applicable Uniform Commercial Code) is:

> 900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC,
> 5TH AND RED RIVER, LLC AND 7400 SOUTH CONGRESS,
> LLC401 Congress, 33rd Floor
> Austin, Texas
> Attention: Nate Paul

The name and address of Lender (as Secured Party under any applicable Uniform Commercial Code) are:

> U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP
> c/o CALMWATER CAPITAL
> 11755 Wilshire Blvd., Suite 1425
> Los Angeles, CA 90025
> Attention: Larry Grantham

    1.17   Easements and Rights of Way. Borrower shall not grant any easement or right of way with respect to all or any portion of the Land or the Improvements without the prior written consent of Lender. The purchaser at any foreclosure sale hereunder may, at the purchaser's discretion, disaffirm any easement or right of way granted in violation of any of the provisions of this Security Instrument and may take immediate possession of the Property free from, and despite the terms of, such grant of easement or right of way. If Lender consents to the grant of an easement or right of way, Lender shall be paid a standard review fee of Five Hundred Dollars

ATX000107

($500), together with all other expenses, including, without limitation, attorneys' fees, incurred by Lender in the review of Borrower's request and in the preparation of documents effecting the subordination.

1.18 <u>Compliance with Laws</u>. Borrower shall at all times comply with all statutes, ordinances, orders, regulations and other governmental or quasi-governmental requirements and private covenants now or hereafter relating to the ownership, construction, use or operation of the Property, including, but not limited to, those concerning employment and compensation of persons engaged in operation and maintenance of the Property and any environmental or ecological requirements, even if such compliance shall require structural changes to the Property; <u>provided</u>, <u>however</u>, <u>that</u>, Borrower may, upon providing Lender with security satisfactory to Lender, proceed diligently and in good faith to contest the validity or applicability of any such statute, ordinance, regulation or requirement so long as during such contest the Property shall not be subject to any lien, charge, fine or other liability and shall not be in danger of being forfeited, lost or closed. Borrower shall not use or occupy, or allow the use or occupancy of, the Property in any manner which violates any Lease to the Property or any applicable law, rule, regulation or order or which constitutes a public or private nuisance or which makes void, voidable or cancelable, or increases the premium of, any insurance then in force with respect thereto.

1.19 <u>Additional Taxes</u>. In the event of the enactment after this date of any law of the state where the Property is located or of any other governmental entity deducting from the value of the Property for the purpose of taxation any lien or security interest thereon, or imposing upon Lender the payment of the whole or any part of the taxes or assessments or charges of liens herein required to be paid by Borrower, or changing in any way the laws relating to the taxation of mortgages or security agreements or debts secured by mortgages or security agreements or the interest of Lender or secured party in the property covered thereby, or the manner of collection of such taxes, so as to adversely affect this Security Instrument or the indebtedness secured hereby or Lender, then, and in any such event, Borrower, upon written demand by Lender, shall pay such taxes, assessments, charges or liens, or reimburse Lender therefor; <u>provided</u>, <u>however</u>, <u>that</u> if in the opinion of counsel for Lender (a) it might be unlawful to require Borrower to make such payment, or (b) the making of such payment might result in the imposition of interest beyond the maximum amount permitted by law, then and in either such event, Lender may elect, by notice in writing given to Borrower, to declare all of the indebtedness secured hereby (less any Yield Maintenance) to be and become due and payable in full ninety (90) days from the giving of such notice.

1.20 <u>Contracts</u>. Borrower represents, warrants and covenants to and with Lender that: (a) Borrower shall not make any material changes in or amendments to any of the General Intangibles without the prior written consent of Lender, which consent shall not be unreasonably withheld, delayed or conditioned; provided, however, that notwithstanding the foregoing, Lender's consent shall not be required with respect to changes in or amendments to any Contract (i) which does not relate to the overall management or operation of the Property, (ii) which is terminable without cause and without payment of any penalty or termination fee on thirty (30) days' notice, and (iii) under which the Contractor either waives its right or does not have any right, by reason of applicable law or otherwise, to assert a lien against the Property which is superior to the lien of this Security Instrument; (b) Borrower shall not tender or accept a surrender or cancellation of any of the General Intangibles without the prior written consent of

ATX000108

Lender where such surrender or cancellation would materially or adversely affect the Property or Lender's interest therein or Lender's security or where such surrender or cancellation would violate the terms of any Loan Document; (c) Borrower shall promptly provide to Lender copies of all material changes in or amendments to the Contract whether or not Lender's consent thereto is required pursuant to clause (a) above and Borrower shall promptly notify Lender in writing of any surrender or cancellation of a Contract whether or not Lender's consent thereto is required pursuant to clause (b) above; (d) except as otherwise expressly permitted by the terms of the Loan Agreement, Borrower has not assigned or granted and will not assign or grant a security interest in any of the General Intangibles to anyone other than Lender; (e) Borrower's interest in the General Intangibles is not subject to any claim, setoff, lien, deduction or encumbrance of any nature (other than the encumbrance created hereby, the encumbrance created by this Security Instrument and those subordinate encumbrances, if any, created in connection with any junior encumbrances on the Land expressly permitted by the terms of this Security Instrument); (f) Borrower has full power and authority to make the assignment set forth herein; (g) Borrower shall make all required payments and otherwise perform their obligations under the General Intangibles; and (h) Borrower shall give immediate notice to Lender of any notice of default served upon Borrower with respect to its obligations under any of the General Intangibles and, at the sole cost and expense of Borrower, shall enforce or secure the performance of each and every material obligation of the Contracting Parties to be kept or performed under the Contracts.

(a)    Borrower agrees and acknowledges that no action or actions on the part of Lender (including, without limitation, any assumption by Lender of the rights and obligations under the General Intangibles pursuant to the provisions of <u>Section 1.20(b)</u> below) shall relieve Borrower of any obligation under the General Intangibles and Borrower shall continue to be solely liable for all obligations thereunder, Borrower hereby agreeing to perform each and all of Borrower's obligations under the General Intangibles.  Borrower hereby protects, defends, indemnifies and holds Lender free and harmless from and against any and all loss, cost, liability or expense (including, but not limited to, reasonable attorneys' fees and accountants' fees) resulting from any failure of Borrower to so perform under the General Intangibles.

(b)    Borrower acknowledges that it shall be an Event of Default hereunder upon any failure by Borrower in the performance or observance of any covenant or condition hereof and the continuance of such failure for thirty (30) days (or such shorter period of time specifically provided under any other Loan Document) after notice of such default from Lender (provided that no such notice shall be required if specifically not required under any other Loan Document) within which to cure the same.  Upon an Event of Default hereunder or under any of the other Loan Documents, Lender may, but shall not be obligated to, assume any or all of the obligations of Borrower under any or all of the Contracts and/or exercise the rights, benefits and privileges of Borrower under any or all of the General Intangibles.

(c)    Upon the occurrence, and during the continuance, of an Event of Default hereunder or under any of the other Loan Documents, Lender may give notice to any or all of the Contracting Parties, either requiring the Contracting Party to continue performance under its Contract or, alternatively, terminating the Contract.  The assignment of the Contracts set forth herein shall constitute a direction to and full authority to the Contracting Parties under the Contracts to act at Lender's written direction and otherwise perform on Lender's behalf under the Contracts, without proof of the event of default relied upon.  The Contracting Parties shall be

ATX000109

entitled to rely upon written notice from Lender that Lender has assumed all of the rights and obligations of Borrower under the applicable Contract without any inquiry into whether Borrower is in default hereunder or under any of the other Loan Documents. Such assumption of a Contract by Lender shall be evidenced by written notice from Lender to the applicable Contracting Party. Under no circumstances shall Lender be deemed by any party to have assumed Borrower's rights and obligations under a Contract unless and until such written notice is delivered to the Contracting Party in accordance with the foregoing provision.

(d)     Lender shall have the right at any time, but shall have no obligation, to take in Lender's name or in the name of Borrower, or otherwise, such action as Lender may at any time or from time to time determine to be reasonably necessary to cure any default under the General Intangibles or to protect the rights of Borrower or Lender thereunder. Lender shall incur no liability to Borrower if any action taken by Lender or in Lender's behalf in good faith pursuant to the assignment set forth herein shall prove to be in whole or in part inadequate or invalid. Borrower hereby protects, defends, indemnifies and holds Lender and Lender's affiliated entities, free and harmless from and against any and all loss, cost, liability or expense (including, but not limited to, reasonable attorneys' fees and accountants' fees) to which Lender may be exposed, or that Lender may incur, in exercising any of Lender's rights herein, excluding any such loss which is due solely to the gross negligence or willful misconduct of Lender.

(e)     Borrower hereby irrevocably constitutes and appoints Lender as Borrower's true and lawful attorney-in-fact in Borrower's name or in Lender's name, or otherwise, to, upon the occurrence, and during the continuance, of an Event of Default by Borrower hereunder or under any of the other Loan Documents to enforce all of the rights of Borrower under the General Intangibles. It is hereby recognized that the power of attorney herein granted is coupled with an interest and shall not be revocable so long as any sums are outstanding under the loan evidenced by the Note.

(f)     Notwithstanding anything to the contrary contained herein, Lender shall have no right to assume any Contract or to exercise any rights, benefits or privileges of Borrower under any of the other General Intangibles until an Event of Default by Borrower shall have occurred under the terms hereof or the terms of any of the other Loan Documents and such Event of Default shall not have been cured within any applicable grace or cure period.

(g)     Borrower shall promptly obtain and deliver to Lender consents to the terms hereof, in forms reasonably acceptable to Lender, from such Contracting Parties as Lender may request from time to time. Such consents shall provide that the underlying Contract is subordinate to this Security Instrument and other Loan Documents. If any Contract does not require such Contracting Party to provide such a consent, Borrower shall only be required to use its reasonable commercial efforts to obtain same for Lender.

(h)     <u>Secured Indebtedness</u>. It is understood and agreed that this Security Instrument shall secure payment of not only the indebtedness evidenced by the Note but also any and all substitutions, replacements, renewals and extensions of the Note, any and all indebtedness and obligations arising pursuant to the terms hereof and any and all indebtedness and obligations arising pursuant to the terms of any of the other Loan Documents other than (i) the Indemnity and Guaranty Agreement and (ii) the Hazardous Substances Indemnity in favor of

ATX000110

Lender, all of which indebtedness is equally secured with and has the same priority as any amounts advanced as of the date hereof. It is agreed that any future advances made by Lender to or for the benefit of Borrower from time to time (including, without limitation), whether made under this Security Instrument or the other Loan Documents or otherwise and whether or not such advances or are made at the option of Lender, or otherwise, made for any purpose, and all interest accruing thereon, shall be equally secured by this Security Instrument and shall have the same priority as all amounts, if any, advanced as of the date hereof, although there may be no indebtedness outstanding at the time any such advance is made, and unless otherwise expressly provided in a written instrument executed by Borrower and Lender shall be subject to all of the terms and provisions of this Security Instrument. It shall be an Event of Default hereunder if Borrower shall file or record a notice limiting the maximum principal amount which may be secured by this Security Instrument.

