ELECTRONICALLY RECORDED 2018151773
TRV     19     PGS

RECORDING REQUESTED BY AND
AFTER RECORDING RETURN DOCUMENT TO:

Safarian Choi & Bolstad LLP
555 South Flower St., Suite 650
Los Angeles, California 90071
Attention: Alex Y. Choi, Esq.

11-GF#2018010091-HDRK
RETURN TO: HERITAGE TITLE
401 CONGRESS AVE., SUITE 1500
AUSTIN, TEXAS 78701

## ASSIGNMENT OF LEASES AND RENTS
### (World Class – Austin Portfolio)

THIS ASSIGNMENT OF LEASES AND RENTS (this "Assignment") made as of September 21, 2018, is by **900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC**, each a Delaware limited liability company (collectively, "Assignor"), the address of which is 401 Congress Avenue, 33rd Floor, Austin, Texas 78701, in favor of **U.S. REAL ESTATE CREDIT HOLDINGS III-A, LP**, an Irish limited partnership("Assignee"), whose address is c/o Calmwater Capital, 11755 Wilshire Blvd., Suite 1425, Los Angeles, CA 90025.

### W I T N E S S E T H :

THAT, WHEREAS, Assignor has executed that certain (i) Promissory Note dated of even date herewith (the "Note"), payable to the order of Assignee, in the stated principal amount of TWENTY TWO MILLION NINE HUNDRED THIRTY TWO THOUSAND TWO HUNDRED FIFTY AND NO/100 DOLLARS ($22,932,250.00) (the "Loan") and (ii) Loan Agreement dated of even date herewith (the "Loan Agreement"); and

WHEREAS, the Note is secured by that certain Deed of Trust, Security Agreement and Financing Statement dated as of the Effective Date (the "Security Instrument") from Assignor, as trustor to the trustee named therein for the benefit of Assignee, encumbering those certain real property more particularly described on Exhibits A-1 through A-4 attached hereto and incorporated herein by this reference, and all buildings and other improvements now or hereafter located thereon (collectively, the "Improvements") (said real property and the Improvements are hereinafter sometimes collectively referred to as the "Property"); and

WHEREAS, Assignor is desirous of further assuring the performance of the terms, covenants and agreements hereof and of the Loan Agreement, the Note, the Security Instrument and each other document evidencing, securing, guaranteeing or otherwise relating to the indebtedness evidenced by the Note (the Loan Agreement, the Note, the Security Instrument, between the parties of even date herewith and such other documents, as each of the foregoing may from time to time be amended, consolidated, renewed or replaced, being collectively referred to herein as the "Loan Documents").

NOW, THEREFORE, in consideration of the making of the loan evidenced by the Note by Assignee to Assignor, and as an additional source of payment of such loan, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby irrevocably, absolutely and unconditionally transfer, sell, assign, pledge


EXHIBIT "5"

ATX000147

and convey to Assignee, and Assignee's successors and assigns, all of the right, title and interest of Assignor in and to:

(a) any and all leases, licenses, rental agreements, concessions and occupancy agreements of whatever form now or hereafter affecting all or any part of the Property and any and all guarantees, extensions, renewals, replacements and modifications thereof (collectively, the "Leases"); and

(b) all deposits (whether for security or otherwise), rents, issues, profits, revenues, royalties, accounts, rights, benefits and income of every nature of and from the Property, including, without limitation, minimum rents, additional rents, termination payments, forfeited security deposits, liquidated damages following default and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability due to destruction or damage to the Property, together with the immediate and continuing right to collect and receive the same, whether now due or hereafter becoming due, and together with all rights and claims of any kind that Assignor may have against any Tenant (as defined in the Security Instrument) (collectively, the "Rents").

TO HAVE AND TO HOLD the same unto Assignee, and Assignee's successors and assigns.