1.21 <u>Borrower's Waivers</u>. To the full extent permitted by law, Borrower agrees that Borrower shall not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, moratorium or extension, or any law now or hereafter in force providing for the reinstatement of the indebtedness secured hereby prior to any sale of the Property to be made pursuant to any provisions contained herein or prior to the entering of any decree, judgment or order of any court of competent jurisdiction, or any right under any statute to redeem all or any part of the Property so sold. Borrower, for Borrower and Borrower's successors and assigns, and for any and all persons ever claiming any interest in the Property, to the full extent permitted by law, hereby knowingly, intentionally and voluntarily with and upon the advice of competent counsel: (a) waives, releases, relinquishes and forever forgoes all rights of valuation, appraisement, stay of execution, reinstatement and notice of election or intention to mature or declare due the secured indebtedness (except such notices as are specifically provided for herein); (b) waives, releases, relinquishes and forever forgoes all right to a marshalling of the assets of Borrower, including without limitation the Property, to a sale in the inverse order of alienation, or to direct the order in which any of the Property shall be sold in the event of foreclosure of the liens and security interests created hereby and agrees that any court having jurisdiction to foreclose such liens and security interests may order the Property sold as an entirety; and (c) waives, releases, relinquishes and forever forgoes all rights and periods of redemption provided under applicable law. To the full extent permitted by law, Borrower shall not have or assert any right under any statute or rule of law pertaining to the exemption of homestead or other exemption under any federal, state or local law now or hereafter in effect, the administration of estates of decedents or other matters whatever to defeat, reduce or affect the right of Lender under the terms of this Security Instrument to a sale of the Property, for the collection of the secured indebtedness without any prior or different resort for collection, or the right of Lender under the terms of this Security Instrument to the payment of the indebtedness secured hereby out of the proceeds of sale of the Property in preference to every other claimant whatever. Further, Borrower hereby knowingly, intentionally and voluntarily, with and upon the advice of competent counsel, waives, releases, relinquishes and forever forgoes all present and future statutes of limitations as a defense to any action to enforce the provisions of this Security Instrument or to collect any of the indebtedness secured hereby to the fullest extent permitted by law. Borrower covenants and agrees that upon the commencement of a voluntary or involuntary bankruptcy proceeding by or against Borrower, Borrower shall not seek a supplemental stay or otherwise shall not seek pursuant to 11 U.S.C. §105 or any other provision of the Bankruptcy Reform Act of 1978, as

ATX000111

amended, or any other debtor relief law (whether statutory, common law, case law, or otherwise) of any jurisdiction whatsoever, now or hereafter in effect, which may be or become applicable, to stay, interdict, condition, reduce or inhibit the ability of Lender to enforce any rights of Lender against any guarantor or indemnitor of the secured obligations or any other party liable with respect thereto by virtue of any indemnity, guaranty or otherwise.

1.22    Contractual Statute of Limitations.    Borrower hereby agrees that any claim or cause of action by Borrower against Lender, or any of Lender's directors, officers, employees, agents, accountants or attorneys, based upon, arising from or relating to the indebtedness secured hereby, or any other matter, cause or thing whatsoever, whether or not relating thereto, occurred, done, omitted or suffered to be done by Lender or by Lender's directors, officers, employees, agents, accountants or attorneys, whether sounding in contract or in tort or otherwise, shall be barred unless asserted by Borrower by the commencement of an action or proceeding in a court of competent jurisdiction by the filing of a complaint within one (1) year after Borrower first acquires or reasonably should have acquired knowledge of the first act, occurrence or omission upon which such claim or cause of action, or any part thereof, is based and service of a summons and complaint on an officer of Lender or any other person authorized to accept service of process on behalf of Lender, within thirty (30) days thereafter. Borrower agrees that such one (1) year period of time is reasonable and sufficient time for a borrower to investigate and act upon any such claim or cause of action. The one (1) year period provided herein shall not be waived, tolled or extended except by the specific written agreement of Lender. This provision shall survive any termination of this Security Instrument or any of the other Loan Documents.

## ARTICLE II
### EVENTS OF DEFAULT

2.1    Events of Default.    "Event of Default" shall have the meaning ascribed to it in the Loan Agreement.

## ARTICLE III
### REMEDIES

3.1    Remedies Available.    If there shall occur an Event of Default under this Security Instrument, then the power of sale granted to Trustee under this Security Instrument shall be rendered operative, this Security Instrument is subject to judicial foreclosure or foreclosure by power of sale as provided by law and Lender may, at Lender's option and by or through Lender's nominee, assignee or otherwise, to the fullest extent permitted by law, exercise any or all of the following rights, remedies and recourses, either successively or concurrently:

(a)    Acceleration.    Accelerate the maturity date of the Note and declare any or all of the indebtedness secured hereby to be immediately due and payable without any presentment, demand, protest, notice, or action of any kind whatever (each of which is hereby expressly waived by Borrower), whereupon the same shall become immediately due and payable. Upon any such acceleration, payment of such accelerated amount shall constitute a prepayment of the principal balance of the Note and any applicable Yield Maintenance provided for in the Note shall then be immediately due and payable.

(b) <u>Entry on the Property</u>. Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of Lender's security, enter upon and take possession of the Property, or any part thereof, without force or with such force as is permitted by law and without notice or process or with such notice or process as is required by law unless such notice and process is waivable, in which case Borrower hereby waives such notice and process, and does any and all acts and performs any and all work which may be desirable or necessary in Lender's judgment to complete any unfinished construction on the Land, to preserve the value, marketability or rentability of the Property, to increase the income therefrom, to manage and operate the Property or to protect the security hereof and all sums expended by Lender therefor, together with interest thereon at the Default Interest Rate, shall be immediately due and payable to Lender by Borrower on demand and shall be secured hereby and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

(c) <u>Collect Rents and Profits</u>. With or without taking possession of the Property, sue or otherwise collect the Rents and Profits, including those past due and unpaid.

(d) <u>Appointment of Receiver</u>. Upon, or at any time prior or after, initiating the exercise of any power of sale, instituting any judicial foreclosure or instituting any other foreclosure of the liens and security interests provided for herein or any other legal proceedings hereunder, make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as a matter of strict right and without notice to Borrower and without regard to the adequacy of the Property for the repayment of the indebtedness secured hereby or the solvency of Borrower or any person or persons liable for the payment of the indebtedness secured hereby, and Borrower does hereby irrevocably consent to such appointment, waives any and all notices of and defenses to such appointment and agrees not to oppose any application therefor by Lender, but nothing herein is to be construed to deprive Lender of any other right, remedy or privilege Lender may now have under the law to have a receiver appointed, <u>provided</u>, <u>however</u>, that, the appointment of such receiver, trustee or other appointee by virtue of any court order, statute or regulation shall not impair or in any manner prejudice the rights of Lender to receive payment of the Rents and Profits pursuant to other terms and provisions hereof. Any such receiver shall have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to hold, develop, rent, lease, manage, maintain, operate and otherwise use or permit the use of the Property upon such terms and conditions as said receiver may deem to be prudent and reasonable under the circumstances as more fully set forth in <u>Section 3.3</u> below. Such receivership shall, at the option of Lender, continue until full payment of all of the indebtedness secured hereby or until title to the Property shall have passed by foreclosure sale under this Security Instrument or deed in lieu of foreclosure.

(e) <u>Judicial Foreclosure</u>. Immediately commence an action to foreclose this Security Instrument or to specifically enforce its provisions or any of the indebtedness secured hereby pursuant to the statutes in such case made and provided and sell the Property or cause the Property to be sold in accordance with the requirements and procedures provided by said statutes in a single parcel or in several parcels at the option of Lender.

ATX000113

(1)     In the event foreclosure proceedings are filed by Lender, all expenses incident to such proceeding, including, but not limited to, attorneys' fees and costs, shall be paid by Borrower and secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note. The secured indebtedness and all other obligations secured by this Security Instrument, including, without limitation, interest at the Default Interest Rate (as defined in the Note), any prepayment charge, fee or premium required to be paid under the Note in order to prepay principal (to the extent permitted by applicable law), attorneys' fees and any other amounts due and unpaid to Lender under the Loan Documents, may be bid by Lender in the event of a foreclosure sale hereunder. In the event of a judicial sale pursuant to a foreclosure decree, it is understood and agreed that Lender or its assigns may become the purchaser of the Property or any part thereof.

(2)     Lender may, by following the procedures and if permitted by applicable law, foreclose on only a portion of the Property and, in such event, said foreclosure shall not affect the lien of this Security Instrument on the remaining portion of the Property foreclosed.

(f)     <u>Foreclosure by Power of Sale</u>. Immediately commence an action to foreclose this Security Instrument by power of sale as set forth below to the fullest extent permitted by law.

(1)     In the event of any inconsistencies between the terms and conditions of this <u>subsection 3.1(f)</u> of this Security Instrument and any other terms of this Security Instrument, the terms and conditions of this <u>subsection 3.1(f)</u> shall control and be binding.

(2)     Should Lender elect to foreclose by exercise of the power of sale herein contained, Lender shall notify Trustee and shall deposit with Trustee this Security Instrument and, if necessary, the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Lender, Trustee shall cause to be recorded, published and/or delivered to Borrower such notice of default and notice of sale as then required by law. Trustee shall, without demand on Borrower, after lapse of such time as may then be required by law and after giving of such notice of default and after notice of sale as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items as Lender shall determine, and in such order as Lender may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Borrower or Lender, but excepting Trustee, may purchase at such sale and Borrower hereby covenants to warrant and defend the title of such purchaser or purchasers.

(3)     Lender may, in its sole discretion, designate the order in which the Property shall be offered for sale or sold through a single sale or through two or more successive sales, or in any other manner Lender deems to be in its best interest. If Lender elects more than one sale or other disposition of the Property, Lender may at its option cause the same to be

ATX000114

conducted simultaneously or successively, on the same day or at such different days or times and in such order as Lender may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Security Instrument on any part of the Property not then sold until all indebtedness secured hereby has been fully paid.  If Lender elects to dispose of the Property through more than one sale, Borrower shall pay the costs and expenses of each such sale of its interest in the Property and of any proceedings where the same may be made.  Trustee may postpone the sale of all or any part of the Property by public announcement at such time and place of sale, or in any manner permitted by law from time to time, and without further notice make such sale at the time fixed by the last postponement; or Trustee may, in its discretion, give a new notice of sale.  Lender may rescind or cancel any such notice of default at any time before Trustee's sale by executing a notice of rescission or cancellation and recording the same.  The recordation of such notice shall constitute a cancellation of any prior declaration of default and demand for sale and of any acceleration of maturity of indebtedness affected by any prior declaration or notice of default.  The exercise by Lender of the right of rescission or cancellation shall not constitute a waiver of any default then existing or subsequently occurring, or impair the right of Lender to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, nor otherwise affect the Note or this Security Instrument, or any of the rights, obligations or remedies of Lender or Trustee hereunder.