IT IS AGREED that, notwithstanding that this instrument is a present, absolute and executed assignment of the Rents and of the Leases and a present, absolute and executed grant of the powers herein granted to Assignee, Assignor is hereby permitted, at the sufferance of Assignee and at Assignee's discretion, and is hereby granted a license by Assignee, to retain possession of the Leases and to collect and retain the Rents unless and until there shall be an Event of Default under the terms of any of the Loan Documents. Upon the occurrence of such Event of Default and the lapse of any applicable notice and cure period the aforementioned license granted to Assignor shall automatically terminate without notice to Assignor, and Assignee may thereafter, without taking possession of the Property, take possession of the Leases and collect the Rents. Further, from and after such termination, Assignor shall be the agent of Assignee in collection of the Rents, and any Rents so collected by Assignor shall be held in trust by Assignor for the sole and exclusive benefit of Assignee, and Assignor shall, within one (1) business day after receipt of any Rents, pay the same to Assignee to be applied by Assignee as hereinafter set forth. Furthermore, from and after such Event of Default and termination of the aforementioned license, Assignee shall have the right and authority, without any notice whatsoever to Assignor and without regard to the adequacy of the security therefor, to: (a) make application to a court of competent jurisdiction for appointment of a receiver for all or any part of the Property, as particularly set forth in the Security Instrument, (b) manage and operate the Property, with full power to employ agents to manage the same; (c) demand, collect, receive and sue for the Rents, including without limitation those past due and unpaid; and (d) do all acts relating to such management of the Property, including, but not limited to, negotiation of new Leases, making adjustments of existing Leases, contracting and paying for repairs and replacements to the Improvements and to the fixtures, equipment and personal property located in the Improvements or used in any way in the operation, use and occupancy of the Property as in the sole judgment and discretion of Assignee may be necessary to maintain the same in a tenantable condition, purchasing and paying for such additional furniture and equipment as in the

sole judgment of Assignee may be necessary to maintain a proper rental income from the Property, employing necessary managers and other employees, purchasing fuel, providing utilities and paying for all other expenses incurred in the operation of the Property, maintaining adequate insurance coverage over hazards customarily insured against and paying the premiums therefor. Assignee may apply the Rents received by Assignor from the Property, after deducting the costs of collection thereof, including, without limitation, attorneys' fees and a reasonable management fee for any management agent so employed, against amounts expended for repairs, upkeep, maintenance, service, fuel, utilities, taxes, assessments, insurance premiums and such other expenses as Assignee incurs in connection with the operation of the Property and against interest, principal, required escrow deposits and other sums which have or which may become due, from time to time, under the terms of the Loan Documents, in such order or priority as to any of the items so mentioned as Assignee, in Assignee's sole subjective discretion, may determine. The exercise by Assignee of the rights granted Assignee in this paragraph, and the collection of, the Rents and the application thereof as provided herein, shall not be considered a waiver by Assignee of any Event of Default under the Loan Documents or prevent foreclosure of any liens on the Property nor shall such exercise make Assignee liable under any of the Leases, Assignee hereby expressly reserving all of Assignee's rights and privileges under the Security Instrument and the other Loan Documents as fully as though this Assignment had not been entered into.

Without limiting the rights granted hereinabove, in the event Assignor shall fail to make any payment or to perform any act required under the terms hereof and such failure shall not be cured within any applicable grace or cure period, then Assignee may, but shall not be obligated to, without prior notice to or demand on Assignor, and without releasing Assignor from any obligation hereof, make or perform the same in such manner and to such extent as Assignee may deem necessary to protect the security hereof, including specifically, without limitation, appearing in and defending any action or proceeding purporting to affect the security hereof or the rights or powers of Assignee, performing or discharging any obligation, covenant or agreement of Assignor under any of the Leases, and, in exercising any of such powers, paying all necessary costs and expenses, employing counsel and incurring and paying attorneys' fees. Any sum advanced or paid by Assignee for any such purpose, including, without limitation, attorneys' fees, together with interest thereon at the Default Interest Rate (as defined in the Note) from the date paid or advanced by Assignee until repaid by Assignor, shall immediately be due and payable to Assignee by Assignor on demand and shall be secured by the Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note.