(4)     In the event of a sale of the Property, or any part thereof, pursuant to this subsection 3.1(f) and the execution of a deed therefor, the recital therein of default, and of giving notice of default and of the elapse of the required time (if any) between the recording and the notice, and of the giving of notice of sale, and of a demand by Lender, or its successors or assigns, that such sale should be made, shall be conclusive proof of such default, recording, election, elapse of time, and giving of such notice, and that the sale was regularly and validly made on due and proper demand by Lender, its successors or assigns.  Any such deed or deeds with such recitals therein shall be effective and conclusive against Borrower, its successors and assigns, and all other persons.  The receipt for the purchase money recited or contained in any deed executed to the purchaser as aforesaid shall be sufficient discharge to such purchaser from all obligations to see to the proper application of the purchase money.

(g)     Other.  Exercise any other right or remedy available hereunder, under any of the other Loan Documents or at law or in equity.

3.2     Application of Proceeds.  To the fullest extent permitted by law, the proceeds of any sale under this Security Instrument shall be applied to the extent funds are so available to the following items in such order as Lender in Lender's discretion may determine:

(a)     To payment of the costs, expenses and fees of taking possession of the Property, and of holding, operating, maintaining, using, leasing, repairing, improving, marketing and selling the same and of otherwise enforcing Lender's right and remedies hereunder and under the other Loan Documents, including, but not limited to, receivers' fees, court costs, attorneys', accountants', appraisers', managers' and other professional fees, title charges and transfer taxes.

ATX000115

(b)     To payment of all sums expended by Lender under the terms of any of the Loan Documents and not yet repaid, together with interest on such sums at the Default Interest Rate.

(c)     To payment of the secured indebtedness and all other obligations secured by this Security Instrument, including, without limitation, interest at the Default Interest Rate and, to the extent permitted by applicable law, any Yield Maintenance, charge or premium required to be paid under the Note in order to prepay principal, in any order that Lender chooses in Lender's sole discretion.

The remainder, if any, of such funds shall be disbursed to Borrower or to the person or persons legally entitled thereto.

3.3     <u>Right and Authority of Receiver or Lender in the Event of Default; Power of Attorney</u>.  Upon the occurrence of an Event of Default hereunder and entry upon the Property pursuant to <u>Section 3.1(b)</u> hereof or appointment of a receiver pursuant to <u>Section 3.1(d)</u> hereof, and under such terms and conditions as may be prudent and reasonable under the circumstances in Lender's or the receiver's sole discretion, all at Borrower's expense, Lender or said receiver, or such other persons or entities as they shall hire, direct or engage, as the case may be, may do or permit one or more of the following, successively or concurrently:  (a) enter upon and take possession and control of any and all of the Property; (b) take and maintain possession of all documents, books, records, papers and accounts relating to the Property; (c) exclude Borrower and Borrower's agents, servants and employees wholly from the Property; (d) manage and operate the Property; (e) preserve and maintain the Property; (f) make repairs and alterations to the Property; (g) complete any construction or repair of the Property, with such changes, additions or modifications of the plans and specifications or intended disposition and use of the Property as Lender may in Lende'rs sole discretion deem appropriate or desirable to place the Property in such condition as will, in Lender's sole discretion, make the Property or any part thereof readily marketable or rentable; (h) conduct a marketing or leasing program with respect to the Property, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the Property under such terms and conditions as Lender may in Lender's sole discretion deem appropriate or desirable; (i) employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Lender may in Lender's sole discretion deem appropriate or desirable to implement and effectuate the rights and powers herein granted; (j) execute and deliver, in the name of Lender as attorney-in-fact and agent of Borrower or in Borrower's own name, such documents and instruments as are necessary or appropriate to consummate authorized transactions; (k) enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Lender may in Lender's  sole discretion deem appropriate or desirable; (l) collect and receive the Rents and Profits from the Property; (m) eject Tenants or repossess personal property, as provided by law, for breaches of the conditions of their Leases; (n) sue for unpaid Rents and Profits, payments, income or proceeds in the name of Borrower or Lender; (o) maintain actions in forcible entry and detainer, ejectment for possession and actions in distress for rent; (p) compromise or give acquittance for Rents and Profits, payments, income or proceeds that may become due; (q) delegate or assign any and all rights and powers given to Lender by this Security Instrument; and (r) do any acts which Lender in Lender's sole discretion deems appropriate or desirable to

protect the security hereof and use such measures, legal or equitable, as Lender may in Lender's sole discretion deem appropriate or desirable to implement and effectuate the provisions of this Security Instrument. This Security Instrument shall constitute a direction to and full authority to any Tenant, or other third party who has heretofore dealt or contracted or may hereafter deal or contract with Borrower or Lender, at the request of Lender, to pay all amounts owing under any Lease, contract or other agreement to Lender without proof of the Event of Default relied upon. Any such Tenant or third party is hereby irrevocably authorized to rely upon and comply with (and shall be fully protected by Borrower in so doing) any request, notice or demand by Lender for the payment to Lender of any Rents and Profits or other sums which may be or thereafter become due under its Lease, contract or other agreement, or for the performance of any undertakings under any such Lease, contract, concession, license or other agreement, and shall have no right or duty to inquire whether any Event of Default under this Security Instrument or under any of the other Loan Documents has actually occurred or is then existing. Borrower hereby constitutes and appoints Lender, and Lender's assignees, successors, transferees and nominees, as Borrower's true and lawful attorney-in-fact and agent, with full power of substitution in the Property, in Borrower's name, place and stead, to do or permit any one or more of the foregoing described rights, remedies, powers and authorities, successively or concurrently, and said power of attorney shall be deemed a power coupled with an interest and irrevocable so long as any indebtedness secured hereby is outstanding. Any money advanced by Lender in connection with any action taken under this <u>Section 3.3</u>, together with interest thereon at the Default Interest Rate from the date of making such advancement by Lender until actually paid by Borrower, shall be a demand obligation owing by Borrower to Lender and shall be secured by this Security Instrument and by every other instrument securing the secured indebtedness.

3.4     <u>Occupancy After Foreclosure</u>. In the event there is a foreclosure sale hereunder and at the time of such sale, Borrower or Borrower's representatives, successors or assigns, or any other persons claiming any interest in the Property by, through or under Borrower (except Tenants of space in the Improvements subject to Leases entered into prior to the Effective Date), are occupying or using the Property, or any part thereof, then, to the extent not prohibited by applicable law, each and all shall, at the option of Lender or the purchaser at such sale, as the case may be, immediately become the Tenant of the purchaser at such sale, which tenancy shall be a tenancy from day-to-day, terminable at the will of either landlord or Tenant, at a reasonable rental per day based upon the value of the Property occupied or used, such rental to be due daily to the purchaser. Further, to the extent permitted by applicable law, in the event the Tenant fails to surrender possession of the Property upon the termination of such tenancy, the purchaser shall be entitled to institute and maintain an action for unlawful detainer of the Property in the appropriate court of the county in which the Land is located.

3.5     <u>Notice to Account Debtors</u>. Lender may, at any time after an Event of Default notify the account debtors and obligors of any accounts, chattel paper, negotiable instruments or other evidences of indebtedness to Borrower which are included as part of the Property to pay Lender directly. Borrower shall at any time or from time to time upon the request of Lender provide to Lender a current list of all such account debtors and obligors and their addresses.

3.6     <u>Cumulative Remedies</u>. All remedies contained in this Security Instrument are cumulative and Lender shall also have all other remedies provided at law and in equity or in any

ATX000117

other Loan Documents.  Such remedies may be pursued separately, successively or concurrently at the sole subjective direction of Lender and may be exercised in any order and as often as occasion therefor shall arise.  No act of Lender shall be construed as an election to proceed under any particular provisions of this Security Instrument to the exclusion of any other provision of this Security Instrument or as an election of remedies to the exclusion of any other remedy which may then or thereafter be available to Lender.  No delay or failure by Lender to exercise any right or remedy under this Security Instrument shall be construed to be a waiver of that right or remedy or of any Event of Default hereunder.  Lender may exercise any one or more of Lender's rights and remedies at Lender's option without regard to the adequacy of Lender's security.

3.7    Payment of Expenses.  Borrower shall pay on demand all of Lender's expenses incurred in any efforts to enforce any terms of this Security Instrument, whether or not any lawsuit is filed and whether or not foreclosure is commenced but not completed, including, but not limited to, legal fees (including but not limited to appellate fees and fees for all paralegals, legal consultants and other paraprofessionals) and disbursements, foreclosure costs and title charges, together with interest thereon from and after the date incurred by Lender until actually paid by Borrower at the Default Interest Rate, and the same shall be secured by this Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

## ARTICLE IV
## MISCELLANEOUS TERMS AND CONDITIONS

4.1    Time of Essence.  Time is of the essence with respect to all provisions of this Security Instrument and all other Loan Documents.

4.2    Release of Security Instrument.  If all of the secured indebtedness shall be paid, then and in that event only, all rights under this Security Instrument shall terminate except for those provisions hereof which by their terms survive, and the Property shall become wholly clear of the liens, security interests, conveyances and assignments evidenced hereby, which shall be released by Lender in due form at Borrower's cost.  No release of this Security Instrument or the lien hereof shall be valid unless executed by Lender.

4.3    Certain Rights of Lender.  Without affecting Borrower's liability for the payment of any of the indebtedness secured hereby, subject to the Loan Documents, Lender may from time to time and without notice to Borrower: (a) release any person liable for the payment of the indebtedness secured hereby; (b) extend or modify the terms of payment of the indebtedness secured hereby; (c) accept additional real or personal property of any kind as security or alter, substitute or release any property securing the indebtedness secured hereby; (d) recover any part of the Property; (e) consent in writing to the making of any subdivision map or plat thereof; (f) join in granting any easement therein; or (g) join in any extension agreement of this Security Instrument or any agreement subordinating the lien hereof.

4.4    Waiver of Certain Defenses.  No action for the enforcement of the lien hereof or of any provision hereof shall be subject to any defense which would not be good and available to the party interposing the same in an action at law upon the Note or any of the other Loan Documents.

ATX000118

4.5 <u>Successors and Assigns</u>. The terms, provisions, indemnities, covenants and conditions hereof shall be binding upon Borrower and the successors and assigns of Borrower, including all successors in interest of Borrower in and to all or any part of the Property, and shall inure to the benefit of Lender, and Lender's directors, officers, shareholders, employees and agents and their respective successors and assigns and shall constitute covenants running with the land (without implying Lender's consent to any transfer of the Property or any interest in Borrower or the Property in violation of this Security Instrument). All references in this Security Instrument to Borrower or Lender shall be deemed to include all such parties' successors and assigns, and the term "Lender" as used herein shall also mean and refer to any lawful holder or owner, including pledgees and participants, of any of the indebtedness secured hereby. If Borrower consists of more than one person or entity, each shall be jointly and severally liable to perform the obligations of Borrower.

4.6 <u>Severability</u>. A determination that any provision of this Security Instrument is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Security Instrument to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to any other persons or circumstances.

4.7 <u>Gender</u>. Within this Security Instrument, words of any gender shall be held and construed to include any other gender, and words in the singular shall be held and construed to include the plural, and vice versa, unless the context otherwise requires.