IT IS FURTHER AGREED that this Assignment is made upon the following terms, covenants and conditions:

1. This Assignment shall not operate to place responsibility for the control, care, management or repair of the Property upon Assignee, nor for the performance of any of the terms and conditions of any of the Leases, nor shall this Assignment operate to make Assignee responsible or liable for any waste committed on the Property by the Tenants or any other party or for any dangerous or defective condition of the Property or for any negligence in the management, upkeep, repair or control of the Property unless and until Assignee takes actual possession of the Property. Assignee shall not be liable for any loss sustained by Assignor

ATX000149

resulting from Assignee's failure to let the Property or from any other act or omission of Assignee in managing the Property in the absence of Assignee's gross negligence or willful misconduct. Assignor shall and does hereby indemnify and hold Assignee harmless from and against any and all liability, loss, claim, demand or damage which may or might be incurred by reason of this Assignment, including, without limitation, claims or demands for security deposits from Tenants of space in the Improvements deposited with Assignor, and from and against any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or undertakings on Assignee's part to perform or discharge any of the terms, covenants or agreements contained in any of the Leases. Should Assignee incur any liability by reason of this Assignment or in defense of any claim or demand for loss or damage as provided above, the amount thereof, including, without limitation, costs, expenses and attorneys' fees, together with interest thereof at the Default Interest Rate from the date paid or incurred by Assignee until repaid by Assignor, shall be immediately due and payable to Assignee by Assignor upon demand and shall be secured by the Security Instrument and by all of the other Loan Documents securing all or any part of the indebtedness evidenced by the Note. Notwithstanding the foregoing, Assignor shall have no obligation to indemnify Assignee for any matter that arises out of Assignee's gross negligence or willful misconduct.

2. This Assignment shall not be construed as making Assignee a mortgagee in possession.

3. Assignee is obligated to account to Assignor only for such Rents as are actually collected or received by Assignee.

4. Assignor hereby further presently and absolutely assigns to Assignee subject to the terms and provisions of this Assignment: (a) any award or other payment which Assignor may hereafter become entitled to receive with respect to any of the Leases as a result of or pursuant to any bankruptcy, insolvency or reorganization or similar proceedings involving the Tenants under such Leases; and (b) any and all payments made by or on behalf of any Tenant of any part of the Property in lieu of Rent. Assignor hereby irrevocably appoints Assignee as Assignee's attorney-in-fact to, from and after the occurrence of an Event of Default by Assignor hereunder or under any of the other Loan Documents which has not been cured within any applicable grace or cure period, appear in any such proceeding and to collect any such award or payment, which power of attorney is coupled with an interest by virtue of this Assignment and is irrevocable so long as any sums are outstanding under the loan evidenced by the Note.

5. Assignor represents, warrants and covenants to and for the benefit of Assignee: (a) that Assignor now is (or with respect to any Leases not yet in existence, will be immediately upon the execution thereof) the absolute owner of the landlord's interest in the Leases, with full right and title to assign the same and the Rents due or to become due thereunder; (b) that, other than this Assignment, there are no outstanding assignments of the Leases or Rents; (c) that no Rents have been anticipated, discounted, released, waived, compromised or otherwise discharged except for prepayment of rent of not more than one (1) month prior to the accrual thereof; (d) that there are no defaults now existing under any of the Leases by the landlord or Tenant, and there exists no state of facts which, with the giving of notice or lapse of time or both, would constitute a default under any of the Leases by the landlord or Tenant, except as disclosed in writing to Assignee; (e) that Assignor has and shall duly and punctually observe and perform all

ATX000150

covenants, conditions and agreements in the Leases on the part of the landlord to be observed and performed thereunder; and (f) the Leases are in full force and effect and are the valid and binding obligations of Assignor, and, to the knowledge of Assignor, are the valid and binding obligations of the Tenants thereto.