4.8 <u>Waiver: Discontinuance of Proceedings</u>. Lender may waive any single Event of Default by Borrower hereunder without waiving any other prior or subsequent Event of Default. Lender may remedy any Event of Default by Borrower hereunder without waiving the Event of Default remedied. Neither the failure by Lender to exercise, nor the delay by Lender in exercising, any right, power or remedy upon any Event of Default by Borrower hereunder shall be construed as a waiver of such Event of Default or as a waiver of the right to exercise any such right, power or remedy at a later date. No single or partial exercise by Lender of any right, power or remedy hereunder shall exhaust the same or shall preclude any other or further exercise thereof, and every such right, power or remedy hereunder may be exercised at any time and from time to time. No modification or waiver of any provision hereof nor consent to any departure by Borrower therefrom shall in any event be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No notice to nor demand on Borrower in any case shall of itself entitle Borrower to any other or further notice or demand in similar or other circumstances. Acceptance by Lender of any payment in an amount less than the amount then due on any of the secured indebtedness shall be deemed an acceptance on account only and shall not in any way affect the existence of an Event of Default hereunder. In case Lender shall have proceeded to invoke any right, remedy or recourse permitted hereunder or under the other Loan Documents and shall thereafter elect to discontinue or abandon the same for any reason, Lender shall have the unqualified right to do so and, in such an event, Borrower and Lender shall be restored to their former positions with respect to the indebtedness secured hereby, the Loan Documents, the Property and otherwise, and the rights, remedies, recourses and powers of Lender shall continue as if the same had never been invoked.

ATX000119

4.9    Section Headings.  The headings of the articles, sections, subsections and paragraphs of this Security Instrument are for convenience of reference only, are not to be considered a part hereof and shall not limit or otherwise affect any of the terms hereof.  This Security Instrument shall not be construed more strictly against one party than against the other merely by virtue of the fact that this Security Instrument may have been physically prepared by one of the parties, or such party's counsel, it being agreed that all parties and their respective counsel have mutually participated in the negotiation and preparation of this Security Instrument.

4.10    Counting of Days.  The term "days" when used herein shall mean calendar days. If any time period ends on a Saturday, Sunday or holiday officially recognized by the state within which the Land is located, the period shall be deemed to end on the next succeeding business day.  The term "business day" when used herein shall mean a weekday, Monday through Friday, except a legal holiday or a day on which banking institutions in Los Angeles, California are authorized by law to be closed.

4.11    Relationship of the Parties.  The relationship between Borrower and Lender is that of a borrower and a lender only and none of those parties is, nor shall it hold itself out to be, the agent, employee, joint venturer or partner of the other party.

4.12    Application of the Proceeds of the Note.  To the extent that proceeds of the Note are used to pay indebtedness secured by any outstanding lien, security interest, charge or prior encumbrance against the Property, such proceeds have been advanced by Lender at Borrower's request and Lender shall be subrogated to any and all rights, security interests and liens owned by any owner or holder of such outstanding liens, security interests, charges or encumbrances, irrespective of whether said liens, security interests, charges or encumbrances are released.

4.13    Unsecured Portion of Indebtedness.  If any part of the secured indebtedness cannot be lawfully secured by this Security Instrument or if any part of the Property cannot be lawfully subject to the lien and security interest hereof to the full extent of such indebtedness, then all payments made shall be applied on said indebtedness first in discharge of that portion thereof which is unsecured by this Security Instrument.

4.14    Interest After Sale.  In the event the Property or any part thereof shall be sold upon foreclosure as provided hereunder, to the extent permitted by law, the sum for which the same shall have been sold shall, for purposes of redemption (pursuant to the laws of the state in which the Property is located), bear interest at the Default Interest Rate.

4.15    Inconsistency with Other Loan Documents.  In the event of any inconsistency between the provisions hereof and the provisions in any of the other Loan Documents, it is intended that the provisions selected by Lender in its sole subjective discretion shall be controlling.

4.16    Construction of this Document.  This document may be construed as a mortgage, security deed, deed of trust, chattel mortgage, conveyance, assignment, security agreement, pledge, financing statement, hypothecation or contract, or any one or more of the foregoing, in order to fully effectuate the liens and security interests created hereby and the purposes and agreements herein set forth.

4.17    No Merger.  It is the desire and intention of the parties hereto that this Security Instrument and the lien hereof do not merge in fee simple title to the Property.  It is hereby understood and agreed that should Lender acquire any additional or other interests in or to the Property or the ownership thereof, then, unless a contrary intent is manifested by Lender as evidenced by an appropriate document duly recorded, this Security Instrument and the lien hereof shall not merge in such other or additional interests in or to the Property, toward the end that this Security Instrument may be foreclosed as if owned by a stranger to said other or additional interests.

4.18    Rights With Respect to Junior Encumbrances.  Any person or entity purporting to have or to take a junior mortgage or other lien upon the Property or any interest therein shall be subject to the rights of Lender to amend, modify, increase, vary, alter or supplement this Security Instrument, the Note or any of the other Loan Documents and to extend the maturity date of the indebtedness secured hereby and to increase the amount of the indebtedness secured hereby and to waive or forebear the exercise of any of Lender's rights and remedies hereunder or under any of the other Loan Documents and to release any collateral or security for the indebtedness secured hereby, in each and every case without obtaining the consent of the holder of such junior lien and without the lien or security interest of this Security Instrument losing its priority over the rights of any such junior lien.  Nothing contained in this Section 4.18 shall be deemed to imply Lender's consent to any further encumbering of the Property in violation of this Security Instrument.

4.19    Lender May File Proofs of Claim.  In the case of any receivership, insolvency, bankruptcy, reorganization, arrangement, adjustment, composition or other proceedings affecting Borrower or the principals or sole member of Borrower, or any of their respective creditors or property, Lender, to the extent permitted by law, shall be entitled to file such proofs of claim and other documents as may be necessary or advisable in order to have the claims of Lender allowed in such proceedings for the entire secured indebtedness at the date of the institution of such proceedings and for any additional amount which may become due and payable by Borrower hereunder after such date.

4.20    After-Acquired Property.  All property acquired by Borrower after the date of this Security Instrument which by the terms of this Security Instrument shall be subject to the lien and the security interest created hereby, shall immediately upon the acquisition thereof by Borrower and without further mortgage, deed of trust, conveyance or assignment become subject to the lien and security interest created by this Security Instrument.  Nevertheless, Borrower shall execute, acknowledge, deliver and record or file, as appropriate, all and every such further mortgages, deeds of trust, security agreements, financing statements, assignments and assurances, as Lender shall require for accomplishing the purposes of this Security Instrument.

4.21    No Representation.  By accepting delivery of any item required to be observed, performed or fulfilled or to be given to Lender pursuant to the Loan Documents, including, but not limited to, any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal or insurance policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, and such acceptance of delivery thereof shall not be or constitute any warranty, consent or affirmation with respect thereto by Lender.

ATX000121

4.22    Counterparts.  This Security Instrument may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page.  Any signature page of this Security Instrument may be detached from any counterpart of this Security Instrument without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Security Instrument identical in form hereto but having attached to it one or more additional signature pages.

4.23    Personal Liability.  Notwithstanding anything to the contrary contained in this Security Instrument, the liability of Borrower and Borrower's officers, directors, members, managers, and principals for the indebtedness secured hereby and for the performance of the other agreements, covenants and obligations contained herein and in the other Loan Documents shall be limited as set forth in Article 3 of the Note.

4.24    Recording and Filing.  Borrower shall cause the Loan Documents and all amendments and supplements thereto and substitutions therefor to be recorded, filed, re-recorded and re-filed in such manner and in such places as Lender shall reasonably request, and shall pay on demand all such recording, filing, re-recording and re-filing taxes, fees and other charges. Borrower shall reimburse Lender, or Lender's servicing agent, for the costs incurred in obtaining a tax service company to verify the status of payment of taxes and assessments on the Property.

4.25    Entire Agreement and Modification.  This Security Instrument and the other Loan Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof and all prior agreements relative hereto and thereto which are not contained herein or therein are terminated.  This Security Instrument and the other Loan Documents may not be amended, revised, waived, discharged, released or terminated orally but only by a written instrument or instruments executed by the party against which enforcement of the amendment, revision, waiver, discharge, release or termination is asserted.  Any alleged amendment, revision, waiver, discharge, release or termination which is not so documented shall not be effective as to any party.

4.26    Maximum Interest.  Notwithstanding anything herein to the contrary, if at any time the interest rate applicable to the Loan, together with all fees, charges and other amounts which are treated as interest on the Loan under applicable law (collectively the "Charges"), shall exceed the maximum lawful rate (the "Maximum Rate") which may be contracted for, charged, taken, received or reserved by Lender in accordance with applicable law, the rate of interest payable in respect of the Loan hereunder, together with all Charges payable in respect thereof, shall be limited to the Maximum Rate and, to the extent lawful, the interest and Charges that would have been payable in respect of the Loan but were not payable as a result of the operation of this Section shall be cumulated and the interest and Charges payable to Lender in respect of other indebtedness or periods shall be increased (but not above the Maximum Rate therefor) until such cumulated amount, together with interest thereon at the Note Rate (as defined in the Note) shall have been received by Lender.  If, for any reason whatever, the Charges paid or received on the Loan produces a rate which exceeds the Maximum Rate, Lender shall credit against the principal of the Loan (or, if such indebtedness shall have been paid in full, shall refund to the payor of such Charges) such portion of said Charges as shall be necessary to cause the interest

ATX000122

paid on the Loan to produce a rate equal to the Maximum Rate. All sums paid or agreed to be paid to the holders of the Loan for the use, forbearance or detention of the Loan shall, to the extent required to avoid or minimize usury and to the extent permitted by applicable law, be amortized, prorated, allocated and spread throughout the full term of this Security Instrument, so that the interest rate does not exceed the Maximum Rate. The provisions of this Section shall control all agreements, whether now or hereafter existing and whether written or oral, between the parties hereto. On each day, if any, that Texas law establishes the Maximum Rate, the Maximum Rate shall be the "weekly ceiling" (as defined in Chapter 303 of the Texas Finance Code (the "Texas Finance Code")) for that day. Lender may from time to time, as to current and future balances, implement any other ceiling under the Texas Finance Code by notice to Borrower, if and to the extent permitted by the Texas Finance Code. Without notice to Borrower or any other person or entity, the Maximum Rate shall automatically fluctuate upward and downward as and in the amount by which such maximum nonusurious rate of interest permitted by applicable law fluctuates.

    4.27   Further Stipulations. The additional covenants, agreements and provisions set forth in the exhibits attached hereto and made a part hereof, if any, shall be a part of this Security Instrument and shall, in the event of any conflict between such further stipulations and any of the other provisions of this Security Instrument, be deemed to control.