6. Assignor covenants and agrees that Assignor shall not, without the prior written consent of Assignee: (a) exclusive of security deposits, accept any payment of Rent or installments of Rent for more than one (1) month in advance; (b) cancel or terminate any Lease (other than for non-payment of Rent or other material breach thereof) or amend or modify any Lease; (c) take or omit to take any action right or option which would permit the Tenant under any Lease to cancel or terminate said Lease; (d) anticipate, discount, release, waive, compromise or otherwise discharge any Rents payable or other obligations under the Leases; (e) further pledge, transfer, mortgage or otherwise encumber or assign the Leases or future payments of Rents or incur any indebtedness, liability or other obligation to any Tenant under the Leases; or (f) permit any Lease to become subordinate to any lien other than the lien of the Security Instrument; provided, however, that Assignor may take any of the actions described in subsection (b) or (d) above so long as no Event of Default has occurred and so long as such actions are taken by Assignor in the ordinary course of business and are consistent with sound customary leasing and management practices for similar properties.

7. Assignor covenants and agrees that Assignor shall, at Assignor's sole cost and expense, appear in and defend any action or proceeding arising under, growing out of, or in any manner connected with the Leases or the obligations, duties or liabilities of the landlord or Tenant thereunder, and shall pay on demand all costs and expenses, including, without limitation, attorneys' fees, which Assignee may incur in connection with Assignee's appearance, voluntary or otherwise, in any such action or proceeding, together with interest thereon at the Default Interest Rate from the date incurred by Assignee until repaid by Assignor.

8. At any time, Assignee may, at Assignee's option, notify any Tenants or other parties of the existence of this Assignment. Assignor does hereby specifically authorize, instruct and direct each and every present and future Tenant of the whole or any part of the Property to pay all unpaid and future Rents to Assignee upon receipt of demand from Assignee to so pay the same and Assignor hereby agrees that each such present and future Tenant may rely upon such written demand from Assignee to so pay said Rents without any inquiry into whether there exists an Event of Default hereunder or under the other Loan Documents or whether Assignee is otherwise entitled to said Rents. Assignor hereby waives any right, claim or demand which Assignor may now or hereafter have against any present or future Tenant by reason of such payment of Rents to Assignee, and any such payment shall discharge such Tenant's obligation to make such payment to Assignor.

9. Assignee may take or release any security for the indebtedness evidenced by the Note, may release any party primarily or secondarily liable for the indebtedness evidenced by the Note, may grant extensions, renewals or indulgences with respect to the indebtedness evidenced by the Note and may apply any other security therefor held by Assignor to the satisfaction of any indebtedness evidenced by the Note without prejudice to any of Assignor's rights hereunder.

ATX000151

10. The acceptance of this Assignment and the collection of the Rents in the event Assignor's license is terminated, as referred to above, shall be without prejudice to Assignee. The rights and remedies of Assignee hereunder and at law are cumulative and concurrent, may be pursued separately, successively or together and may be exercised as often as occasion therefor shall arise, it being agreed by Assignor that the exercise of any one or more of the rights provided for herein shall not be construed as a waiver of any of the other rights or remedies of Assignee, at law or in equity or otherwise, so long as any obligation under the Loan Documents remains unsatisfied.

11. All rights of Assignee hereunder shall inure to the benefit of Assignee's successors and assigns (without implying Assignor's consent to any transfer of any of the Property in violation of the Loan Agreement or any of the other Loan Documents); and all obligations of Assignor shall bind Assignor's successors and assigns and any subsequent owner or owners of the Property. All rights of Assignee in, to and under this Assignment shall pass to and may be exercised by any assignee of such rights of Assignee. Assignor hereby agrees that if Assignee gives notice to Assignor of an assignment of said rights, upon such notice the liability of Assignor to the assignee of the Assignee shall be immediate and absolute. Assignor will not set up any claim against Assignee or any intervening assignee as a defense, counterclaim or setoff to any action brought by Assignee or any intervening assignee for any amounts due hereunder or for possession of or the exercise of rights with respect to the Leases or the Rents.