    4.28   Dissemination of Information. If Lender determines at any time to sell, transfer or assign the Note, this Security Instrument and the other Loan Documents, and any or all servicing rights with respect thereto, or to grant participations therein (the "Participations") or issue mortgage pass-through certificates or other securities evidencing a beneficial interest in a rated or unrated public offering or private placement (the "Securities"), Lender may forward to each purchaser, transferee, assignee, servicer, participant, investor, and/or their respective successors in such Participations and/or Securities (collectively, the "Investor") and/or any Rating Agency rating such Securities, each prospective Investor and each of the foregoing's respective counsel, all documents and information that Lender now has or may hereafter acquire relating to the indebtedness secured hereby and to Borrower, any guarantor, any indemnitor and the Property, which shall have been furnished by Borrower, any guarantor, and/or any indemnitor, as Lender determines necessary or desirable. Without limiting the foregoing, Borrower acknowledges and agrees that any such transfer, assignment, grant or issuance may be completed at any time without any consent from Borrower.

    4.29   Fixture Filing. This Security Instrument shall be effective from the date of its recording as a financing statement filed as a fixture filing with respect to all goods constituting part of the Property which are, or are to become, fixtures for purposes of Chapter 9 of the Uniform Commercial Code of the state where the fixtures are located. Information concerning the security interests herein granted may be obtained at the addresses stated in the introductory paragraph of this Security Instrument. Borrower, for Borrower and Borrower's successors, hereby agrees to warrant and forever defend, all and singular, title to the Property unto Lender, and Lender's successors or substitutes in this trust, forever, against every person whomsoever lawfully claiming, or to claim, the same or any part thereof, subject, however, to the Permitted Exceptions. This Security Instrument shall also be effective as a financing statement to convey any oil, gas or mineral rights or the like and any other portion of the Property as to which a

security interst may be perfected by filing in the real poprety receords of the respective counties in which each Property is located.

4.30    Administrative Fees.    Lender shall have the right to charge reasonable administrative fees during the term of the loan evidence by the Note and secured hereby as Lender may determine, in Lender's sole reasonable discretion, in connection with Lender's evaluation, preparation and processing of any servicing, administrative or other requests made by Borrower, including without limitation:  processing payments; processing insurance and UCC continuation documentation; processing escrow draws and disbursement requests; review of Leases, Tenant subordination, non-disturbance and attornment agreements and tenant estoppels, requests for transfers or assignments, requests for partial releases and requests for review of new easements).  Lender shall also be entitled to reimbursement for professional fees Lender incurs for such administration, including without limitation, those of architects, engineers, consultants and attorneys (whether (a) employed by Lender or (b) engaged by Lender as independent contractors).

4.31    Waiver of Right of Offset.    No portion of the indebtedness secured hereby shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender.

**ARTICLE V**
DEED OF TRUST PROVISIONS

5.1    Concerning the Trustee.    Trustee shall be under no duty to take any action hereunder except as expressly required hereunder or by law, or to perform any act which would involve Trustee in any expense or liability or to institute or defend any suit in respect hereof, unless properly indemnified to Trustee's reasonable satisfaction.  Trustee, by acceptance of this Security Instrument, covenants to perform and fulfill the trusts herein created, being liable, however, only for gross negligence or willful misconduct, and hereby waives any statutory fee and agrees to accept reasonable compensation, in lieu thereof, for any services rendered by Trustee in accordance with the terms hereof.  Trustee may resign at any time upon giving thirty (30) days' notice to Borrower and to Lender.  Lender may remove Trustee at any time or from time to time and select a successor trustee.  In the event of the death, removal, resignation, refusal to act, or inability to act of Trustee, or in its sole discretion for any reason whatsoever Lender may, without notice and without specifying any reason therefor and without applying to any court, select and appoint a successor trustee, by an instrument recorded wherever this Security Instrument is recorded and all powers, rights, duties and authority of Trustee, as aforesaid, shall thereupon become vested in such successor.  Such substitute trustee shall not be required to give bond for the faithful performance of the duties of Trustee hereunder unless required by Lender.  The procedure provided for in this Section for substitution of Trustee shall be in addition to and not in exclusion of any other provisions for substitution, by law or otherwise.

5.2    Trustee's Fees.    Borrower shall pay all reasonable costs, fees and expenses incurred by Trustee and Trustee's agents and counsel in connection with the performance by

ATX000124

Trustee of Trustee's duties hereunder and all such costs, fees and expenses shall be secured by this Security Instrument.

5.3     Certain Rights.  With the approval of Lender, Trustee shall have the right to take any and all of the following actions: (i) to select, employ, and advise with counsel (who may be, but need not be, counsel for Lender) upon any matters arising hereunder, including the preparation, execution, and interpretation of the Note, this Security Instrument or the other Loan Documents, and shall be fully protected in relying as to legal matters on the advice of counsel, (ii) to execute any of the trusts and powers hereof and to perform any duty hereunder either directly or through his/her agents or attorneys, (iii) to select and employ, in and about the execution of his/her duties hereunder, suitable accountants, engineers and other experts, agents and attorneys-in-fact, either corporate or individual, not regularly in the employ of Trustee, and Trustee shall not be answerable for any act, default, negligence, or misconduct of any such accountant, engineer or other expert, agent or attorney-in-fact, if selected with reasonable care, or for any error of judgment or act done by Trustee in good faith, or be otherwise reasonable or accountable under any circumstances whatsoever, except for Trustee's gross negligence or bad faith, and (iv) any and all other lawful action as Lender may instruct Trustee to take to protect or enforce Lender's rights hereunder.  Trustee shall not be personally liable in case of entry by Trustee, or anyone entering by virtue of the powers herein granted to Trustee, upon the Property for debts contracted for or liability or damages incurred in the management or operation of the Property.  Trustee shall have the right to rely on any instrument, document, or signature authorizing or supporting an action taken or proposed to be taken by Trustee hereunder, believed by Trustee in good faith to be genuine.  Trustee shall be entitled to reimbursement for actual expenses incurred by Trustee in the performance of Trustee's duties hereunder and to reasonable compensation for such of Trustee's services hereunder as shall be rendered.

5.4     Retention of Money.  All moneys received by Trustee shall, until used or applied as herein provided be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by applicable law) and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

5.5     Perfection of Appointment.  Should any deed, conveyance, or instrument of any nature be required from Borrower by any Trustee or substitute trustee to more fully and certainly vest in and confirm to the Trustee or substitute trustee such estates rights, powers, and duties, then, upon request by the Trustee or substitute trustee, any and all such deeds, conveyances and instruments shall be made, executed, acknowledged, and delivered and shall be caused to be recorded and/or filed by Borrower.

5.6     Succession Instruments.  Any substitute trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed, or conveyance, become vested with all the estates, properties, rights, powers, and trusts of its or his/her predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Lender or of the substitute trustee, the Trustee ceasing to act shall execute and deliver any instrument transferring to such substitute trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, and trusts of the Trustee so ceasing to act, and shall duly

ATX000125

assign, transfer and deliver any of the property and moneys held by such Trustee to the substitute trustee so appointed in the Trustee's place.

## ARTICLE VI
### STATE SPECIFIC PROVISIONS

In the event of any conflict between the terms set out in this Article VI and the provisions of this Security Instrument or any of the other Loan Documents, the terms set out in this Article VI shall control for all purposes.

6.1    <u>Foreclosure and Other Remedies</u>.  In addition to any and all other rights and remedies set out in this Security, Lender shall also have all of the rights and remedies set out or contemplated in this Article VI.

(a)    <u>Foreclosure</u>.  Upon the occurrence of any Event of Default beyond any applicable notice and cure period expressly set forth in the Loan Documents, Trustee (or any successor or substitute Trustee) is authorized and empowered and it shall be his special duty at the request of Lender to sell the Property or any part thereof situated in the State of Texas at the courthouse of the county in the State of Texas in which such Property is situated, at public venue to the highest bidder for cash between the hours of 10:00 a.m. and 4:00 p.m. on the first Tuesday in any month after having given notice of such sale in accordance with the statutes of the State of Texas then in force governing sales of real estate under powers conferred by deed of trust.  The sale must begin at the time stated in the notice of sale or not later than three hours after that time. Any sale made by Trustee hereunder may be as an entirety or in such parcels as Lender may request, and any sale may be adjourned by announcement at the time and place appointed for such sale without further notice except as may be required by law.  Further, any sale made by Trustee hereunder may, in lieu of cash, be upon such other terms and conditions as Lender may from time to time hereafter elect.  The sale by Trustee of less than the whole of the Property shall not exhaust the power of sale herein granted, and Trustee is specifically empowered to make successive sale or sales under such power until the whole of the Property shall be sold and, if the proceeds of such sale of less than the whole of the Property shall be less than the aggregate of the indebtedness secured hereby and the expense of executing this trust as provided herein, this Security Instrument and the lien hereof shall remain in full force and effect as to the unsold portion of the Property just as though no sale had been made; provided, however, that Borrower shall never have any right to require the sale of less than the whole of the Property but Lender shall have the right, at its sole election, to request Trustee to sell less than the whole of the Property.  After each sale, Trustee shall make to the purchaser or purchasers at such sale good and sufficient conveyances in the name of Borrower, conveying the property so sold to the purchaser or purchasers in fee simple with general warranty of title, and shall receive the proceeds of said sale or sales and apply the same as herein provided.  Payment of the purchase price to Trustee shall satisfy the obligation of purchaser at such sale therefor, and such purchaser shall not be responsible for the application thereof.  In the event any sale hereunder is not completed or is defective in the opinion of Lender, such sale shall not exhaust the power of sale hereunder and Lender shall have the right to cause a subsequent sale or sales to be made hereunder.  Any and all statements of fact or other recitals made in any deed or deeds given by Trustee as to nonpayment of the indebtedness secured hereby, or as to the occurrence of any Event of Default, or as to Lender having declared all of such indebtedness to be due and payable,

or as to the request to sell, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to the refusal, failure or inability to act of Trustee or any substitute or successor, or as to the appointment of any substitute or successor trustee, or as to any other act or thing having been duly done by Lender or by such Trustee, substitute or successor, shall be taken as conclusive (absent manifest error) evidence of the truth of the facts so stated and recited. Trustee may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Trustee, including the posting of notices and the conduct of sale, but in the name and on behalf of Trustee.

(b)     Right to Require Proof of Financial Ability.     At any time during the bidding of any sale conducted by Trustee under Section 6.1(a) above, Trustee may require a bidding party (a) to disclose its full name, state and city of residence, occupation, and specific business office location, and the name and address of the principal the bidding party is representing (if applicable); and (b) to demonstrate reasonable evidence of the bidding party's financial ability (or, if applicable, the financial ability of the principal of such bidding party), as a condition to the bidding party submitting bids at the foreclosure sale. If any such bidding party (the "Questioned Bidder") declines to comply with Trustee's requirement in this regard, or if such Questioned Bidder does respond but Trustee, in Trustee's sole and absolute discretion, deems the information or the evidence of the financial ability of the Questioned Bidder (or, if applicable, the principal of such bidding party) to be inadequate, Trustee may continue the bidding with reservation; and in such event (i) Trustee shall be authorized to caution the Questioned Bidder concerning the legal obligations to be incurred in submitting bids, and (ii) if the Questioned Bidder is not the highest bidder at the sale, or if having been the highest bidder the Questioned Bidder fails to deliver the cash purchase price payment promptly to Trustee, all bids by the Questioned Bidder shall be null and void. Trustee may, in Trustee's sole and absolute discretion, determine that a credit bid may be in the best interest of Borrower and Lender and elect to sell the Property for credit or for a combination of cash and credit; provided, however, that Trustee shall have no obligation to accept any bid except an all cash bid. In the event Trustee requires a cash bid and cash is not delivered within a reasonable time after conclusion of the bidding process, as specified by Trustee (but in no event later than 3:45 p.m. local time on the date of sale), then said contingent sale shall be null and void, the bidding process may be recommenced, and any subsequent bids or sale shall be made as if no prior bids were made or accepted.