12. It shall be an Event of Default hereunder (a) if any representation or warranty made herein by Assignor is determined by Assignee to have been false or misleading in any material respect at the time made, or (b) upon any failure by Assignor to comply with the provisions of Section 6 above, or (c) upon any failure by Assignor in the performance or observance of any other covenant or condition hereof and, to the extent such failure described in this subsection (c) is susceptible of being cured, the continuance of such failure for thirty (30) days after written notice thereof from Assignee to Assignor; provided, however, that if such default described in this subsection (c) is susceptible of cure but such cure cannot be accomplished with reasonable diligence within said period of time, and if Assignor commences to cure such default promptly after receipt of notice thereof from Assignee, and thereafter prosecutes the curing of such default with reasonable diligence, such period of time shall be extended for such period of time as may be necessary to cure such default with reasonable diligence, but not to exceed an additional sixty (60) days. Any such default not so cured shall be a default or an Event of Default, as applicable, under each of the other Loan Documents, entitling Assignee to exercise any or all rights and remedies available to Assignee under the terms hereof or of any or all of the other Loan Documents, and any Event of Default or default under any other Loan Document which is not cured within any applicable grace or cure period shall be deemed an Event of Default hereunder subject to no grace or cure period, entitling Assignee to exercise any or all rights provided for herein.

13. Failure by Assignee to exercise any right which Assignee may have hereunder shall not be deemed a waiver thereof unless so agreed in writing by Assignee, and the waiver by Assignee of any default hereunder shall not constitute a continuing waiver or a waiver of any other default or of the same default on any future occasion. No collection by Assignee of any Rents pursuant to this Assignment shall constitute or result in a waiver of any default then existing hereunder or under any of the other Loan Documents.

ATX000152

14. If any provision under this Assignment or the application thereof to any entity, person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of this Assignment and the application of the provisions hereof to other entities, persons or circumstances shall not be affected thereby and shall be enforced to the fullest extent permitted by law.

15. This Assignment may not be amended, modified or otherwise changed except by a written instrument duly executed by Assignor and Assignee.

16. This Assignment shall be in full force and effect continuously from the date hereof to and until the Security Instrument shall be released of record, and the release of the Security Instrument shall, for all purposes, automatically terminate this Assignment and render this Assignment null and void and of no effect whatsoever.

17. All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be given and become effective as provided in the Loan Agreement.

18. This Assignment shall be governed by and construed in accordance with the laws of the State of Texas, except to the extent that any of such laws may now or hereafter be preempted by Federal law, in which case such Federal law shall so govern and be controlling; and provided however, that the laws of the State of Texas shall govern as to the creation, priority and enforcement of liens and security interests property located in such state.

19. This Assignment may be executed in any number of counterparts, each of which shall be effective only upon delivery and thereafter shall be deemed an original, and all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Any signature page of this Assignment may be detached from any counterpart of this Assignment without impairing the legal effect of any signatures thereon and may be attached to another counterpart of this Assignment identical in form hereto but having attached to it one or more additional signature pages.

20. In addition to, but not in lieu of, any other rights hereunder, Assignee shall have the right to institute suit and obtain a protective or mandatory injunction against Assignor to prevent a breach or default, or to reinforce the observance, of the agreements, covenants, terms and conditions contained herein, as well as the right to damages occasioned by any breach or default by Assignor.

21. This Assignment shall continue and remain in full force and effect during any period of foreclosure with respect to the Property.

22. Assignor hereby covenants and agrees that Assignee shall be entitled to all of the rights, remedies and benefits available by statute, at law, in equity or as a matter of practice for the enforcement and perfection of the intents and purposes hereof. Assignee shall, as a matter of absolute right, be entitled, upon application to a court of applicable jurisdiction, and without notice to Assignor, to the appointment of a receiver to obtain and secure the rights of Assignee hereunder and the benefits intended to be provided to Assignee hereunder.

ATX000153

23. Notwithstanding anything to the contrary contained in this Assignment, the liability of Assignor and Assignor's officers, directors, general partners, managers, members and principals for the indebtedness secured hereby and for the performance of the other agreements, covenants and obligations contained herein and in the other Loan Documents shall be limited as set forth in Section 3 of the Note.

24. In connection with any action arising from or in connection with this Assignment, the prevailing party shall be entitled to an award of its costs and expenses, including attorneys' fees (including but not limited to appellate fees and fees for all paralegals, legal assistants and other paraprofessionals) and disbursements, incurred or paid before and at trial or any other proceeding which may be instituted, at any tribunal level, and whether or not suit or any other proceeding is instituted.