(c)     Judicial Foreclosure.     This Security Instrument shall be effective as a mortgage as well as a deed of trust and upon the occurrence of an Event of Default may be foreclosed as to any of the Property in any manner permitted by the laws of the State of Texas, and any foreclosure suit may be brought by Trustee or by Lender. In the event a foreclosure hereunder shall be commenced by Trustee, Lender may at any time before the sale of the Property direct the said Trustee to abandon the sale, and may then institute suit for the collection of the Note and the other secured indebtedness, and for this foreclosure of this Security Instrument. It is agreed that if Lender should institute a suit for the collection of the Note or any other secured indebtedness and for the foreclosure of this Security Instrument, Lender may at any time before the entry of a final judgment in said suit dismiss the same, and require Trustee to sell the Property in accordance with the provisions of this Security Instrument.

ATX000127

    (d)   <u>Proceeds of Sale</u>. The proceeds of any sale held by Trustee or any receiver or public officer in foreclosure of the liens evidenced hereby shall be applied:

    FIRST, to the payment of all necessary costs and expenses incident to such foreclosure sale, including but not limited to all court costs and charges of every character in the event foreclosed by suit, and a reasonable fee to Trustee acting under the provisions of <u>Section 6.1(a)</u> above if foreclosed by power of sale as provided in said section, not exceeding one percent (1%) of the proceeds of such sale;

    SECOND, to the payment in full of the all of the indebtedness and obligations evidenced or secured by the Loan Documents (including specifically without limitation the principal, interest and attorneys' fees due and unpaid on the Note and the amounts due and unpaid and owed to Lender under this Security Instrument and the other Loan Documents) in such order as Lender may elect, in Lender's sole and absolute discretion; and

    THIRD, the remainder, if any, there shall be, shall be paid to Borrower or to such other party or parties as may be entitled thereto by law.

    (e)   <u>Lender as Purchaser</u>. Lender shall have the right to become the purchaser at any sale held by any Trustee or by any receiver or public officer, and any Lender purchasing at any such sale shall have the right to credit upon the amount of the bid made therefor, to the extent necessary to satisfy such bid, the indebtedness owing to such Lender, or if such Lender holds less than all such indebtedness, the pro rata part thereof owing to such Lender, accounting to all other Lenders not joining in such bid in cash for the portion of such bid or bids apportionable to such non-bidding Lender or Lenders.

    (f)   <u>Uniform Commercial Code</u>. Upon the occurrence of any Event of Default that is continuing, Lender may exercise its rights of enforcement under the Code with respect to the Collateral, and in conjunction with, in addition to or in substitution for those rights and remedies:

    (1)   Lender may enter upon the Property to take possession of, assemble and collect the Collateral or to render it unusable; and

    (2)   Lender may require Borrower to assemble the Collateral and make it available at a place Lender designates which is mutually convenient to allow Lender to take possession or dispose of the Collateral; and

    (3)   written notice mailed to Borrower as provided herein ten (10) days prior to the date of public sale of the Collateral or prior to the date after which private sale of the Collateral will be made shall constitute reasonable notice; and

    (4)   any sale made pursuant to the provisions of this <u>Section 6.1(f)</u> shall be deemed to have been a public sale conducted in a commercially reasonable manner if held contemporaneously with the sale of the Property under power of sale as provided herein upon giving the same notice with respect to the sale of the

ATX000128

Collateral hereunder as is required for such sale of the Property under power of sale; and

(5) in the event of a foreclosure sale, whether made by Trustee under the terms hereof, or under judgment of a court, the Collateral and the remainder of the Property may, at the option of Lender, be sold as a whole; and

(6) it shall not be necessary that Lender take possession of the Collateral or any part thereof prior to the time that any sale pursuant to the provisions of this Section 6.1(f) is conducted and it shall not be necessary that the Collateral or any part thereof be present at the location of such sale; and

(7) prior to application of proceeds of disposition of the Collateral to the secured indebtedness, such proceeds shall be applied to the reasonable expenses of retaking, holding, preparing for sale or lease, selling, leasing and the like and the reasonable attorneys' fees and legal expenses incurred by Lender; and

(8) any and all statements of fact or other recitals made in any bill of sale or assignment or other instrument evidencing any foreclosure sale hereunder as to non-payment of the indebtedness or as to the occurrence of any Event of Default, or as to Lender having declared all of such indebtedness to be due and payable, or as to notice of time, place and terms of sale and of the properties to be sold having been duly given, or as to any other act or thing having been duly done by Lender, shall absent manifest error be taken as conclusive evidence of the truth of the facts so stated and recited; and

(9) Lender may appoint or delegate any one or more persons as agent to perform any act or acts necessary or incident to any sale held by Lender, including the sending of notices and the conduct of sale, but in the name and on behalf of Lender.

(g) Partial Foreclosure. Upon the occurrence of any Event of Default that is continuing, Lender shall have the right to proceed with foreclosure of the liens and security interests evidenced hereby without accelerating or declaring due all or any portion of the secured indebtedness, and in such event any such foreclosure sale may be made subject to the unmatured part of such indebtedness; and any such sale shall not in any manner affect the unmatured part of the indebtedness, but as to such unmatured part, this Security Instrument shall remain in full force and effect just as though no sale had been made. The proceeds of any such sale shall be applied as provided in Section 6.1.(d) of this Security Instrument except that the amount paid under subparagraph SECOND thereof shall be only the matured portion of the indebtedness and any proceeds of such sale in excess of those provided for in subparagraphs FIRST and SECOND (modified as provided above) shall be applied to installments of principal of and interest on the Note in the inverse order of maturity. Several sales may be made hereunder without exhausting the right of sale for any unmatured portion of the indebtedness.

ATX000129

(h)     Waiver.

(1)     To the full extent Borrower may do so, Borrower agrees that Borrower will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force pertaining to the rights and remedies of sureties or providing for any appraisement, valuation, stay, extension or redemption, and Borrower, for Borrower and Borrower's heirs, devisees, representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of intention to mature or declare due the whole of the secured indebtedness, notice of intent to accelerate, notice of acceleration (as to each such notice, except as provided in the clause of the Note entitled "Note and Cure Prior to Acceleration"), and all rights to a marshaling of the assets of Borrower, including the Property, or to a sale in inverse order of alienation in the event of foreclosure of the liens and security interests hereby created.

(2)     Borrower shall not have or assert any right under any statute or rule of law pertaining to the marshaling of assets, sale in inverse order of alienation, the exemption of homestead, the administration of estates of decedents whatever to defeat, reduce or affect the right of Lender under the terms of this Security Instrument to a sale of the Property for the collection of the indebtedness without any prior or different resort for collection, or the right of Lender under the terms of this Security Instrument to the payment of such indebtedness out of the proceeds of sale of the Property in preference to every other claimant whatever.

(3)     To the extent that Borrower, any partner thereof or any other entity responsible for the payment of the indebtedness is now, or at any time or from time to time hereafter is, a partnership, Borrower and Lender expressly acknowledge and agree that Lender is not required to comply with Section 3.05(d) of the Texas Revised Partnership Act or any successor statute, as any of them may be amended or modified, or any other or further laws, rules or regulations now or hereafter in effect which may limit the rights and remedies of a creditor to pursue partners of a partnership prior to the pursuit of such creditor's rights and remedies against such partnership.

(4)     If any law referred to in this Section 6.1(h) and now in force, of which Borrower or Borrower's heirs, devisees, representatives, successors and assigns and such other persons claiming any interest in the Property might take advantage despite this section, shall hereafter be repealed and cease to be in force, such law shall not thereafter be deemed to preclude the application of this section.

(i)     Delivery of Possession After Foreclosure.     In the event there is a foreclosure sale and at the time of such sale Borrower or Borrower's heirs, devisees, representatives, successors or assigns or any other persons claiming any interest in the Property by, through or under Borrower are occupying or using the Property, or any part thereof, each and all shall immediately become the tenant of the purchaser at such sale, which tenancy shall be a

ATX000130

tenancy from day-to-day, terminable at the will of either landlord or tenant, at a reasonable rental per day based upon the value of the property occupied, such rental to be due daily to the purchaser. In the event the tenant fails to surrender possession of said property upon demand, the purchaser shall be entitled to institute and maintain an action for forcible entry and detainer of said property in the Justice of the Peace Court in the Justice Precinct in which such property, or any part thereof, is situated.

(j)     Waiver of Deficiency Statute.

(1)     Subject only to the extent of the limitations expressly specified in Section 3 of the Note, in the event an interest in any of the Property is foreclosed upon pursuant to a judicial or nonjudicial foreclosure sale, Borrower agrees that notwithstanding the provisions of Sections 51.003, 51.004, and 51.005 of the Texas Property Code (as the same may be amended from time to time), and to the extent permitted by law, Lender shall be entitled to seek a deficiency judgment from Borrower and any other party obligated on the Note equal to the difference between the amount owing on the Note and the amount for which the Property was sold pursuant to judicial or nonjudicial foreclosure sale. Borrower expressly recognizes that this paragraph constitutes a waiver of the above-cited provisions of the Texas Property Code which would otherwise permit Borrower and other persons against whom recovery of deficiencies is sought (even absent the initiation of deficiency proceedings against them) to present competent evidence of the fair market value of the Property as of the date of the foreclosure sale and offset against any deficiency the amount by which the foreclosure sale price is determined to be less than such fair market value. Borrower further recognizes and agrees that this waiver creates an irrebuttable presumption that the foreclosure sale price is equal to the fair market value of the Property for purposes of calculating deficiencies owed by Borrower, and others against whom recovery of a deficiency is sought.

(2)     Alternatively, in the event the waiver provided for in subsection (1) above is determined by a court of competent jurisdiction to be unenforceable, to the fullest extent not prohibited by applicable laws, the following shall be the basis for the finder of fact's determination of the fair market value of the Property as of the date of the foreclosure sale in proceedings governed by Sections 51.003, 51.004 and 51.005 of the Texas Property Code (as amended from time to time):

(i)     Property shall be valued in an "as is" condition as of the date of the foreclosure sale, without any assumption or expectation that the Property will be repaired or improved in any manner before a resale of the Property after foreclosure;

(ii)     the valuation shall be based upon an assumption that the foreclosure purchaser desires a resale of the Property for cash promptly (but no later than twelve months) following the foreclosure sale;

(iii)     all reasonable closing costs customarily borne by the seller in a commercial real estate transaction should be deducted from the gross fair market value of the Property, including, without limitation, brokerage commissions, title insurance, a survey of the Property, tax prorations, seller's attorneys' fees and marketing costs;

(iv)     the gross fair market value of the Property shall be further discounted to account for any estimated holding costs associated with maintaining the Property pending sale, including, without limitation, utilities expenses, property management fees, taxes and assessments (to the extent not accounted for in subsection (iii) above) and other maintenance expenses; and

(v)     any expert opinion testimony given or considered in connection with a determination of the fair market value of the Property must be given by persons having at least five years experience in appraising property similar to the Property and who have conducted and prepared a complete written appraisal of the Property taking into consideration the factors set forth above.