25. ASSIGNOR, TO THE FULL EXTENT PERMITTED BY LAW, HEREBY KNOWINGLY, INTENTIONALLY AND VOLUNTARILY WITH AND UPON THE ADVICE OF COMPETENT COUNSEL, (i) SUBMITS TO PERSONAL JURISDICTION IN THE STATE OF CALIFORNIA OVER ANY SUIT, ACTION OR PROCEEDING BY ANY PERSON ARISING FROM OR RELATING TO THIS ASSIGNMENT OR ANY OTHER OF THE LOAN DOCUMENTS, (ii) AGREES THAT ANY SUCH ACTION, SUIT OR PROCEEDING MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT OF COMPETENT JURISDICTION IN THE COUNTY OF LOS ANGELES, (iii) SUBMITS TO THE JURISDICTION OF SUCH COURTS, AND (iv) AGREES THAT ASSIGNOR WILL NOT BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM WITH RESPECT TO THIS ASSIGNMENT (BUT NOTHING HEREIN SHALL AFFECT THE RIGHT OF ASSIGNEE TO BRING ANY ACTION, SUIT OR PROCEEDING IN ANY OTHER FORUM); PROVIDED, HOWEVER, ASSIGNEE MAY BRING AN ACTION IN ANY COURT OF COMPETENT JURISDICTION SITTING IN THE COUNTY WHERE THE PROPERTY IS LOCATED TO THE EXTENT NECESSARY TO EXERCISE ITS RIGHTS HEREUNDER. ASSIGNOR FURTHER CONSENTS AND AGREES TO SERVICE OF ANY SUMMONS, COMPLAINT OR OTHER LEGAL PROCESS IN ANY SUCH SUIT, ACTION OR PROCEEDING BY REGISTERED OR CERTIFIED U.S. MAIL, POSTAGE PREPAID, TO THE ASSIGNOR AT THE ADDRESS FOR NOTICES DESCRIBED IN SECTION 12.4 OF THE LOAN AGREEMENT, AND CONSENTS AND AGREES THAT SUCH SERVICE SHALL CONSTITUTE IN EVERY RESPECT VALID AND EFFECTIVE SERVICE (BUT NOTHING HEREIN SHALL AFFECT THE VALIDITY OR EFFECTIVENESS OF PROCESS SERVED IN ANY OTHER MANNER PERMITTED BY LAW).

26. EACH OF ASSIGNOR AND ASSIGNEE HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS ASSIGNMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS ASSIGNMENT OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR

ATX000154

OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY. ANY PARTY TO THIS ASSIGNMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO TRIAL BY JURY.

27. This Assignment shall not be construed more strictly against one party than against the other merely by virtue of the fact that this Assignment may have been physically prepared by one of the parties, or such party's counsel, it being agreed that all parties and their respective counsel have mutually participated in the negotiation and preparation of this Assignment.

28. All rights and remedies granted to Assignor under the Loan Documents shall be in addition to and cumulative of all rights and remedies granted to Assignor hereunder.

29. ASSIGNOR ACKNOWLEDGES THE RECEIPT OF A COPY OF THIS DOCUMENT AT THE TIME IT WAS SIGNED.

**[END OF TEXT; SIGNATURES FOLLOW ON NEXT PAGE(S)]**

ATX000155

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the day and year first above written.

"ASSIGNOR"

**900 CESAR CHAVEZ, LLC,**
a Delaware limited liability company,

By: _____
Name: Natin Paul
Title: President


**905 CESAR CHAVEZ, LLC,**
a Delaware limited liability company,

By: _____
Name: Natin Paul
Title: President


**5TH AND RED RIVER, LLC,**
a Delaware limited liability company,

By: _____
Name: Natin Paul
Title: President


**7400 SOUTH CONGRESS, LLC,**
a Delaware limited liability company,

By: _____
Name: Natin Paul
Title: President

State of __Texas__ )
County of __Travis__ )