(k)     Lawsuits.  Lender may proceed by a suit or suits in equity or at law, whether for collection of the indebtedness secured hereby, the specific performance of any covenant or agreement herein contained or in aid of the execution of any power herein granted, or for any foreclosure hereunder or for the sale of the Property under the judgment or decree of any court or courts of competent jurisdiction.

(l)     Entry on Property.  Lender is authorized, prior or subsequent to the institution of any foreclosure proceedings, to the fullest extent permitted by applicable law, to enter upon the Property, or any part thereof, and to take possession of the Property and all books and records, and all recorded data of any kind or nature, regardless of the medium of recording including, without limitation, all software, writings, plans, specifications and schematics to the extent the same relate solely thereto or can be identified and segregated independently, and to exercise without interference from Borrower any and all rights which Borrower has with respect to the management, possession, operation, protection or preservation of the Property.  Lender shall not be deemed to have taken possession of the Property or any part thereof except upon the exercise of its right to do so, and then only to the extent evidenced by its demand and overt act specifically for such purpose.  All costs, expenses and liabilities of every character incurred by Lender in managing, operating, maintaining, protecting or preserving the Property shall constitute a demand obligation of Borrower (which obligation Borrower hereby promises to pay) to Lender pursuant to this Security Instrument.  If necessary to obtain the possession provided for above, Lender may invoke any and all legal remedies to dispossess Borrower.  In connection with any action taken by Lender pursuant to this section, Lender shall not be liable for any loss sustained by Borrower resulting from any failure to let the Property or any part thereof, or from any act or omission of Lender in managing the Property unless such loss is caused by the willful misconduct and bad faith of Lender, nor shall Lender be obligated to perform or discharge any obligation, duty or liability of Borrower arising under any lease or other agreement relating to the Property or arising under any Permitted Encumbrance or otherwise arising.  Borrower hereby

ATX000132

assents to, ratifies and confirms any and all actions of Lender with respect to the Property taken under this section.

(m)  <u>Exercise of Rights Under Assignment of Leases and Rents</u>.  Lender may exercise and enforce any and all rights or remedies that may be available to Lender under the assignment of rents set out in this Security Instrument.  Without limiting the foregoing, prior or subsequent to taking possession of any portion of the Property or taking any action with respect to such possession, and subject to the terms and provisions of the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code, Lender may: (1) collect and/or sue for the Rents and Profits in Lender's own name, give receipts and releases therefor, and after deducting all expenses of collection, including attorneys' fees and expenses, apply the net proceeds thereof to the secured indebtedness in such manner and order as Lender may elect and/or to the operation and management of the Property, including the payment of management, brokerage and attorney's fees and expenses; and (2) require Borrower to transfer all security deposits and records thereof to Lender together with original counterparts of the Leases.

(n)  <u>Termination of Commitment to Lend</u>.  Upon the occurrence of any Event of Default, Lender may terminate any commitment or obligation to lend or disburse funds under any Loan Document or enter into any other credit arrangement to or for the benefit of Borrower.

(o)  <u>Other Rights and Remedies</u>.  Upon the occurrence of any Event of Default, Lender may exercise any and all other rights and remedies which Lender may have under the Loan Documents, or at law or in equity or otherwise.

6.2  <u>Assignment of Rents</u>.

(a)  <u>Assignment of Rents</u>.  Borrower acknowledges and agrees that the following additional provisions shall apply in connection with the assignments of rents set forth in this Security Instrument:

(a)  in no event shall the rights set out in said <u>Section 1.8</u> effect or be construed so as to effect a pro tanto reduction of the secured indebtedness, except to the extent, if any, that Lender actually receives, after the occurrence of a default and Lender's election to pursue its rights under said <u>Section 1.8</u>, Property income and other sums directly from any tenant of all or any portion of the Property and applies same, in Lender's discretion, to the indebtedness; and

(b)  Lender need not institute, prosecute or resort to any legal, equitable or other action, nor deliver any notice or demand, nor take any affirmative action whatsoever after the occurrence of a default in order to enforce and obtain the benefits of the provisions set out in said <u>Section 1.8</u>.

Notwithstanding anything to the contrary contained herein or otherwise, Borrower and Lender intend, clearly and without ambiguity, that the provisions set forth in said <u>Section 1.8</u> relating to directions and notices to tenants are intended solely for the benefit of Lender and each respective tenant and shall never inure to the benefit of Borrower or any person claiming by, through or

ATX000133

under Borrower. The provisions of this Section 6.2 shall be subject to the provisions of the Texas Assignment of Rents Act, Chapter 64 of the Texas Property Code.

6.3     Interest Limitation.

(a)     Condition to Any Claim.  Borrower hereby agrees that as a condition precedent to asserting any claim against Lender relating to usury, Borrower shall provide written notice to Lender, apprising Lender in reasonable detail of the nature and amount of the violation, and Lender shall have sixty (60) days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against any indebtedness then owing by Borrower to Lender.  In no event shall the provisions of Chapter 346 of the Texas Finance Code (which regulates certain revolving credit loan accounts and revolving triparty accounts) apply to any indebtedness evidenced or secured by any of the Loan Documents.  Notwithstanding anything to the contrary contained herein or in any other Loan Documents, it is not the intention of Lender to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.  To the extent that Lender is relying on Chapter 303 of the Texas Finance Code to determine the maximum lawful rate of interest payable on the secured indebtedness, Lender will utilize the weekly ceiling from time to time in effect as provided in such Chapter 303, as amended.  To the extent United States federal law permits Lender to contract for, charge, take, receive or reserve a greater amount of interest than under Texas law, Lender will rely on United States federal law instead of such Chapter 303 for the purpose of determining the maximum lawful rate.  Additionally, to the extent permitted by applicable law now or hereafter in effect, Lender may, at its option and from time to time, utilize any other method of establishing the maximum lawful rate under such Chapter 303 or under applicable law by giving notice, if required, to Borrower as provided by applicable law now or hereafter in effect.

6.4     Miscellaneous.

(a)     No Partnership.  Notwithstanding anything to the contrary contained herein or otherwise (i) the relationship between Borrower and Lender hereunder and otherwise shall be deemed, construed and treated by Borrower and Lender for all purposes to be solely that of debtor/creditor; (ii) the various consent, approval and other rights afforded to Lender under this Security Instrument have been granted and designed solely to protect the value of the Property and to assure Borrower's payment of the secured indebtedness, and all such rights are customarily granted lenders in secured lending transactions; (iii) Borrower and Lender hereby expressly disclaim any sharing of liabilities, losses, costs or expenses with respect to the ownership or operation of all or any portion of the Property, or otherwise; and (iv) the terms contained herein are not intended by Borrower and Lender and shall not for any purpose be deemed, construed or treated by Borrower and Lender so as (A) to create a partnership or joint venture between Lender and Borrower or between Lender and any other party, or (B) to cause Lender to be or become liable in any way for the debts and obligations of Borrower (including, without limitation, any losses attributable to Borrower's operation of the Property) or any other party.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

(b)    Indemnity.  IT IS THE EXPRESS INTENTION OF BORROWER AND BORROWER HEREBY AGREES THAT THE INDEMNITIES SET FORTH IN THIS SECURITY INSTRUMENT AND THE OTHER LOAN DOCUMENTS (INCLUDING BUT NOT LIMITED TO THOSE SET FORTH IN THE  LOAN AGREEMENT AND IN THAT CERTAIN HAZARDOUS SUBSTANCES INDEMNITY AGREEMENT EXECUTED BY BORROWER AND THE OTHER PARTIES NAMED THEREIN IN FAVOR OF LENDER AND DATED AS OF EVEN DATE HEREWITH) SHALL APPLY TO AND FULLY PROTECT EACH INDEMNIFIED PARTY, EVEN THOUGH ANY CLAIMS, DEMANDS, LIABILITIES, LOSSES, DAMAGES, CAUSES OF ACTION, JUDGMENTS, PENALTIES, COSTS AND EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES) THEN THE SUBJECT OF INDEMNIFICATION MAY HAVE BEEN CAUSED BY, ARISE OUT OF, OR ARE OTHERWISE ATTRIBUTABLE TO, DIRECTLY OR INDIRECTLY, THE NEGLIGENCE IN WHOLE OR IN PART OF SUCH INDEMNIFIED PARTY AND/OR ANY OTHER PARTY, BUT NOT THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SUCH INDEMNIFIED PARTY.

**Borrower's Initials:** _____

(c)    WAIVER OF CONSUMER RIGHTS.    TO THE EXTENT NOW OR HEREAFTER APPLICABLE, BORROWER HEREBY WAIVES BORROWER'S RIGHTS UNDER THE DECEPTIVE TRADE PRACTICES - CONSUMER PROTECTION ACT, SECTION 17.41 ET SEQ., BUSINESS & COMMERCE CODE, A LAW THAT GIVES CERTAIN CONSUMERS SPECIAL RIGHTS AND PROTECTIONS.    AFTER CONSULTATION WITH AN ATTORNEY OF BORROWER'S OWN SELECTION, BORROWER VOLUNTARILY CONSENTS TO THIS WAIVER.

(d)    TEXAS FINANCE CODE SECTION 307.052 COLLATERAL PROTECTION INSURANCE NOTICE:  (A) BORROWER IS REQUIRED TO: (I) KEEP THE PROPERTY INSURED AGAINST DAMAGE IN THE AMOUNT LENDER SPECIFIES; (II) PURCHASE THE INSURANCE FROM AN INSURER THAT IS AUTHORIZED TO DO BUSINESS IN THE STATE OF TEXAS OR AN ELIGIBLE SURPLUS LINES INSURER; AND (III) NAME LENDER AS THE PERSON TO BE PAID UNDER THE POLICY IN THE EVENT OF A LOSS; (B) BORROWER MUST, IF REQUIRED BY LENDER, DELIVER TO LENDER A COPY OF THE POLICY AND PROOF OF THE PAYMENT OF PREMIUMS; AND (C) IF BORROWER FAILS TO MEET ANY REQUIREMENT IN THE FOREGOING CLAUSES (A) OR (B), LENDER MAY OBTAIN COLLATERAL PROTECTION INSURANCE ON BEHALF OF BORROWER AT THE BORROWER'S EXPENSE.