On __september 19, 2018__, before me, __Laura Byrd__,
personally appeared __Natin Pan__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Texas__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(signature)_
NOTARY PUBLIC OF __Texas__
Printed Name: __Laura Byrd__
My Commission Expires: __10/3/20__

```
LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548
```

ATX000157

State of **Texas** )
County of **Travis** )

On **September 19, 2018**, before me, **Laura Byrd**,
personally appeared **Natin Pavi**,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **Texas** that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC OF **Texas**
Printed Name: **Laura Byrd**
My Commission Expires: **10/3/20**

```
LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548
```

ATX000158

State of __Texas__ )
County of __Travis__ )

On __September 19, 2018__, before me, __Laura Byrd__, personally appeared __Natin Paul__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Texas__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
NOTARY PUBLIC OF __Texas__
Printed Name: __Laura Byrd__
My Commission Expires: __10/3/20__

LAURA BYRD
Notary Public, State of Texas
Comm. Expires 10-03-2020
Notary ID 130846548

ATX000159

State of __Texas__ )
County of __Travis__ )

On __September 19, 2018__, before me, __Laura Byrd__, personally appeared __Natin Pavl__, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Texas__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_[signature]_
NOTARY PUBLIC OF __Texas__
Printed Name: __Laura Byrd__
My Commission Expires: __10/3/20__

[Seal: LAURA BYRD, Notary Public, State of Texas, Comm. Expires 10-03-2020, Notary ID 130846548]

ATX000160

## EXHIBIT A-1

### DESCRIPTION OF 5th PROPERTY

TRACT 1: Lot 2, Block 60 of the Original City of Austin, Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, SAVE AND EXCEPT the West 18 inches of the South 40 feet 6 inches as described in instrument recorded in Volume 365, Page 403 of the Deed Records of Travis County, Texas.

TRACT 2: Lots A and B, LINAM NO. 1, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 80, Page 182 of the Plat Records of Travis County, Texas.

EXHIBIT A

## EXHIBIT A-2

## DESCRIPTION OF 900 CESAR CHAVEZ PROPERTY

Lots 1, 2, 3 and 4, Block 4, JAMES HARRINGTON'S SUBDIVISION OF OUTLOT 17, DIVISION "O", according to the map or plat thereof, recorded in Volume X, Page 636, Plat Records, Travis County, Texas.

ATX000162

## EXHIBIT A-3

## DESCRIPTION OF 905 CESAR CHAVEZ PROPERTY

Lots 8 and 9, Block 1, R. W. MAGUIRE'S SUBDIVISION OF OUTLOTS 31 AND 32, DIVISION O, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 165 of the Plat Records of Travis County, Texas, as further affected by Boundary Line Agreement and Special Warranty Deed dated January 4, 2002, recorded under Document No. 2002008652 of the Official Public Records of Travis County, Texas..

ATX000163

## EXHIBIT A-4

## DESCRIPTION OF CONGRESS PROPERTY

Tract 1:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND LYING AND BEING SITUATED IN TRAVIS COUNTY, TEXAS, BEING 5.133 ACRES OF LAND LOCATED IN THE WILLIAM CANNON LEAGUE, ABSTRACT NO. 6, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, BEING A PORTION OF A 5.65 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at an iron pin found at the northwest corner of the above mentioned 5.65 acre tract of land, said point being in the east line of Meadowcreek, Section 2, Phase 2, a subdivision in Austin, Travis County, Texas according to the plat recorded in Book 71, Page 31, of the Travis County Plat Records and from which point an trot pin found at the southeast corner of Lot 8 Block H, Meadowcreek, Section 2, Phase 2, bears South 71 deg.17'00" East, 91.80 feet;

THENCE with the north line of said 5.65 acre tract, South 71 deg.17'00" East, 710.20 feet to an iron pin found for the northeast corner of said 5.113 acre and hereof, and from which point an iron pin found at the northeast corner of a 1.44 acre tract;

THENCE South 14 deg.32' West, 310.50 feet to an iron pin found for the southeast corner of said 5.113 acre tract and hereof, and southwest corner of said 1.440 acre tract; pin being on north line of 2.2686 acre tract of Humble Pipe Line Co.