**[END OF TEXT; SIGNATURES FOLLOW ON NEXT PAGES]**

ATX000135

**IN WITNESS WHEREOF**, Borrower has executed this Security Instrument as of the day and year first above written.

**"BORROWER"**

**900 CESAR CHAVEZ, LLC,**
a Delaware limited liability company,

By: _____
    Name: Natin Paul
    Title: President

**905 CESAR CHAVEZ, LLC,**
a Delaware limited liability company,

By: _____
    Name: Natin Paul
    Title: President

**5TH AND RED RIVER, LLC,**
a Delaware limited liability company,

By: _____
    Name: Natin Paul
    Title: President

**7400 SOUTH CONGRESS, LLC,**
a Delaware limited liability company,

By: _____
    Name: Natin Paul
    Title: President

**[SIGNATURE PAGE TO DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT]**

State of _Texas_ )
County of _Travis_ )

On _September 19, 2018_, before me, _Laura Byrd_, personally appeared _Natin Pavi_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NOTARY PUBLIC OF _Texas_
Printed Name: _Laura Byrd_
My Commission Expires: _10/3/20_

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

**[ACKNOWLEDGMENT PAGE TO DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT]**

ATX000137

State of ___Texas___ )
County of ___Travis___ )

On ___September 19, 2018___ , before me, ___Laura Byrd___ ,
personally appeared ___Natin Pavi___ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ___Texas___
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_~signature~_
NOTARY PUBLIC OF ___Texas___
Printed Name: ___Laura Byrd___
My Commission Expires: ___10/3/20___

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

**[ACKNOWLEDGMENT PAGE TO DEED OF TRUST, SECURITY AGREEMENT AND
FINANCING STATEMENT]**

ATX000138

State of _TEXAS_                              )
County of _Travis_                           )

On _September 19, 2018_ , before me, _Laura Byrd_ ,
personally appeared _Natin Paul_ ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NOTARY PUBLIC OF _Texas_
Printed Name: _Laura Byrd_
My Commission Expires: _10/3/20_

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

**[ACKNOWLEDGMENT PAGE TO DEED OF TRUST, SECURITY AGREEMENT AND FINANCING STATEMENT]**

State of _Texas_                      )
County of _Travis_                    )

On _september 19, 2018_        , before me, _Laura Byrd_                    ,
personally appeared _Natin Paul_                                            ,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _Texas_
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

NOTARY PUBLIC OF _Texas_
Printed Name: _Laura Byrd_
My Commission Expires: _10/3/20_

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

**[ACKNOWLEDGMENT PAGE TO DEED OF TRUST, SECURITY AGREEMENT AND
FINANCING STATEMENT]**

ATX000140

## EXHIBIT A-1

## DESCRIPTION OF 5th PROPERTY

TRACT 1: Lot 2, Block 60 of the Original City of Austin, Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, SAVE AND EXCEPT the West 18 inches of the South 40 feet 6 inches as described in instrument recorded in Volume 365, Page 403 of the Deed Records of Travis County, Texas.

TRACT 2: Lots A and B, LINAM NO. 1, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 80, Page 182 of the Plat Records of Travis County, Texas.

i

ATX000141

## EXHIBIT A-2

## DESCRIPTION OF 900 CESAR CHAVEZ PROPERTY

Lots 1, 2, 3 and 4, Block 4, JAMES HARRINGTON'S SUBDIVISION OF OUTLOT 17, DIVISION "O", according to the map or plat thereof, recorded in Volume X, Page 636, Plat Records, Travis County, Texas.

ATX000142

## EXHIBIT A-3

### DESCRIPTION OF 905 CESAR CHAVEZ PROPERTY

Lots 8 and 9, Block 1, R. W. MAGUIRE'S SUBDIVISION OF OUTLOTS 31 AND 32, DIVISION O, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 165 of the Plat Records of Travis County, Texas, as further affected by Boundary Line Agreement and Special Warranty Deed dated January 4, 2002, recorded under Document No. 2002008652 of the Official Public Records of Travis County, Texas.

ATX000143

## EXHIBIT A-4

## DESCRIPTION OF CONGRESS PROPERTY

Tract 1:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND LYING AND BEING SITUATED IN TRAVIS COUNTY, TEXAS, BEING 5.133 ACRES OF LAND LOCATED IN THE WILLIAM CANNON LEAGUE, ABSTRACT NO. 6, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, BEING A PORTION OF A 5.65 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at an iron pin found at the northwest corner of the above mentioned 5.65 acre tract of land, said point being in the east line of Meadowcreek, Section 2, Phase 2, a subdivision in Austin, Travis County, Texas according to the plat recorded in Book 71, Page 31, of the Travis County Plat Records and from which point an trot pin found at the southeast corner of Lot 8 Block H, Meadowcreek, Section 2, Phase 2, bears South 71 deg.17'00" East, 91.80 feet;

THENCE with the north line of said 5.65 acre tract, South 71 deg.17'00" East, 710.20 feet to an iron pin found for the northeast corner of said 5.113 acre and hereof, and from which point an iron pin found at the northeast corner of a 1.44 acre tract;

THENCE South 14 deg.32' West, 310.50 feet to an iron pin found for the southeast corner of said 5.113 acre tract and hereof, and southwest corner of said 1.440 acre tract; pin being on north line of 2.2686 acre tract of Humble Pipe Line Co.

THENCE with the north line of said Humble Pipe Line Co. tract, North 75 deg.28'00" West, 622.23 feet to an iron pin found in the east line of Meadowcreek, Section 2, Phase 2, for the southwest corner of said 5.65 acre tract and hereof, and for the northwest corner of the Humble Pipe Line Co. Tract;

THENCE with the east line of Meadowcreek, Section 2, Phase 2, North 01 deg.10'00" East at 102.98 feet passing the northwest corner of Lot 5, Block M, Meadowcreek, Section 2 Phase 2, in all a distance of 372.40 feet to the POINT OF THE BEGINNING, containing in all 5.113 acres of land more or less.

Tract 2:

BEING A TRACT OR PARCEL OF LAND SITUATED IN TRAVIS COUNTY, TEXAS, BEING OUT OF AND A PART OF THE WILLIAM CANNON LEAGUE, ABSTRACT NO. 6, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, OUT 5.65 ACRE TRACT AND A .09 ACRE TRACT, DESCRIBED BY THE BOUNDARY LINE AGREEMENT RECORDED IN VOLUME 4862, PAGE 1328 OF THE TRAVIS COUNTY DEED RECORDS, AND BEING THE SAME TRACT OF LAND DESCRIBED AS TRACT 2 IN A DEED FROM ISAM KUSSAD AND JOYCE KUSSAD, HUSBAND AND WIFE, TO SERGIO LOZANO-SANCHEZ AND MARION SANCHEZ-LOZANO, DATED FEBRUARY 19, 2003 AND RECORDED IN 2003045409 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING at a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of that 2.2686 tract of land conveyed to Humble Pipeline Company by deed recorded in Volume 993, Page 101 of the Deed

ATX000144

Records of Travis County, Texas, and which point is also POINT OF BEGINNING of the herein described tract;

THENCE with the South line of this tract and the north line of the Humble Pipeline Company tract North 75°32'24" West at a distance of 376. 78 feet to a 1" iron pipe found at the Southwest corner of this tract and the Southeast corner of a 4.95 acre tract of land conveyed to Pecan Grove Joint Venture by deed recorded in Volume 7581, Page 179 of the Deed Records of Travis County, Texas;

THENCE with the west line of this tract and the east line of the Pecan Grove Joint Venture tract North 14 deg.35'56" East at a distance of 309.60 feet to a 1/2" iron rod found at the Northwest corner of this tract and the Northeast corner of the Pecan Grove Joint Venture tract, and a point in the south line of Lot 1A of Sarah Ann Fritts Subdivision;

THENCE with the North line of this tract and the south line of Lot 1A of Sarah Ann Fritts Subdivision South 71 deg.14'57" East at a distance of 31.27 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Northwest corner of Lot 1 of The Ennis Subdivision, a Travis County subdivision recorded in Volume 82, Page 20, Plat Records, Travis County, Texas;

THENCE with the East line of this tract and the west line of Lot 1 of The Ennis Subdivision South 06 deg.08'54" West at a distance cf 155.84 feet to a 1/2" iron rod found at a corner of this tract in the North line of this tract and the Southwest corner of Lot 1 of The Ennis Subdivision;

THENCE with the North line of this tract and the south line of Lot 1 of The Ennis Subdivision South 73 deg. 11 '02" East at a distance of 324.92 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Southeast corner of Lot 1 of The Ennis Subdivision, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue);

THENCE with the East line of this tract and the west line of U.S. Highway 81 (South Congress Avenue) South 15 deg.24'48" West at a distance of 139.72 feet to a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of the Humble Pipeline Company tract, and being the POINT OF BEGINNING, containing 1.4296 acres of land, more or less.

Tract 3:

Lot 1, of ENNIS SUBDIVISION, an addition in Travis County, Texas, according to the map or plat thereof recorded in Plat Book 82, Page 20, of the Plat Records of Travis County, Texas.

ATX000145

Records of Travis County, Texas, and which point is also POINT OF BEGINNING of the herein described tract;

THENCE with the South line of this tract and the north line of the Humble Pipeline Company tract North 75°32'24" West at a distance of 376. 78 feet to a 1" iron pipe found at the Southwest corner of this tract and the Southeast corner of a 4.95 acre tract of land conveyed to Pecan Grove Joint Venture by deed recorded in Volume 7581, Page 179 of the Deed Records of Travis County, Texas;

THENCE with the west line of this tract and the east line of the Pecan Grove Joint Venture tract North 14 deg.35'56" East at a distance of 309.60 feet to a 1/2" iron rod found at the Northwest corner of this tract and the Northeast corner of the Pecan Grove Joint Venture tract, and a point in the south line of Lot 1A of Sarah Ann Fritts Subdivision;

THENCE with the North line of this tract and the south line of Lot 1A of Sarah Ann Fritts Subdivision South 71 deg.14'57" East at a distance of 31.27 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Northwest corner of Lot 1 of The Ennis Subdivision, a Travis County subdivision recorded in Volume 82, Page 20, Plat Records, Travis County, Texas;

THENCE with the East line of this tract and the west line of Lot 1 of The Ennis Subdivision South 06 deg.08'54" West at a distance cf 155.84 feet to a 1/2" iron rod found at a corner of this tract in the North line of this tract and the Southwest corner of Lot 1 of The Ennis Subdivision;

THENCE with the North line of this tract and the south line of Lot 1 of The Ennis Subdivision South 73 deg. 11 '02" East at a distance of 324.92 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Southeast corner of Lot 1 of The Ennis Subdivision, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue);

THENCE with the East line of this tract and the west line of U.S. Highway 81 (South Congress Avenue) South 15 deg.24'48" West at a distance of 139.72 feet to a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of the Humble Pipeline Company tract, and being the POINT OF BEGINNING, containing 1.4296 acres of land, more or less.

Tract 3:

Lot 1, of ENNIS SUBDIVISION, an addition in Travis County, Texas, according to the map or plat thereof recorded in Plat Book 82, Page 20, of the Plat Records of Travis County, Texas.

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
September 25 2018 02:07 PM
FEE: $   254.00   2018151772

v