THENCE with the north line of said Humble Pipe Line Co. tract, North 75 deg.28'00" West, 622.23 feet to an iron pin found in the east line of Meadowcreek, Section 2, Phase 2, for the southwest corner of said 5.65 acre tract and hereof, and for the northwest corner of the Humble Pipe Line Co. Tract;

THENCE with the east line of Meadowcreek, Section 2, Phase 2, North 01 deg.10'00" East at 102.98 feet passing the northwest corner of Lot 5, Block M, Meadowcreek, Section 2 Phase 2, in all a distance of 372.40 feet to the POINT OF THE BEGINNING, containing in all 5.113 acres of land more or less.

Tract 2:

BEING A TRACT OR PARCEL OF LAND SITUATED IN TRAVIS COUNTY, TEXAS, BEING OUT OF AND A PART OF THE WILLIAM CANNON LEAGUE, ABSTRACT NO. 6, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, OUT 5.65 ACRE TRACT AND A .09 ACRE TRACT, DESCRIBED BY THE BOUNDARY LINE AGREEMENT RECORDED IN VOLUME 4862, PAGE 1328 OF THE TRAVIS COUNTY DEED RECORDS, AND BEING THE SAME TRACT OF LAND DESCRIBED AS TRACT 2 IN A DEED FROM ISAM KUSSAD AND JOYCE KUSSAD, HUSBAND AND WIFE, TO SERGIO LOZANO-SANCHEZ AND MARION SANCHEZ-LOZANO, DATED FEBRUARY 19, 2003 AND RECORDED IN 2003045409 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING at a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of that 2.2686 tract of land conveyed to Humble Pipeline Company by deed recorded in Volume 993, Page 101 of the Deed

6

Records of Travis County, Texas, and which point is also POINT OF BEGINNING of the herein described tract;

THENCE with the South line of this tract and the north line of the Humble Pipeline Company tract North 75°32'24" West at a distance of 376. 78 feet to a 1" iron pipe found at the Southwest corner of this tract and the Southeast corner of a 4.95 acre tract of land conveyed to Pecan Grove Joint Venture by deed recorded in Volume 7581, Page 179 of the Deed Records of Travis County, Texas;

THENCE with the west line of this tract and the east line of the Pecan Grove Joint Venture tract North 14 deg.35'56" East at a distance of 309.60 feet to a 1/2" iron rod found at the Northwest corner of this tract and the Northeast corner of the Pecan Grove Joint Venture tract, and a point in the south line of Lot 1A of Sarah Ann Fritts Subdivision;

THENCE with the North line of this tract and the south line of Lot 1A of Sarah Ann Fritts Subdivision South 71 deg.14'57" East at a distance of 31.27 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Northwest corner of Lot 1 of The Ennis Subdivision, a Travis County subdivision recorded in Volume 82, Page 20, Plat Records, Travis County, Texas;

THENCE with the East line of this tract and the west line of Lot 1 of The Ennis Subdivision South 06 deg.08'54" West at a distance cf 155.84 feet to a 1/2" iron rod found at a corner of this tract in the North line of this tract and the Southwest corner of Lot 1 of The Ennis Subdivision;

THENCE with the North line of this tract and the south line of Lot 1 of The Ennis Subdivision South 73 deg. 11 '02" East at a distance of 324.92 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Southeast corner of Lot 1 of The Ennis Subdivision, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue);

THENCE with the East line of this tract and the west line of U.S. Highway 81 (South Congress Avenue) South 15 deg.24'48" West at a distance of 139.72 feet to a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of the Humble Pipeline Company tract, and being the POINT OF BEGINNING, containing 1.4296 acres of land, more or less.

Tract 3:

Lot 1, of ENNIS SUBDIVISION, an addition in Travis County, Texas, according to the map or plat thereof recorded in Plat Book 82, Page 20, of the Plat Records of Travis County, Texas.

7

**FILED AND RECORDED**
OFFICIAL PUBLIC RECORDS

DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
September 25 2018 02:07 PM
FEE: $ 98.00   2018151773

ATX000165