**EXECUTION VERSION**

---

## LOAN PURCHASE AND SALE AGREEMENT

Between

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,**

as Seller

and

**ATX LENDER 5, LLC,**

as Purchaser

Dated as of September 20, 2019

---

**EXHIBIT "12"**

ATX000204

## TABLE OF CONTENTS

ARTICLE 1     DEFINITIONS ...................................................................................1

1.1   Defined Terms .................................................................................................1

1.2   Exhibits ...........................................................................................................4

ARTICLE 2     SALE AND CONVEYANCE OF THE LOAN INTEREST ....................4

2.1   Purchase and Sale of the Loan Interest ...........................................................4

2.2   Deposit ...........................................................................................................4

2.3   [Reserved] .......................................................................................................4

2.4   Closing ...........................................................................................................4

2.5   Seller's Deliveries ..........................................................................................5

2.6   Purchaser's Deliveries ....................................................................................5

2.7   Purchase Price ................................................................................................5

2.8   Expenses of Sale ............................................................................................5

ARTICLE 3     DUE DILIGENCE AND CONFIDENTIALITY ...................................6

3.1   Due Diligence .................................................................................................6

3.2   Confidentiality ................................................................................................6

ARTICLE 4     REPRESENTATIONS AND WARRANTIES OF SELLER ...................6

4.1   General Representations and Warranties of Seller ...........................................6

4.2   Representations and Warranties as to the Loan Interest ...................................8

ARTICLE 5     REPRESENTATIONS AND WARRANTIES OF PURCHASER............8

5.1   Representations and Warranties of Purchaser..................................................8

5.2   NO IMPLIED REPRESENTATIONS OR WARRANTIES........................10

ARTICLE 6     SURVIVAL OF REPRESENTATIONS AND WARRANTIES............12

6.1   Limited Survival ..........................................................................................12

6.2   Limitation of Liability ..................................................................................12

ARTICLE 7     CONDITIONS PRECEDENT ...........................................................12

7.1   Conditions Precedent to the Obligations of Purchaser....................................12

7.2   Conditions Precedent to the Obligations of Seller .........................................13

ARTICLE 8     BREACH OF THE AGREEMENT ...................................................13

8.1   Seller's Breach .............................................................................................13

8.2   Purchaser's Breach .......................................................................................13

8.3   Liquidated Damages .....................................................................................14

ARTICLE 9     MISCELLANEOUS PROVISIONS ..................................................14

9.1   Governing Law Jurisdiction; Consent to Service of Process...........................14

i

9.2     Publicity and Reports; Confidentiality................................................................ 14

9.3     Broker Fees ........................................................................................................... 15

9.4     Notices .................................................................................................................. 15

9.5     Severability of Provisions .................................................................................... 16

9.6     Exhibits ................................................................................................................. 16

9.7     Waivers and Amendments .................................................................................... 16

9.8     No Third Party Rights .......................................................................................... 16

9.9     Successors and Assigns ........................................................................................ 16

9.10    Captions ................................................................................................................ 17

9.11    Counterparts .......................................................................................................... 17

9.12    Entire Agreement .................................................................................................. 17

9.13    Waiver of Trial by Jury ........................................................................................ 17

9.14    Construction .......................................................................................................... 17

9.15    Attorneys' Fees ..................................................................................................... 17

9.16    No Recourse .......................................................................................................... 17

9.17    Effectiveness of this Agreement .......................................................................... 18

9.18    Time of the Essence .............................................................................................. 18

9.19    Further Assurances ............................................................................................... 18

9.20    Escrow Provisions................................................................................................. 18

9.21    Substitute Trustee ................................................................................................. 18


EXHIBIT A     Description of Real Property

EXHIBIT B     Form of Assignment and Assumption Agreement

EXHIBIT C     Form of Allonge

EXHIBIT D     Loan Documents

EXHIBIT E     Seller Closing Documents

EXHIBIT F     Loan Detail

EXHIBIT G     Assignment of Mortgage/Deed of Trust and Assignment of Leases and Rents

EXHIBIT H     Notice Letter

ATX000206

## LOAN PURCHASE AND SALE AGREEMENT

THIS LOAN PURCHASE AND SALE AGREEMENT (this "Agreement"), dated for reference as of September 20, 2019, is executed by and between **U.S. REAL ESTATE CREDIT HOLDINGS III, LP**, an Irish limited partnership, having an address c/o Calmwater Capital, 11755 Wilshire Blvd., Suite 1425, Los Angeles, California 90025 ("Seller"), and **ATX LENDER 5, LLC**, a Texas limited liability company, having an address of 600 Travis, Suite 2800, Houston, Texas 77002 ("Purchaser").

## RECITALS

WHEREAS, U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership (the "Original Lender"), as lender, and 900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC, each a Delaware limited liability company (collectively, "Borrower") are parties to that certain Loan Agreement dated September 21, 2018 (the "Loan Agreement"), pursuant to which Seller agreed to extend to Borrower the Loan (as hereafter defined); and

WHEREAS, Original Lender assigned the Loan and all of Original Lender's right, title and interest in, and all obligations and liability in connection with, the Loan Documents (as hereafter defined) to Seller pursuant to the Assignment Documents (defined and detailed on Exhibit D) from Original Lender to Seller on December 13, 2018; and

WHEREAS, Seller desires to sell, assign transfer and convey all of Seller's right, title and interest in, and all obligations and liability in connection with, the Loan Documents and all of the Loan Interest (as hereafter defined), and Purchaser has agreed to purchase and assume the same on the terms and conditions contained herein.

NOW THEREFORE, in consideration of the premises and mutual covenants herein contained, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Purchaser and Seller agree as follows:

## ARTICLE 1

## DEFINITIONS

1.1     Defined Terms.  Whenever used in this Agreement, the following words and phrases shall have the following meanings specified in this Article and shall apply to the singular and plural forms:

"Accrued and Unpaid Interest and Charges" means, with respect to the Loan, all accrued and unpaid interest pursuant to the terms of the Loan Documents.

 "Affiliate" means (a) with respect to Purchaser, any Person that Purchaser Controls and in which Purchaser owns 50% or more of the equity interest directly or indirectly, or which is under common Control with Purchaser, and (b) with respect to Seller, any Person that Seller Controls.

"Allonge" means an allonge to the Note in the form attached hereto as Exhibit C.

"Assignment and Assumption Agreement" means an agreement in the form attached hereto as Exhibit B.

ATX000207

"Borrower" shall have the meaning ascribed to such term in the Recitals hereof.

"Business Day" means any day other than a (a) Saturday or Sunday, or (b) day on which commercial banks in Los Angeles are required or authorized to be closed.

"Closing" means the closing of the purchase and sale of the Loan Interest, as provided in Section 2.4.

"Closing Date" means three (3) Business Days following the Effective Date.

"Closing Documents" means the Seller Closing Documents and the Purchaser Closing Documents listed on Exhibit E.

"Control" or "Controlled" means, with respect to a Person, the power to direct the actions or policies of such Person by ownership of voting securities, as its general partner, manager or managing member, by contract, or by other means.

"Deposit" means the amount equal to Five Thousand and No/100 Dollars ($5,000.00).

"Effective Date" means the date upon which each of Seller and Purchaser shall have delivered a fully executed counterpart of this Agreement to the other, which date shall be inserted in the space provided on page 1 hereof.

"Exit Fee" shall have the meaning ascribed to such term under the Note.

"Guarantor" means NATIN PAUL, individually and collectively with any guarantor of the Loan on or after the date hereof, or any aspect thereof.

"Excluded Documents" means certain agreements and other documentation that pertain to all or a portion of the Loan Documents (including, without limitation, certain attorney/client correspondence, confidential or privileged information, valuations and opinions (any of which may be in email form) regarding the Loan Interest or the Property, internal analyses and memoranda, credit approval and/or credit committee memoranda, regulatory reports and internal assessments of valuation of the Loan Interest, the Loan Documents or the Property) that have been determined by Seller to be legally privileged, third party or internal appraisals or other determinations of valuation or otherwise inappropriate to include with the Loan Documents (but in no event including any Loan Documents).

 "Loan" means that certain mortgage loan in the original face amount of up to $22,932,250.00 from Original Lender to Borrower, as evidenced by the Loan Agreement and the other Loan Documents and as assigned to Seller.

"Loan Interest" means the Seller's right, title and interest in, and all obligations and liability in connection with, the Loan and the Loan Documents.  The Loan Interest shall not include any servicing agreements with respect to the Loan.

"Loan Documents" means the documents evidencing and/or securing the Loan as more particularly described on Exhibit D.

"Note" means that certain Promissory Note in the face amount of $22,932,250.00 dated September 21, 2018 from Borrower to Original Lender, as assigned from Original Lender to Seller.

2

ATX000208

"OFAC" has the meaning set forth in Section 4.1(g).

"Person" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, incorporated or unincorporated organization or government or any agency or political subdivision thereof.

"Prohibited Person" has the meaning set forth in Section 4.1(g).

"Property" means the real property described on the attached Exhibit A, together with the improvements thereon that directly or indirectly secure the repayment of the Loan.

"Purchase Price" means the sum of (a) $18,313,319.84, plus (b) per diem interest in the amount of $4,030.60 from September 20, 2019 through and including the Closing Date.

"Purchaser" has the meaning set forth in the introductory paragraph hereto.

"Purchaser Closing Documents" means the documents to be executed and delivered by Purchaser at Closing as listed on Exhibit E.

"Reserves and Deposits" means any reserves or deposits with respect to the Loan held by Seller pursuant to the provisions of the Loan Documents, such as, but not limited to, insurance reserves, tax impounds, interest reserves and other reserves held by Seller.

"Seller" means U.S. Real Estate Credit Holdings III, LP, an Irish limited partnership, together with its successors.

"Seller Closing Documents" means the documents to be executed and delivered by Seller at Closing as listed on Exhibit E.

"Seller's Knowledge" means the actual knowledge, as of the relevant date of the related representation and warranty, of Seller, without investigation or inquiry, or duty or implied duty to investigate or make inquiry, and without imputed or constructive notice or knowledge.

"Title Company" means Heritage Title Company (401 Congress, Suite 1500, Austin, Texas 78701, Attention: John Bruce; jbruce@heritage-title.com).

1.2    Exhibits.   The following Exhibits attached hereto are an integral part of this Agreement:

Exhibit A - Description of Property

Exhibit B - Assignment and Assumption Agreement

Exhibit C - Allonge

Exhibit D - Loan Documents

Exhibit E - Closing Documents

Exhibit F – Loan Detail

Exhibit G - Assignment of Mortgage/Deed of Trust and Assignment of Leases and Rents

3

ATX000209

Exhibit H - Notice Letter

# ARTICLE 2

## SALE AND CONVEYANCE OF THE LOAN INTEREST

2.1     Purchase and Sale of the Loan Interest.  For valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the terms, provisions and conditions of this Agreement, (a) Seller agrees to sell, assign and convey to Purchaser all of the Loan Interest and (b) Purchaser agrees to purchase and assume from Seller the Loan Interest, effective as of the Closing Date.

2.2     Deposit.  By 1:00 pm (Pacific Time) on the Business Day immediately following the Effective Date, Purchaser shall deliver the Deposit to the Title Company by federal wire transfer to the Title Company.  Purchaser shall deliver the Purchase Price (less the Deposit) to the Title Company by federal wire transfer by 1:00 p.m. (Pacific Time) on the Closing Date.  The Deposit shall be held with the Title Company and shall not be deposited in an interest-bearing or other account, and there shall be no interest earned on the Deposit.  The Deposit shall be applied to the Purchase Price upon Closing, unless the Deposit may be retained by Seller as liquidated damages pursuant to Section 8.2.

2.3     [Reserved].

2.4     Closing.  The Closing shall take place prior to 1:00 pm (Pacific Time) on the Closing Date, time being of the essence.  On the Closing Date, Seller shall deliver into escrow with the Title Company the documents set forth in Section 2.5 below, and Purchaser shall deliver into escrow with the Title Company the documents set forth in Section 2.6 below and shall pay to Seller the amounts required pursuant to Section 2.7 below, the performance of which obligations shall be concurrent conditions.  Upon satisfaction of the foregoing conditions, the Title Company shall release the Closing Documents from escrow and distribute such documents to the respective parties and the Closing shall be deemed consummated.

2.5     Seller's Deliveries.  Seller shall, on or before the Closing Date, deliver to the Title Company the Seller Closing Documents for the Loan Interest, the original Loan Documents (to the extent available to Seller), and will deliver copies of all other documents and materials which are in Seller's actual possession related to the Loan, without representation or warranty by Purchaser as to the completeness or truthfulness of such documents and materials (except as specifically set forth herein).  Upon receipt of the funds described in Section 2.7 below from Purchaser, Seller shall cause the Title Company to release the Seller Closing Documents to Purchaser (with originals or copies of all counter-executed Closing Documents delivered to Seller and Purchaser).

2.6     Purchaser's Deliveries.  Purchaser shall, on or before the Closing Date, deliver into escrow with the Title Company the Purchaser Closing Documents for the Loan Interest.  Upon satisfaction of Purchaser's conditions to Closing, Purchaser shall authorize Title Company in writing to release (or cause to be released) the Purchaser Closing Documents to Seller (with originals or copies of all counter-executed Closing Documents delivered to Seller and Purchaser).

2.7     Purchase Price.

(a)  Purchaser shall, on the Closing Date, pay to the Title Company by wire transfer of immediately available funds to an account held by the Title Company, an amount equal to (a) the Purchase Price minus (b) the Deposit.  In addition, the Purchase Price will be reduced by the amount of any Reserves and Deposits held by Seller as of the Closing Date.  After the Closing, Purchaser shall be responsible for

4

ATX000210

setting aside from Purchaser's own funds (for the benefit of Borrower) any Reserves and Deposits in accordance with the terms of the Loan Documents.  The Purchase Price (as so adjusted) shall be absolutely net to Seller, and there shall be no pro-rations; provided, however, that if a principal prepayment of the Loan Interest or any payment of accrued interest is received by Seller (or by a servicer on behalf of Seller) between the Effective Date and the Closing Date, Seller shall retain or have the exclusive right to receive such prepayment or payment plus all yield maintenance, spread maintenance, prepayment premiums and other amounts payable with respect to such payments, and the Purchase Price shall be reduced by the amount of such payments.

        2.8     Expenses of Sale. Seller and Purchaser shall each pay the fees and expenses of their respective legal counsel incurred in connection with this transaction.  Seller shall pay all of Seller's third-party costs and expenses incurred by or on behalf of Seller prior to the Closing Date (including, without limitation, legal, appraisal, consultant and search fees and expenses) and, for avoidance of doubt, Seller shall not be responsible for any costs or expenses in connection with Broker (defined below). Purchaser shall bear the cost of any title fees, recordation fees and/or taxes associated with selling, transferring, and assigning the Loan Interest, including, without limitation, recording any assignments of any mortgages, financing statements, any fees and/or taxes associated with documents which are or may be recorded in connection with the transactions contemplated hereby or otherwise.

## ARTICLE 3

## DUE DILIGENCE AND CONFIDENTIALITY

        3.1     Due Diligence.  Purchaser has conducted all diligence investigation deemed necessary or advisable with respect to the Loan and has approved such diligence, in each case prior to the Effective Date.  Seller makes no representations or warranties with respect to the Loan, the Loan Interest, the Loan Documents, the Borrower, any Guarantor or any other matter except as specifically outlined in Article 4.

        3.2     Confidentiality.  All information acquired by Purchaser or any of its authorized representatives with respect to the Loan Interest, the Property, Borrower and/or Guarantors, whether delivered by Seller or any representatives of Seller or obtained by Purchaser as a result of its inspection and investigation of the Property, the Loan Documents or otherwise has been reviewed and maintained in strict confidence by Purchaser, except to the extent it is appropriate or required for Purchaser to share information in working with investors, legal counsel, auditors, taxing authorities or other federal or state governmental agencies or if otherwise required by law or court order or in connection with Purchaser's enforcement of remedies in connection herewith. Such confidentiality with respect to the Loan Interest shall continue until Closing.

## ARTICLE 4

## REPRESENTATIONS AND WARRANTIES OF SELLER

        4.1     General Representations and Warranties of Seller.  Seller represents and warrants to Purchaser that as of the Effective Date and as of the Closing Date:

        (a)     Due Organization.  Seller has been duly formed and is validly existing under the laws of the jurisdiction of its organization.

        (b)     Authorization.  Seller has duly authorized the execution, delivery and performance of this Agreement and has duly executed and delivered this Agreement.  Seller has all right, power, legal

ATX000211

capacity and authority to enter into, execute and deliver this Agreement and to perform hereunder and under each other agreement that Seller may execute and deliver in connection herewith.

(c) <u>Binding Obligation</u>.  Assuming due authorization, execution and delivery hereof by Purchaser, this Agreement constitutes a legal, valid and binding obligation of Seller, enforceable against it in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(d) <u>No Violations</u>.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement do not and will not (i) violate any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Seller or any property of Seller, (ii) result in a breach or constitute a default under any agreement to which Seller is subject, or (iii) require any authorizations, consents, approvals, licenses, exemptions from or filings or registrations with any state, commonwealth, federal, foreign, territorial, regulatory, or other governmental department, commission, board, bureau, agency or instrumentality.

(e) <u>No Conflict</u>. The execution and delivery of this Agreement by Seller, and the performance by Seller of its obligations hereunder, will not conflict with or result in a breach of any of the terms, conditions or provisions of Seller's organizational documents or any material agreement or instrument to which Seller is now a party, or constitute a default or result in an acceleration under any of the foregoing, or result in a violation of any law, rule, regulation, order, judgment or decree to which Seller or its property is subject, which conflict, breach, default, acceleration or violation would have a material adverse effect on the ability of Seller to perform its obligations under this Agreement.

(f) <u>No Consent Required</u>.  No consent, approval, authorization or order of any court or governmental agency is required for the execution and delivery of this Agreement by Seller or for the performance by Seller of its obligations hereunder or, if required, such consent, approval, authorization or order will have been obtained on or prior to the Closing Date.

(g) <u>Patriot Act</u>.  Seller represents and warrants that:  (i) Seller is not, nor is it owned or controlled directly or indirectly by, any person, group, entity or nation named on any list issued by the Office of Foreign Assets Control of the United States Department of the Treasury ("<u>OFAC</u>") pursuant to Executive Order 13224 or any similar list or any law, order, rule or regulation or any Executive Order of the President of the United States as a terrorist, "Specially Designated National and Blocked Person" or other banned or blocked person (any such person, group, entity or nation being hereinafter referred to as a "<u>Prohibited Person</u>"); (ii) Seller is not (nor is it owned or controlled, directly or indirectly, by any person, group, entity or nation which is) acting directly or indirectly for or on behalf of any Prohibited Person; and (iii) Seller (and any person, group, or entity which Seller controls, directly or indirectly) has not conducted nor will conduct business nor has engaged nor will engage in any transaction or dealing with any Prohibited Person in violation of the U.S. Patriot Act or any OFAC rule or regulation, including without limitation, the making or receiving of any contribution of funds, goods or services to or for the benefit of a Prohibited Person in violation of the U.S. Patriot Act or any OFAC rule or regulation.  Notwithstanding anything contained herein to the contrary, for the purposes of this subsection (g) the phrase "owned or controlled directly or indirectly by any person, group, entity or nation" and all similar such phrases shall not include (A) any holder of a direct or indirect interest in a publicly traded company whose shares are listed and traded on a U.S. national stock exchange or (B) any limited partner, unit holder or shareholder owning an interest of five percent (5%) or less in Seller or the holder of any direct or indirect interest in Seller that does not Control Seller.

6

ATX000212

4.2     <u>Representations and Warranties as to the Loan Interest</u>.  Seller represents and warrants to Purchaser that as of the Effective Date and as of the Closing Date:

(a)     <u>Ownership</u>.  Seller has good title to the Loan Interest and is the owner and holder of the Loan Documents, and has the right to sell the Loan Interest, free and clear of any claims, liens, or encumbrances.  The Loan Interest is not cross collateralized or cross defaulted with any other loan which is not the subject of this Agreement.  The Loan Documents and the Loan Interest are not subject to any prior sale, transfer, assignment or participation by Seller (or any predecessor in interest to Seller) or any agreement by Seller (or any Affiliate of Seller) to assign, convey, transfer or participate, in whole or in part, which in either event would affect Purchaser's right to perform its obligations under this Agreement.

(b)     <u>Loan Documents; Modification</u>.  The copies of the Loan Documents identified on <u>Exhibit D</u> are true and correct copies of the Loan Documents in Seller's possession.  Except as otherwise set forth on <u>Exhibit D</u>, (i) the Loan Documents have not been modified, amended, satisfied, canceled or subordinated, (ii) the Loan Documents have not been released or rescinded (in whole or in part), and (iii) no portion of the properties encumbered by the mortgage securing the Loan have been released from the lien of such mortgage.  Seller has not executed any instrument of release, cancellation, satisfaction or waiver with respect to the Loan Documents and has not made any promise to Borrower or Guarantor to do the same.

(c)     <u>Loan Balance</u>.  As of September 18, 2019, (i) the unpaid principal balance with respect to the Loan is $17,858,636.54, (ii) Seller has not received any payments from any Borrower or Guarantor under the Loan Documents since July 11, 2019, (iii) the current balance of Accrued and Unpaid Interest and Charges is equal to $454,683.30, and (iv) the current amount of Reserves and Deposits is equal to $164,315.14 (composed of $163,359.71 reserved for taxes, and $955.43 reserved for insurance, in each case pursuant to the Loan Agreement).  The terms of and amounts owing under the Loan described on <u>Exhibit F</u> attached hereto are true and correct in all material respects as of September 18, 2019.

(d)     <u>Additional Financing</u>.  Except as set forth in the Loan Documents, Seller has not granted any consent to any additional financing with respect to the Loan.

(e)     <u>Title Claims</u>.  No title claims have been filed or submitted by Seller related to any title insurance policy insuring the Loan.

(f)     <u>Payoffs</u>.  Seller has not issued any payoff letters for the Loan in an amount less than the full amount of the indebtedness.

(g)     <u>Seller Default; Notices</u>.  Seller has not received any written notice of a default by Seller under the Loan Documents and, to Seller's knowledge, Seller is not in default under the Loan Documents.  Seller has not received any written notices of any actual or threatened claims, legal proceedings, or causes of action (whether tort, contract or other basis) existing or relating to the Loan, the Loan Interest, the Borrower, or the Property.  Except as described in Section 4.3 below, Seller has not delivered to Borrower or Guarantor any notices of default or other violation of the Loan Documents.

4.3     <u>Existing Default</u>.  Seller specifically represents, and Purchaser acknowledges, that Borrower is in default under the Loan as outlined in the Loan Documents and Seller has accelerated the maturity date of the Loan such that, pursuant to the Loan Documents, all unpaid amounts owing under the Loan are now due.  Seller has notified Borrower of such matters pursuant to certain letters and notices dated as of July 22, 2019, August 14, 2019, August 26, 2019, and September 10, 2019, regarding the Loan, and Seller has delivered to true and correct copies of such notices to Purchaser.  Purchaser further acknowledges

7

ATX000213

that additional defaults may exist under the Loan Documents, and Seller makes no representations with respect to the existence or non/existence of such defaults.

# ARTICLE 5

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

5.1     <u>Representations and Warranties of Purchaser</u>.  Purchaser represents and warrants to Seller that as of the Effective Date and as of the Closing Date:

(a)     <u>Due Organization</u>. Purchaser is a limited liability company and is duly organized, validly existing and in good standing under the laws of the State of Texas.

(b)     <u>Authorization</u>.  Purchaser has the power and authority to execute, deliver and perform this Agreement and to enter into and consummate all the transactions contemplated by this Agreement. Purchaser has duly authorized the execution, delivery and performance of this Agreement and has duly executed and delivered this Agreement.

(c)     <u>Binding Obligation</u>.  Assuming due authorization, execution and delivery hereof by Seller, this Agreement constitutes a legal, valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar laws affecting creditors' rights generally and by general principles of equity (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(d)     <u>No Violations</u>.  The execution, delivery and performance of this Agreement and the consummation of the transactions contemplated by this Agreement do not and will not (i) violate any law, rule, regulation, order, writ, judgment, injunction, decree, determination or award presently in effect having applicability to Purchaser or any property of Purchaser, (ii) result in a breach or constitute a default under any agreement to which Purchaser is subject, or (iii) require any authorizations, consents, approvals, licenses, exemptions from or filings or registrations with any state, commonwealth, federal, foreign, territorial, regulatory, or other governmental department, commission, board, bureau, agency or instrumentality.

(e)     <u>No Conflict</u>. The execution and delivery of this Agreement by Purchaser, and the performance by Purchaser of its obligations hereunder, will not conflict with or result in a breach of any of the terms, conditions or provisions of Purchaser's organizational documents or any material agreement or instrument to which Purchaser is now a party, or constitute a default or result in an acceleration under any of the foregoing, or result in a violation of any law, rule, regulation, order, judgment or decree to which Purchaser or its property is subject, which conflict, breach, default, acceleration or violation would have a material adverse effect on the ability of Purchaser to perform its obligations under this Agreement.

(f)     <u>No Consent Required</u>.  No consent, approval, authorization or order of any court or governmental agency is required for the execution and delivery of this Agreement by Purchaser or for the performance by Purchaser of its obligations hereunder or, if required, such consent, approval, authorization or order will have been obtained prior to the Closing Date.

ATX000214

(g)      No Bankruptcy. Purchaser has sufficient assets to pay its obligations and liabilities as the same become due and payable, and no bankruptcy, insolvency, reorganization, liquidation, receivership, conservatorship or dissolution proceedings exist or are threatened against Purchaser.

(h)      Sophisticated Investor Etc. Purchaser is a sophisticated investor and has independently made its own independent analysis of the Loan Interest and the related Loan Documents for the purpose of acquiring the Loan Interest.  Purchaser is acquiring the Loan Interest for its own account and not as a broker, finder or similar agent for any other Person or with the intent to resell such Loan Interest. Purchaser acknowledges that the transfer of the Loan Interest to Purchaser by Seller pursuant to this Agreement and the Closing Documents shall be irrevocable and without any recourse to Seller except as expressly set forth in this Agreement.

(i)      Direction to Conduct Due Diligence.  Purchaser has been urged, invited and directed to conduct such due diligence review and analysis of the Loan Interest, Borrower and Guarantor, the Loan Documents and related information, and such records as are generally available to the public from local, county, state and federal authorities, record-keeping offices and courts prior to the Effective Date as Purchaser deemed necessary, proper or appropriate in order to make a complete, informed decision with respect to the purchase and acquisition of the Loan Interest.

(j)      Patriot Act.  Purchaser hereby represents and warrants that:  (i) it is not, nor is it owned or controlled directly or indirectly by, any person, group, entity or nation named on any list issued by the OFAC pursuant to Executive Order 13224 or any similar list or by any law, order, rule or regulation or any Executive Order of the President of the United States as a Prohibited Person; (ii) it is not (nor is it owned or controlled, directly or indirectly, by any person, group, entity or nation which is) acting directly or indirectly for or on behalf of any Prohibited Person; and (iii) from and after the Closing Date, Purchaser (and any person, group, or entity which Purchaser controls, directly or indirectly) has not conducted nor will conduct business nor has engaged nor will engage in any transaction or dealing with any Prohibited Person in violation of the U.S. Patriot Act or any OFAC rule or regulation, including without limitation, the making or receiving of any contribution of funds, goods or services to or for the benefit of a Prohibited Person in violation of the U.S. Patriot Act or any OFAC rule or regulation. Notwithstanding anything contained herein to the contrary, for the purposes of this subsection (m) the phrase "owned or controlled directly or indirectly by any person, group, entity or nation" and all similar such phrases shall not include (A) any holder of a direct or indirect interest in a publicly traded company whose shares are listed and traded on a U.S. national stock exchange or (B) any limited partner, unit holder or shareholder owning an interest of five percent (5%) or less in Purchaser or the holder of any direct or indirect interest in Purchaser that does not Control Purchaser.

5.2      NO IMPLIED REPRESENTATIONS OR WARRANTIES.

(a)      EXCEPT AS OTHERWISE SPECIFICALLY SET FORTH IN SECTIONS 4.1 AND 4.2 OF THIS AGREEMENT AND IN THE SELLER CLOSING DOCUMENTS, PURCHASER ACKNOWLEDGES THAT THE LOAN INTEREST IS BEING TRANSFERRED TO PURCHASER WITHOUT RECOURSE, WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, OF ANY KIND, INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATIONS OR WARRANTIES WITH RESPECT TO COLLECTABILITY, ENFORCEABILITY, TITLE, DOCUMENTATION, PRIORITY OF LIEN, CREDITWORTHINESS OF THE BORROWER, GUARANTORS AND INDEMNITORS, VALUE OF COLLATERAL OR PRIORITY OR PERFECTION OF ANY SECURITY INTEREST OR LIEN WHICH MAY APPEAR TO RELATE TO THE LOAN INTEREST, OR AS TO ANY MATTER RELATING TO THE LOAN INTEREST, ANY SENIOR OR JUNIOR LOAN OR THE PROPERTY (INCLUDING, WITHOUT LIMITATION, AS TO THE PRESENCE ON OR BENEATH THE PROPERTY (OR ANY PARCEL IN PROXIMITY THERETO) OF HAZARDOUS MATERIALS),

ATX000215

AND, SUBJECT TO THE FOREGOING, PURCHASER ACCEPTS THE LOAN INTEREST BEING TRANSFERRED TO IT ON AN "AS IS", "WHERE IS" BASIS WITH ALL FAULTS AND SUBJECT TO ANY AND ALL CLAIMS OR DEFENSES OF ALL TYPES. PURCHASER ACKNOWLEDGES AND AGREES THAT, EXCEPT AS SPECIFICALLY PROVIDED IN <u>SECTIONS 4.1 AND 4.2</u> OF THIS AGREEMENT AND IN THE SELLER CLOSING DOCUMENTS, SELLER HAS NOT MADE, DOES NOT MAKE AND SPECIFICALLY NEGATES AND DISCLAIMS ANY REPRESENTATIONS, WARRANTIES, PROMISES, COVENANTS, AGREEMENTS OR GUARANTIES OF ANY KIND OR CHARACTER WHATSOEVER, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, PAST, PRESENT OR FUTURE, OF, AS TO, CONCERNING OR WITH RESPECT TO (A) THE VALUE, NATURE, QUALITY OR CONDITION OF THE LOAN INTEREST OR THE PROPERTY, (B) THE INCOME AND PAYMENTS TO BE DERIVED FROM EACH LOAN INTEREST, OR (C) ANY MATTER WITH RESPECT TO THE LOAN INTEREST, THE LOAN DOCUMENTS, THE EXISTENCE OR NON-EXISTENCE OF ANY MONETARY OR NON-MONETARY DEFAULTS UNDER THE LOAN INTEREST, OR THE PROPERTY. PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT ANY INFORMATION PROVIDED OR TO BE PROVIDED WITH RESPECT TO THE LOAN INTEREST OR ANY RELATED MATTER WAS OBTAINED FROM A VARIETY OF SOURCES AND THAT SELLER HAS NOT MADE ANY INDEPENDENT INVESTIGATION OR VERIFICATION OF SUCH INFORMATION AND MAKES NO REPRESENTATIONS OR WARRANTIES AS TO THE ACCURACY OR COMPLETENESS OF SUCH INFORMATION, EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES SET FORTH IN <u>SECTIONS 4.1</u> AND <u>4.2</u> OF THIS AGREEMENT AND IN THE SELLER CLOSING DOCUMENTS.

(b)      IN ENTERING INTO THIS AGREEMENT, PURCHASER HAS NOT RELIED UPON ANY ORAL OR WRITTEN INFORMATION PROVIDED BY SELLER OR ITS PERSONNEL OR AGENTS AND/OR ANY BROKER OTHER THAN THOSE SPECIFICALLY CONTAINED IN THIS AGREEMENT.  PURCHASER ACKNOWLEDGES THAT NO EMPLOYEE, REPRESENTATIVE OR AGENT OF SELLER HAS BEEN AUTHORIZED TO MAKE, AND THAT PURCHASER HAS NOT RELIED UPON, ANY STATEMENTS OR REPRESENTATIONS OR WARRANTIES OTHER THAN THOSE SPECIFICALLY CONTAINED IN THIS AGREEMENT AND THE SELLER CLOSING DOCUMENTS.  PURCHASER FURTHER ACKNOWLEDGES THAT SELLER MAY BE IN POSSESSION OF CERTAIN NON-PUBLIC INFORMATION OR EXCLUDED DOCUMENTS MATERIAL TO THE LOAN, THE PROPERTY, THE BORROWER, THE GUARANTORS OR OTHER INFORMATION THAT MAY BE RELEVANT TO A DECISION TO PURCHASE THE LOAN INTEREST.  PURCHASER AGREES THAT SELLER SHALL NOT BE OBLIGATED TO DISCLOSE ANY NON-PUBLIC INFORMATION OR EXCLUDED DOCUMENTS OR HAVE ANY LIABILITY WITH RESPECT TO ANY SUCH NONDISCLOSURE.  PURCHASER HEREBY WAIVES ANY AND ALL CLAIMS AND CAUSES OF ACTION NOW OR HEREAFTER ARISING AGAINST SELLER BASED UPON OR RELATING TO SUCH NONDISCLOSURE AND FURTHER COVENANTS NOT TO SUE SELLER FOR ANY LOSS, DAMAGE OR LIABILITY ARISING FROM OR RELATING TO SUCH NONDISCLOSURE.  PURCHASER, WITH PURCHASER'S COUNSEL, HAS FULLY REVIEWED THE DISCLAIMERS AND WAIVERS SET FORTH IN THIS AGREEMENT AND UNDERSTANDS THEIR SIGNIFICANCE AND AGREES THAT THE DISCLAIMERS AND OTHER AGREEMENTS ARE AN INTEGRAL PART OF THIS AGREEMENT.

(c)      NOTWITHSTANDING AND WITHOUT LIMITING THE FOREGOING, IF ANY OF SELLER'S REPRESENTATIONS OR WARRANTIES CONTAINED IN THIS AGREEMENT ARE FALSE OR INACCURATE, AND PURCHASER NONETHELESS CLOSES THE TRANSACTION HEREUNDER AND PURCHASES THE LOAN INTEREST ON THE CLOSING DATE, THEN SELLER SHALL HAVE NO LIABILITY OR OBLIGATION RESPECTING SUCH FALSE OR INACCURATE REPRESENTATIONS OR WARRANTIES (AND ANY POTENTIAL

ATX000216

CAUSE OF ACTION RESULTING THEREFROM SHALL TERMINATE UPON THE CLOSING DATE) IN THE EVENT THAT ON OR PRIOR TO THE CLOSING DATE, PURCHASER SHALL HAVE HAD ACTUAL KNOWLEDGE WITHOUT INVESTIGATION OR INQUIRY OR DUTY OR IMPLIED DUTY TO INVESTIGATE OR MAKE INQUIRY, AND WITHOUT IMPUTED OR CONSTRUCTIVE NOTICE OR KNOWLEDGE OF THE FALSE OR INACCURATE REPRESENTATIONS OR WARRANTIES.

(d)     PURCHASER ACKNOWLEDGES THAT SELLER HAS NO OBLIGATION TO HAVE PURCHASER NAMED AS AN ADDITIONAL INSURED OR LOSS PAYEE OR OTHER BENEFICIARY ON ANY INSURANCE POLICY MAINTAINED BY A BORROWER AND THAT NO REPRESENTATIONS, WARRANTIES OR OTHER OBLIGATIONS ARE BEING GIVEN UNDER THIS AGREEMENT WITH RESPECT TO PROPERTY INSURANCE COVERAGE, TITLE INSURANCE COVERAGE OR OTHER INSURANCE COVERAGE.

## ARTICLE 6

### SURVIVAL OF REPRESENTATIONS AND WARRANTIES

6.1     <u>Limited Survival</u>.  It is understood and agreed that the respective representations and warranties of the parties hereto set forth in <u>Section 4.1</u>, <u>Section 4.2</u> and <u>Section 5.1</u>, as applicable, shall survive the Closing Date for period through and including the date which is six (6) months after the Closing Date (the "<u>Survival Period</u>").

6.2     <u>Limitation of Liability</u>.  It is acknowledged and agreed by Purchaser that (a) Seller's liability to Purchaser for any damages suffered by Purchaser as a result of a material breach by Seller of its representations and warranties contained in this Agreement shall be limited to actual out-of-pocket damages reasonably incurred and shall in no event include damage to the collateral for the Loan Interest or any other consequential damages, (b) Seller's liability for such damages shall only be payable if a claim is asserted in writing by Purchaser prior to the end of the Survival Period and Purchaser's actual damages exceed $30,000.00,  and (c) in no event shall Seller's liability under this Agreement exceed the amount of $300,000.00.

## ARTICLE 7

### CONDITIONS PRECEDENT

7.1     <u>Conditions Precedent to the Obligations of Purchaser</u>.  The obligation of Purchaser to purchase the Loan Interest is subject to the fulfillment (or waiver in writing by Purchaser) on or prior to the Closing Date of each of the following conditions:  (a) the representations and warranties of Seller contained in <u>Section 4.1</u> and <u>Section 4.2</u> shall be true in all material respects at the Closing Date with the same effect as though made at such time; (b) Seller shall have in all material respects performed all obligations and complied in all material respects with all covenants and conditions required by this Agreement to be performed or complied with by it at or prior to the Closing Date; and (c) no statute, ordinance, law, regulation, rule, decree or order shall have been enacted, entered, issued, promulgated or enforced by any governmental authority, nor shall any action, complaint, investigation, petitions, suit or other proceeding have been instituted and remain pending by any governmental authority as of the Closing Date, which prohibits or restricts or would (if successful) prohibit or restrict the transactions contemplated by this Agreement.  Notwithstanding anything contained herein to the contrary, in the event Borrower repays the Loan in full prior to the Closing Date, or Seller accepts from or on behalf of Borrower, full repayment of the Loan, this Agreement shall terminate, in which event the Deposit shall be returned to

ATX000217

Purchaser and thereafter neither party shall have any further obligations or liability under this Agreement (other than those that are expressly stated to survive the termination of this Agreement).

7.2    <u>Conditions Precedent to the Obligations of Seller</u>.  The obligation of Seller to sell the Loan Interest is subject to the fulfillment (or waiver in writing by Seller) on or prior to the Closing Date of each of the following conditions: (a) the representations and warranties of Purchaser herein contained shall be true in all material respects at the Closing Date with the same effect as though made at such time; (b) Purchaser shall have in all material respects performed all obligations and complied in all material respects with all covenants and conditions required by this Agreement to be performed or complied with by it at or prior to the Closing Date; and (c) no statute, ordinance, law, regulation, rule, decree or order shall have been enacted, entered, issued, promulgated or enforced by any governmental authority, nor shall any action, complaint, investigation, petitions, suit or other proceeding have been instituted and remain pending by any governmental authority as of the Closing Date, which prohibits or restricts or would (if successful) prohibit or restrict the transactions contemplated by this Agreement.

**ARTICLE 8**

**BREACH OF THE AGREEMENT**

8.1    <u>Seller's Breach</u>.  If Seller breaches this Agreement, the breach is discovered prior to Closing by Purchaser and Purchaser proceeds to close the transactions contemplated hereunder, Purchaser shall have waived any and all damages resulting from Seller's breach.  If Seller breaches this Agreement and Purchaser does not close the transactions contemplated hereunder, Purchaser shall deliver written notice to Seller specifying the nature of the alleged breach and Seller shall have two (2) days to cure the alleged breach (for purposes of this Section 8.1 only, the "Cure Period").  If the breach is cured by Seller within the Cure Period then Purchaser may, at Purchaser's option, elect by written notice to Seller within two (2) days after the expiration of the Cure Period to (a) terminate this Agreement, whereupon the Deposit shall be returned to Purchaser, Seller shall pay to Purchaser an amount equal to Purchaser's out-of-pocket costs and expenses incurred in connection with this transaction (including, without limitation, reasonable attorneys' fees) not to exceed $300,000.00 and thereafter, except for those provisions of this Agreement which by their express terms survive the termination of this Agreement, no party hereto shall have any other or further rights or obligations under this Agreement, or (b) to the extent that Seller is capable of performing, bring an action in Travis County, Texas, for specific performance of Seller's obligations under this Agreement.  In no event shall Purchaser be entitled to recover any damages from Seller (including, without limitation, consequential or punitive damages) as a result of Seller's failure to close the transactions contemplated hereby in breach of this Agreement, Purchaser's sole remedy in any such event being limited to the return of the Deposit and reimbursement of its expenses pursuant to clause 8.1(a) above or seeking specific performance as provided in clause (b) above.

8.2    <u>Purchaser's Breach</u>.  If Seller shall have performed its obligations under this Agreement and all conditions precedent to Purchaser's obligations to purchase the Loan Interest have been satisfied prior to Closing (as such Closing Date may be extended pursuant to Section 7.1 above) and Purchaser shall be unable or fail to perform its obligations under this Agreement prior to Closing and such failure continues for two (2) days after written notice of such failure from Seller, Seller's sole and exclusive remedy at law shall be to terminate this Agreement and to retain the Deposit as liquidated damages.

8.3    <u>Liquidated Damages</u>.  PURCHASER AND SELLER ACKNOWLEDGE AND AGREE THAT (a) IT WOULD BE IMPRACTICAL OR EXTREMELY DIFFICULT TO DETERMINE SELLER'S ACTUAL DAMAGES IN THE EVENT OF PURCHASER'S DEFAULT UNDER THIS AGREEMENT, AND (b) TAKING INTO ACCOUNT ALL OF THE CIRCUMSTANCES EXISTING ON THE DATE OF THIS AGREEMENT, THE DEPOSIT IS A REASONABLE ESTIMATE OF

12

ATX000218

SELLER'S ACTUAL DAMAGES IN SUCH EVENT. CONSEQUENTLY, IN THE EVENT OF PURCHASER'S DEFAULT UNDER THIS AGREEMENT PRIOR TO CLOSING, SELLER'S SOLE AND EXCLUSIVE REMEDY AT LAW SHALL BE TO TERMINATE THIS AGREEMENT AND TO RECEIVE AND RETAIN THE DEPOSIT.

**ARTICLE 9**

**MISCELLANEOUS PROVISIONS**

9.1     <u>Governing Law Jurisdiction; Consent to Service of Process</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Texas, without giving effect to choice of law rules and principles of said State. Each of the parties hereto irrevocably (a) submits to the exclusive jurisdiction of the courts of the State of Texas, Travis County, and the federal courts of the United States of America for the Southern District of Texas for the purpose of any action or proceeding relating to this Agreement; (b) waives, to the fullest extent permitted by law, the defense of an inconvenient forum in any action or proceeding in any such court; (c) agrees that a final judgment in any action or proceeding in any such court shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law; and (d) consents to service of process upon it by mailing a copy thereof by certified mail addressed to it as provided for notices hereunder.

9.2     <u>Publicity and Reports; Confidentiality</u>.  Seller and Purchaser shall coordinate all publicity relating to the transactions contemplated by this Agreement, and neither party shall issue any press release, publicity statement or other public notice relating to the identity of Purchaser, this transaction or the Purchase Price (or any component thereof) hereunder without obtaining the prior written approval of the other party, except that neither party shall be precluded from making such filings or giving such notices as may be required by law or the rules of any stock exchange (with advance copy and a reasonable opportunity to comment on and approve any such disclosure so long as the disclosing party's legal disclosure obligations are accommodated) or other applicable governmental or regulatory authority.  This Agreement shall not, and no memorandum or other document relating to this Agreement shall, be recorded in a public record without the prior written consent of Seller and Purchaser.  Seller and Purchaser shall each keep confidential and shall not divulge to any Person, without the other party's prior written consent, any terms of, or the existence of, this Agreement, except to the extent it is appropriate or required for Purchaser or Seller, as applicable, to do so in working with investors, legal counsel, auditors, taxing authorities or other federal or state governmental agencies or if otherwise required by law or court order or in connection with such Person's enforcement of remedies in connection herewith.

9.3     <u>Broker Fees</u>.  Purchaser represents and warrants to Seller that it has not dealt with any broker, finder or other party entitled to a commission or other compensation or which was instrumental or had any role in bringing about the sale of the Loan Interest other than Mike Guterman, Highland Realty Capital, Inc. and John Ghiselli, Waterloo Real Estate Investments (collectively, "<u>Broker</u>").  Seller represents and warrants to Purchaser that it has not dealt with any broker, finder or other party entitled to a commission or other compensation or which was instrumental or had any role in bringing about the sale of the Loan Interest other than Broker.  Purchaser shall be responsible for paying Broker a broker's fee in connection with the sale of the Loan Interest pursuant to a separate agreement between Purchaser and Broker.  Seller and Purchaser each agrees that should any claim be made for a commission, finder's fee or other compensation by anyone other than Broker, it will hold the other harmless from any and all claims, liabilities, losses, damages, costs or expenses as a result of a breach of its respective foregoing representation and warranty, including, without limitation, reasonable attorneys' fees and expenses, incurred in connection therewith.  Purchaser agrees that should any claim be made for a commission, finder's fee or other compensation by Broker, it will hold the Seller harmless from any and all claims, liabilities, losses, damages, costs or expenses as a result thereof, including, without limitation, reasonable

13

ATX000219

attorneys' fees and expenses, incurred in connection therewith. This <u>Section 9.3</u> shall survive the Closing Date.

      9.4     <u>Notices</u>.  Any notices or other communications permitted or required hereunder shall be in writing, and may be sent by counsel, shall be effective upon receipt, and shall be (a) sent by nationally recognized overnight delivery service, (b) transmitted by facsimile (with answer back acknowledged) or (c) transmitted by "PDF" transmission to the following addresses, or such other address as may hereafter be furnished by either party hereto to the other in writing in the same manner:

In the case of Seller:

> U.S. Real Estate Credit Holdings III, LP
> c/o Calmwater Capital
> 11755 Wilshire Blvd., Suite 1425
> Los Angeles, California 90025
> Attention: Dean Chang
> Email: Dean@calmwatercapital.com

with a copy:

> Safarian Choi & Bolstad LLP
> 555 S. Flower Street, Suite 650
> Los Angeles, California 90071
> Attention: Alex M. Grigorians, Esq.
> Email: agrigorians@safarianchoi.com

In the case of Purchaser:

> ATX Lender 5, LLC
> 600 Travis, Suite 2800
> Houston, Texas 77002
> Attention:  Paul Pruett
> Email:  ppruett@lockelord.com

      9.5     <u>Severability of Provisions</u>.  Each part of this Agreement is intended to be severable if any one or more of the covenants, agreements, provisions or terms of this Agreement shall be for any reason whatsoever held invalid, the invalidity of any such covenant, agreement, provision or term of this Agreement shall in no way affect the validity or enforceability of the other provisions of this Agreement.

      9.6     <u>Exhibits</u>.  The Exhibits to this Agreement are incorporated and made a part hereof and are an integral part of this Agreement.

      9.7     <u>Waivers and Amendments</u>.  This Agreement may be amended, supplemented, canceled or extended, and the terms hereof may be waived, only by a written instrument signed by authorized representatives of the parties or, in the case of a waiver, by an authorized representative of the party waiving compliance. A waiver by any party of any right, power or privilege, or any partial right, power or privilege, shall not preclude or waive the exercise by such party of any other such right, power or privilege, or any other part of such right, power or privilege.

      9.8     <u>No Third Party Rights</u>.  This Agreement is intended to be solely for the benefit of the parties hereto and is not intended to confer any benefits upon, or create any rights in favor of, any Person other than the parties hereto.

14

ATX000220

9.9    Successors and Assigns.  This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof shall be binding upon and inure to the benefit of Purchaser and Seller and their respective successors and permitted assigns. Notwithstanding the foregoing, Purchaser shall have the right to assign this Agreement and its rights, duties and/or obligations hereunder to any Person that is an Affiliate of Purchaser upon prior written notice to Seller.  If Purchaser assigns this Agreement, Purchaser shall have no further liability or obligations under this Agreement provided the assignee has assumed the same in writing.

9.10    Captions.  All section titles or captions contained in this Agreement or in the exhibits annexed hereto or referred to herein, and the table of contents to this Agreement, are for convenience only, shall not be deemed a part of this Agreement and shall not affect the meaning or interpretation of this Agreement.

9.11    Counterparts.  This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument.  A facsimile or PDF of a signature will have the same legal effect as an originally drawn signature.

9.12    Entire Agreement.  This Agreement (including the exhibits annexed hereto or referred to herein and the agreements executed and delivered pursuant to the terms hereof) contains the entire agreement between the parties with respect to the transactions contemplated hereby, and supersedes all prior agreements, written or oral, with respect thereto, and the parties represent and warrant that there are no other agreements or understandings between Purchaser and Seller relating to the Loan Interest.

9.13    Waiver of Trial by Jury.  SELLER AND PURCHASER EACH KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT.

9.14    Construction.  Unless the context otherwise requires, singular nouns and pronouns, when used herein shall be deemed to include the plural of such noun or pronoun, pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender and references to a particular Section, Schedule or Exhibit shall be deemed to mean the particular Section of this Agreement or Schedule or Exhibit attached hereto, respectively.

9.15    Attorneys' Fees.  If any legal proceeding is instituted to enforce any of the provisions of this Agreement, unless otherwise set forth herein, the prevailing party shall be entitled to its reasonable costs and expenses incurred, including reasonable attorneys' fees and costs.

9.16    No Recourse.  Purchaser acknowledges and agrees no shareholder, employee, consultant or agent of Seller shall have any personal liability, directly or indirectly, under or in connection with this Agreement or any agreement made or entered into under or pursuant to the provisions of this Agreement, or any amendment or amendments to any of the foregoing made at any time or times, heretofore or hereafter, and Purchaser and its successors and permitted assigns and, without limitation, all other Persons, shall look solely to Seller's assets for the payment of any claim or for any performance, and Purchaser, on behalf of its successors and permitted assigns, hereby waives any and all such personal liability.  This Section 9.16 shall survive the Closing Date.

9.17    Effectiveness of this Agreement.  This Agreement shall not be deemed a contract binding upon Seller unless and until Seller and Purchaser shall have both executed this Agreement and Purchaser shall have timely delivered the Deposit to Seller.

15

ATX000221

9.18    Time of the Essence.  Time is of the essence with respect to the performance of all of Purchaser's obligations and agreements hereunder.

9.19    Further Assurances.  At any time and from time to time, Seller and Purchaser shall execute, deliver and acknowledge such further documents and instruments and do such other acts and things as a party may reasonably request in order fully to effect the purposes of this Agreement.  This Section 9.19 shall survive the closing of the transactions contemplated by this Agreement.

9.20    Escrow Provisions.  (a) Title Company shall acknowledge receipt of the Deposit. Title Company agrees to hold the Deposit in the Escrow pursuant to the provisions of this Agreement for application in accordance with the provisions hereof, upon the following terms:

(b)    Title Company shall cause the Deposit to be deposited into its non-interest bearing escrow account acceptable to Title Company, Seller and Purchaser.

(c)    Title Company shall have no duties or responsibilities other than those expressly set forth herein.  Title Company shall have no duty to enforce any obligation of any person to make any payment or delivery or to enforce any obligation of any person to perform any other act.  Title Company shall be under no liability to the other parties hereto or to anyone else by reason of any failure on the part of any party hereto or any maker, guarantor, endorser or other signatory of any document or any other person to perform such person's obligations under any such document.  Except for amendments to this Agreement hereinafter referred to and except for joint instructions given to Title Company by Seller and Purchaser relating to the Deposit, Title Company shall not be obligated to recognize any agreement between any or all of the persons referred to herein, notwithstanding that references thereto may be made herein and whether or not it has knowledge thereof.  Title Company's consent shall not be required for any amendment to this Agreement unless such amendment modifies this Section 9.20.

(d)    In its capacity as Title Company, Title Company shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and believed by Title Company to have been signed by the proper person.  Title Company may assume that any person purporting to give any notice hereunder has been duly authorized to do so.  The Title Company is acting as a stakeholder only with respect to the Deposit.  In the event that for any reason there is any dispute or uncertainty concerning any action to be taken hereunder, Title Company shall have the right to take no action until it shall have received instructions in writing concurred to by Seller and Purchaser or until directed by a final order of judgment of a court of competent jurisdiction, whereupon Title Company shall take such action in accordance with such instructions or such order.

(e)    It is understood and agreed that the duties of Title Company are purely ministerial in nature.  Title Company shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence.  Title Company may rely conclusively and shall be protected in acting upon any order, notice, demand, certificate, opinion or advice of counsel (including counsel chosen by Title Company), statement, instrument, report or other paper or document (not only as to its due execution and the validity and effectiveness of its provisions, but also as to the truth and acceptability of any information therein contained) which is reasonably believed by Title Company to be genuine and to be signed or presented by the proper person or persons.  Title Company shall not be bound by any notice or demand, or any waiver, modification, termination or rescission of this Agreement or any of the terms hereof, unless evidenced by a final judgment or decree of a court of competent jurisdiction in the State of Texas or a Federal court in such State, or a writing delivered to Title

16

ATX000222

Company signed by the proper party or parties and, if the duties or rights of Title Company are affected, unless it shall give its prior written consent thereto.

(f)     Title Company shall have the right to assume in the absence of written notice to the contrary from the proper person or persons that a fact or an event by reason of which an action would or might be taken by Title Company does not exist or has not occurred, without incurring liability to the other parties hereto or to anyone else for any action taken or omitted, or any action suffered by it to be taken or omitted, in good faith and in the exercise of reasonable judgment, in reliance upon such assumption.

(g)     Except in connection with Title Company's willful misconduct or gross negligence, Title Company shall be indemnified and held harmless jointly and severally by the other parties hereto from and against any and all expenses or loss suffered by Title Company (as Title Company), including reasonable attorneys' fees, in connection with any action, suit or other proceeding involving any claim, which arises out of or relates to this Agreement, the services of Title Company hereunder or the monies held by it hereunder.  Promptly after the receipt by Title Company of notice of any demand or claim or the commencement of any action, suit or proceeding, Title Company shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing; but the failure by Title Company to give such notice shall not relieve any party from any liability which such party may have to Title Company hereunder.

(h)     From time to time on and after the date hereof, Seller and Purchaser shall deliver or cause to be delivered to Title Company such further documents and instruments and shall do and cause to be done such further acts as Title Company shall reasonably request (it being understood that Title Company shall have no obligation to make any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

(i)     If for any reason the Closing does not occur and either party makes a written demand upon Title Company for payment or refund, as the case may be, of the Deposit or any portion thereof, Title Company shall give written notice to the other party of such demand.  If Title Company does not receive a written objection from the other party to the proposed payment or refund, as the case may be, within ten (10) Business Days after the giving of such notice, Title Company is hereby authorized to make such payment or refund, as the case may be; provided, however, if for any reason Title Company in good faith shall elect not to make such payment, Title Company shall continue to hold such amount until otherwise directed by written instructions from the parties to this Agreement or a final judgment of a court of competent jurisdiction.  Notwithstanding the foregoing, Title Company shall have the right at any time to deposit the Deposit with the court of competent jurisdiction in the State of Texas.  Title Company shall give written notice of such deposit to Seller and Purchaser.  Upon such deposit, Title Company shall be relieved and discharged of all further obligations and responsibilities hereunder.

(j)     Title Company may resign at any time as Title Company hereunder upon giving five (5) days prior written notice to that effect to each of the Seller and Purchaser.  In such event, the successor Title Company shall be a title insurance company or law firm selected by Seller and accepted by Purchaser.  Such party that will no longer be serving as Title Company shall deliver, against receipt, to such successor Title Company, the Deposit held by such party, to be held by such successor Title Company pursuant to the terms and provisions of this Agreement.  If no such successor has been designated on or before such party ceases to be Title Company hereunder, whether by resignation or otherwise, its obligations as Title Company shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all monies then held by it and to deliver the same to the person, firm or corporation designated as its successor or until directed by a final order or judgment of a court of

17

competent jurisdiction, whereupon Title Company shall make disposition thereof in accordance with such order.

        (k)      All fees, costs and expenses of the Title Company shall be the responsibility of Purchaser and Title Company shall be required to look solely to Purchaser for the payment of any and all such fees, costs and expenses.

        9.21    <u>Substitute Trustee</u>.  Seller hereby consents to Nicholas C. Miller continuing to serve as substitute trustee under the Deed of Trust and agrees to waive any conflict arising from Purchaser's engagement of Graves, Dougherty, Hearon & Moody, P.C. as counsel to conduct any foreclosure sale or otherwise represent Purchaser in the exercise of remedies under the Loan Documents after the Closing Date.

[SIGNATURES BEGIN ON NEXT PAGE]

18

**ATX000224**

IN WITNESS WHEREOF, Seller and Purchaser have caused this Loan Purchase and Sale Agreement to be signed hereto to be effective as of the Effective Date.

**SELLER**

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,**
an Irish limited partnership, acting by its
General Partner, U.S. Real Estate Credit
Holdings III GP Limited

By:      **CALMWATER ASSET MANAGEMENT, LLC,**
            a Delaware limited liability company,
            its Investment Manager

            By: _____
            Name: _____
            Title: _Authorized Signatory_

**PURCHASER:**

**ATX LENDER 5, LLC,**
a Texas limited liability company

By:_____
Name:_____
Title:_____

ATX000225

IN WITNESS WHEREOF, Seller and Purchaser have caused this Loan Purchase and Sale Agreement to be signed hereto to be effective as of the Effective Date.

**SELLER**

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,**
an Irish limited partnership, acting by its
General Partner, U.S. Real Estate Credit
Holdings III GP Limited

By:    **CALMWATER ASSET MANAGEMENT, LLC,**
       a Delaware limited liability company,
       its Investment Manager

       By:_____
       Name:_____
       Title:_____


**PURCHASER:**

**ATX LENDER 5, LLC,**
a Texas limited liability company

By:    Wilson, Cribbs & Goren, P.C.,
       a Texas professional corporation

Its:    Manager

       By:_____
       Name: *Anthony Marre*
       Title: *Managing Shareholder*

JOINDER

The undersigned has joined in the execution of this Agreement for the purpose of indicating its agreement to act as Title Company hereunder and to evidence its agreement to the escrow provisions contained in Sections 2.2, 7.1, 8.1, 8.2 and 9.20 hereof.

**Heritage Title Company**


By: _____
Name:_____
Title:_____

ATX000227

## EXHIBIT A

## DESCRIPTION OF REAL PROPERTY

### 5TH AND RED RIVER:

TRACT 1: Lot 2, Block 60 of the Original City of Austin, Travis County, Texas, according to the Plat on file at the General Land Office of the State of Texas, SAVE AND EXCEPT the West 18 inches of the South 40 feet 6 inches as described in instrument recorded in Volume 365, Page 403 of the Deed Records of Travis County, Texas.

TRACT 2: Lots A and B, LINAM NO. 1, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 80, Page 182 of the Plat Records of Travis County, Texas.

### 900 CESAR CHAVEZ:

Lots 1, 2, 3 and 4, Block 4, JAMES HARRINGTON'S SUBDIVISION OF OUTLOT 17, DIVISION "O", according to the map or plat thereof, recorded in Volume X, Page 636, Plat Records, Travis County, Texas.

### 905 CESAR CHAVEZ:

Lots 8 and 9, Block 1, R. W. MAGUIRE'S SUBDIVISION OF OUTLOTS 31 AND 32, DIVISION O, a subdivision in Travis County, Texas, according to the map or plat thereof, recorded in Volume 2, Page 165 of the Plat Records of Travis County, Texas, as further affected by Boundary Line Agreement and Special Warranty Deed dated January 4, 2002, recorded under Document No. 2002008652 of the Official Public Records of Travis County, Texas.

### 7400 S. CONGRESS:

Tract 1:

ALL THAT CERTAIN TRACT OR PARCEL OF LAND LYING AND BEING SITUATED IN TRAVIS COUNTY, TEXAS, BEING 5.133 ACRES OF LAND LOCATED IN THE WILLIAM CANNON LEAGUE, ABSTRACT NO. 6, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, BEING A PORTION OF A 5.65 ACRE TRACT OF LAND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at an iron pin found at the northwest corner of the above mentioned 5.65 acre tract of land, said point being in the east line of Meadowcreek, Section 2, Phase 2, a subdivision in Austin, Travis County, Texas according to the plat recorded in Book 71, Page 31, of the Travis County Plat Records and from which point an trot pin found at the southeast corner of Lot 8 Block H, Meadowcreek, Section 2, Phase 2, bears South 71 deg.17'00" East, 91.80 feet;

THENCE with the north line of said 5.65 acre tract, South 71 deg.17'00" East, 710.20 feet to an iron pin found for the northeast corner of said 5.113 acre and hereof, and from which point an iron pin found at the northeast corner of a 1.44 acre tract;

THENCE South 14 deg.32' West, 310.50 feet to an iron pin found for the southeast corner of said 5.113 acre tract and hereof, and southwest corner of said 1.440 acre tract; pin being on north line of 2.2686 acre tract of Humble Pipe Line Co.

THENCE with the north line of said Humble Pipe Line Co. tract, North 75 deg.28'00" West, 622.23 feet to an iron pin found in the east line of Meadowcreek, Section 2, Phase 2, for the southwest corner of said 5.65 acre tract and hereof, and for the northwest corner of the Humble Pipe Line Co. Tract;

THENCE with the east line of Meadowcreek, Section 2, Phase 2, North 01 deg.10'00" East at 102.98 feet passing the northwest corner of Lot 5, Block M, Meadowcreek, Section 2 Phase 2, in all a distance of 372.40 feet to the POINT OF THE BEGINNING, containing in all 5.113 acres of land more or less.

Tract 2:

BEING A TRACT OR PARCEL OF LAND SITUATED IN TRAVIS COUNTY, TEXAS, BEING OUT OF AND A PART OF THE WILLIAM CANNON LEAGUE, ABSTRACT NO. 6, IN THE CITY OF AUSTIN, TRAVIS COUNTY, TEXAS, OUT 5.65 ACRE TRACT AND A .09 ACRE TRACT, DESCRIBED BY THE BOUNDARY LINE AGREEMENT RECORDED IN VOLUME 4862, PAGE 1328 OF THE TRAVIS COUNTY DEED RECORDS, AND BEING THE SAME TRACT OF LAND DESCRIBED AS TRACT 2 IN A DEED FROM ISAM KUSSAD AND JOYCE KUSSAD, HUSBAND AND WIFE, TO SERGIO LOZANO-SANCHEZ AND MARION SANCHEZ-LOZANO, DATED FEBRUARY 19, 2003 AND RECORDED IN 2003045409 OF THE OFFICIAL PUBLIC RECORDS OF TRAVIS COUNTY, TEXAS, AND BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

COMMENCING at a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of that 2.2686 tract of land conveyed to Humble Pipeline Company by deed recorded in Volume 993, Page 101 of the Deed Records of Travis County, Texas, and which point is also POINT OF BEGINNING of the herein described tract;

THENCE with the South line of this tract and the north line of the Humble Pipeline Company tract North 75°32'24" West at a distance of 376. 78 feet to a 1" iron pipe found at the Southwest corner of this tract and the Southeast corner of a 4.95 acre tract of land conveyed to Pecan Grove Joint Venture by deed recorded in Volume 7581, Page 179 of the Deed Records of Travis County, Texas;

THENCE with the west line of this tract and the east line of the Pecan Grove Joint Venture tract North 14 deg.35'56" East at a distance of 309.60 feet to a 1/2" iron rod found at the Northwest corner of this tract and the Northeast corner of the Pecan Grove Joint Venture tract, and a point in the south line of Lot 1A of Sarah Ann Fritts Subdivision;

THENCE with the North line of this tract and the south line of Lot 1A of Sarah Ann Fritts Subdivision South 71 deg.14'57" East at a distance of 31.27 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Northwest corner of Lot 1 of The Ennis Subdivision, a Travis County subdivision recorded in Volume 82, Page 20, Plat Records, Travis County, Texas;

THENCE with the East line of this tract and the west line of Lot 1 of The Ennis Subdivision South 06 deg.08'54" West at a distance cf 155.84 feet to a 1/2" iron rod found at a corner of this tract in the North line of this tract and the Southwest corner of Lot 1 of The Ennis Subdivision;

THENCE with the North line of this tract and the south line of Lot 1 of The Ennis Subdivision South 73 deg. 11 '02" East at a distance of 324.92 feet to a 1/2" iron rod found at the Northeast corner of this tract and the Southeast corner of Lot 1 of The Ennis Subdivision, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue);

THENCE with the East line of this tract and the west line of U.S. Highway 81 (South Congress Avenue) South 15 deg.24'48" West at a distance of 139.72 feet to a 1/2" iron rod found in the Southeast corner of this tract, and in the west right-of-way line of U.S. Highway 81 (South Congress Avenue), and the Northeast corner of the Humble Pipeline Company tract, and being the POINT OF BEGINNING, containing 1.4296 acres of land, more or less.

Tract 3:

Lot 1, of ENNIS SUBDIVISION, an addition in Travis County, Texas, according to the map or plat thereof recorded in Plat Book 82, Page 20, of the Plat Records of Travis County, Texas.

ATX000230

## EXHIBIT B

## FORM OF ASSIGNMENT AND ASSUMPTION AGREEMENT

### ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Assignment**"), dated as of September [\_\_], 2019 (the "**Closing Date**"), is made by and between **U.S. REAL ESTATE CREDIT HOLDINGS III, LP**, an Irish limited partnership having an address at c/o Calmwater Capital, 11755 Wilshire Blvd., Suite 1425, Los Angeles, California 90025 ("**Assignor**"), and **ATX LENDER 5, LLC,** a Texas limited liability company, having an address at 600 Travis, Suite 2800, Houston, Texas 77002 ("**Assignee**").

### RECITALS:

WHEREAS, Assignor and Assignee have entered into that certain Loan Purchase and Sale Agreement dated as of September 20, 2019 (the "Loan Interest Sale Agreement") pursuant to which Assignor has agreed to sell, assign, transfer and convey to Assignee all of Assignor's right, title and interest in and to the Loan Interest and the Loan Documents, and Assignee has agreed to succeed to and acquire all of Assignor's right, title and interest in and to the Loan Interest and the Loan Documents, in each case first arising from and after the Closing Date.

WHEREAS, capitalized terms used and not otherwise defined in this Assignment have the meanings given to them in the Loan Interest Sale Agreement.

NOW, THEREFORE, in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby confirmed by Assignor and Assignee, Assignor and Assignee hereby agree as follows:

1.      **Assignment.**  As of the Closing Date, Assignor hereby sells, assigns, transfers and conveys to Assignee all of Assignor's right, title and interest in and to the Loan Interest and the Loan Documents.

2.      **Assumption.**  As of the Closing Date, Assignee hereby succeeds to and acquires all of Assignor's right, title and interest in and to, and assumes all of Assignor's rights, duties and obligations under, the Loan Interest and the Loan Documents, in each case first arising from and after the Closing Date and Assignee agrees to be bound by the terms and provisions of the Loan Documents.

3.      **Governing Law; Waiver of Jury Trial.**  This Assignment and the respective rights and obligations of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Texas applicable to contracts made and to be performed entirely within such State. Each of the parties hereby irrevocably waives all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Assignment.

4.      **Successors and Assigns.**  This Assignment shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

5.      **Counterparts**.  This Assignment may be executed in any number of counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

ATX000231

6.      **Loan Interest Sale Agreement**.  This Assignment shall be subject to all of the terms, provisions and limitations set forth in the Loan Interest Sale Agreement.

7.      **Status of Loan Interest**.  As of the date hereof, (i) the unpaid principal balance with respect to the Loan is $17,858,636.54, (ii) Seller has not received any payments from any Borrower or Guarantor under the Loan Documents since July 11, 2019, (iii) the current balance of Accrued and Unpaid Interest and Charges is equal to $454,683.30, and (iv) the current amount of Reserves and Deposits is equal to $163,359.71 reserved for taxes, and $955.43 reserved for insurance, in each case pursuant to the Loan Agreement).  The terms of and amounts owing under the Loan described on <u>Exhibit F</u> attached hereto are true and correct in all material respects as of the Closing Date.


[SIGNATURES FOLLOW ON THE NEXT PAGE]

**IN WITNESS WHEREOF**, the parties hereto have caused this Assignment to be executed as of the date first above written.

**ASSIGNOR:**

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,**
an Irish limited partnership, acting by its
General Partner, U.S. Real Estate Credit
Holdings III GP Limited

By:    **CALMWATER ASSET MANAGEMENT, LLC,**
        a Delaware limited liability company,
        its Investment Manager

        By:_____
        Name:_____
        Title:_____

**ASSIGNEE:**

**ATX LENDER 5, LLC,**
a Texas limited liability company

By: _____
Name:
Title:

## EXHIBIT C

## FORM OF ALLONGE

### ALLONGE

This Allonge is attached to and forms a part of that certain Promissory Note (the "Note") dated as of September 21, 2018 in the original principal amount of $22,932,250.00 made by 900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC, each a Delaware limited liability company, in favor of U.S. Real Estate Credit Holdings III-A, LP ("Original Lender"), as assigned by Original Lender to U.S. Real Estate Credit Holdings III, LP ("Lender") pursuant to that certain Allonge dated December 13, 2018.  Lender, hereby absolutely assigns, transfers, endorses, negotiates and sets over and makes payable to the order of ATX LENDER 5, LLC, a Texas limited liability company ("Assignee"), the Note, without any right of recourse, and without any representation, covenant or warranty whatsoever except as specifically set forth in that certain Loan Purchase and Sale Agreement dated as of September 20, 2019 made by and between Lender and Assignee.

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,** an Irish limited partnership, acting by its General Partner, U.S. Real Estate Credit Holdings III GP Limited

By**:**     **CALMWATER ASSET MANAGEMENT, LLC,**
a Delaware limited liability company,
its Investment Manager

By:_____
Name:_____
Title:_____

Dated this _____ day of September, 2019

ATX000234

**EXHIBIT D**

**LOAN DOCUMENTS**

1. Loan Agreement.

2. Promissory Note (World Class – Austin Portfolio) dated as of September 21, 2018, in the maximum principal amount of $22,932,250.00, made by Borrower payable to the order of Original Lender.

3. Deed of Trust, Security Agreement and Financing Statement dated as of September 21, 2018, executed by Borrower, as trustor, to Cyrus N. Ansari, Esq., as trustee, for the benefit of Original Lender, filed as Instrument No. 2018151772 in the Official Public Records of Travis County, Texas.

4. Uniform Commercial Code – National Financing Statement – Form UCC-1, showing Borrower, as debtor, and Original Lender, as secured party, filed with the Secretary of State of the State of Delaware under Initial Filing No. 2018 6624163.

5. Uniform Commercial Code – National Financing Statement – Form UCC-1, showing Borrower, as debtor, and Original Lender, as secured party, filed as Instrument No. 2018151899 in the Official Public Records of Travis County, Texas.

6. Assignment of Leases and Rents (World Class – Austin Portfolio) dated as of September 21, 2018, executed by Borrower for the benefit of Original Lender, filed as Instrument No. 2018151773 in the Official Public Records of Travis County, Texas.

7. Notice of Final Agreement dated as of September 21, 2018, executed by Borrower, Original Lender and Guarantor.

8. Indemnity and Guaranty Agreement (World Class – Austin Portfolio) dated as of September 21, 2018, executed by Guarantor in favor of Original Lender.

9. Hazardous Substances Indemnity Agreement (World Class – Austin Portfolio) dated as of September 21, 2018, executed by the Borrower and Guarantor in favor of Original Lender.

10. Completion Guaranty (Austin Portfolio) dated as of September 21, 2018, executed by Guarantor in favor of Original Lender.

11. Collateral Assignment of Interest Rate Protection Agreement dated as of September 21, 2018, executed by Borrower, Original Lender and SMBC Capital Markets, Inc.

12. Undelivered Items Letter Agreement dated as of September 21, 2018, executed by Borrower in favor of Lender.

13. The Loan Policy of Title Insurance set forth below, each dated as of September 25, 2018, and issued by Fidelity National Title Insurance Company:

   a. Title Policy No. 8244343-215066751 for the portion of the Property located at 504 East 5th Street, Austin, Texas and being more particularly described therein;

ATX000235

b.    Title Policy No. AUT18004711-L1 for the portion of the Property located at 7400 South Congress Avenue, Austin, Texas and being more particularly described therein;

c.    Title Policy No. 2744343-215060546 for the portion of the Property located at 900 East Cesar Chavez Street, Austin, Texas and being more particularly described therein; and

d.  Title Policy No. 8244343-215066258 for the portion of the Property located at 905 East Cesar Chavez Street, Austin, Texas and being more particularly described therein.

14. The loan assignment documents set forth below, each dated as of December 13, 2018 unless otherwise set forth below (collectively, the "Assignment Documents")

a.    Assignment and Assumption of Loan Interest executed by Original Lender, as assignor, and Seller, as assignee;

b.    Assignment of Deed of Trust, Security Agreement and Financing Statement from Original Lender, as assignor, to Seller, as assignee, filed as Instrument No. 2018192494 in the Official Public Records of Travis County, Texas, on December 14, 2018;

c.    Assignment of Assignment of Leases and Rents from Original Lender, as assignor, to Seller, as assignee, filed as Instrument No. 2018192493 in the Official Public Records of Travis County, Texas, on December 14, 2018;

d.    Allonge by Original Lender to the order of Seller;

e.    Uniform Commercial Code – National Financing Statement – Form UCC-3 (Amendment), showing Seller, as secured party, filed with the Secretary of State of the State of Delaware under Initial Filing No. 20188147933, on December 13, 2018; and

f.    Uniform Commercial Code – National Financing Statement – UCC-3 (Amendment), showing Seller, as secured party, filed as Instrument No. 2018194163 in the Official Public Records of Travis County, Texas, on December 18, 2018.

15. Appointment of Substitute Trustee dated as of September 10, 2019, executed by Seller, as lender, filed as Instrument No. 2019145725 in the Official Public Records of Travis County, Texas, on September 20, 2019.

## EXHIBIT E

## SELLER CLOSING DOCUMENTS

The following are the Seller Closing Documents to be Delivered by Seller at Closing for the Loan
Interest:

1. an original Assignment and Assumption Agreement executed by Seller.

2. an original Allonge executed by Seller.

3. an original Assignment of Mortgage/Deed of Trust and Assignment of Leases and Rents in
   the form attached hereto as Exhibit G.

4. the original Note and original recorded Deeds of Trust, together with the documents set forth
   in Nos. 1, 2 and 3 above (collectively, the "Required Originals").

5. an original Notice Letter in the form attached hereto as Exhibit H executed by Seller.

6. all original Loan Documents in the possession of Seller; Purchaser acknowledging that it has
   received copies of the Loan Documents (other than the Required Originals).

7. a copy of all policies of title insurance.

8. UCC-3 Assignments to Purchaser with respect to the UCC-1 financing statements included in
   the Loan Documents.

9. any and all original surveys of the Property delivered to Original Lender.

## PURCHASER CLOSING DOCUMENTS

The following are the Purchaser Closing Documents to be Delivered by Purchaser at Closing for the Loan
Interest:

1. an original Assignment and Assumption Agreement executed by Purchaser.

2. an original counterpart Notice Letter executed by Purchaser.

ATX000237

## EXHIBIT F

## LOAN DETAILS

As of September 18, 2019 (except as otherwise set forth below):

**Current Principal Balance:** $17,858,636.54

**Current Interest Rate:** 6.0% + LIBOR (Further detailed in the Note, Section 1(d))

**Current Interest Per Diem:** $4,030.60

**Default Interest Rate:** Current Interest Rate + 5.0% (Further detailed in the Note, Section 4(b))

**Current Default Interest Per Diem:** $2,480.37

**Current Interest Due (from 7/1/2019-9/18/2019):** $454,683.30

**Current Tax Escrow Held by or on behalf of Seller:** $163,359.71

**Current Insurance Escrow Held by or on behalf of Seller:** $955.43

**Default Interest Due** (from 7/1/2019-9/18/2019): $198,429.30

**Late Charges Due:** $21,913.63

**Late Reporting Fee Due:** $23,000.00

**Misc. Amounts Due:** $12,723.60

**Mandatory Principal Payment Past Due (per Section 9.21 of Loan Agreement)**: $550,000.00

**ATX000238**

## EXHIBIT G

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST AND
## ASSIGNMENT OF LEASES AND RENTS

RECORDING REQUESTED BY AND
WHEN RECORDED RETURN TO:

ATX LENDER 5, LLC
600 Travis, Suite 2800
Houston, Texas 77002
Attention:  Paul Pruett, Esq.

*(Space above this line for Recorder's use)*

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST AND
## ASSIGNMENT OF LEASES AND RENTS

FOR VALUE RECEIVED, **U.S. REAL ESTATE CREDIT HOLDINGS III, LP**, an Irish limited partnership ("Assignor"), assigns, conveys, grants, sets over and transfers to **ATX LENDER 5, LLC**, a Texas limited liability company ("Assignee") all of Assignor's right, title and interest in, to and under or arising out of, and all obligations and liability in connection with, that certain deed of trust described on Exhibit A attached hereto and the other loan documents described on Exhibit A attached hereto ("Deed of Trust and Other Loan Documents");

TOGETHER WITH all of Assignor's right, title and interest in, to and under or arising out of, and all obligations and liability in connection with, all notes and mortgaged property described or referred to in the Deed of Trust and Other Loan Documents, all guarantees of the indebtedness secured by Deed of Trust and Other Loan Documents, all assumptions of the Deed of Trust and Other Loan Documents.

This Assignment of Mortgage/Deed of Trust and Assignment of Leases and Rents (this "Assignment") will be binding on and inure to the benefit of Assignor and Assignee and their respective successors and assigns.

[SIGNATURES APPEAR ON FOLLOWING PAGE(S)]

ATX000239

IN WITNESS WHEREOF, the parties hereto have caused this Assignment to be executed as of the date set forth in the acknowledgements and to be effective as of the _____ day of September, 2019.

**ASSIGNOR**:

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,**
an Irish limited partnership, acting by its
General Partner, U.S. Real Estate Credit
Holdings III GP Limited

By:  **CALMWATER ASSET MANAGEMENT, LLC,**
a Delaware limited liability company,
its Investment Manager

By: _____
Name: _____
Title: _____

**ACKNOWLEDGMENT**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California            )
County of Los Angeles        )

On _____, before me, _____,
                                              (insert name of notary)
Notary Public, personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature_____            (Seal)

ATX000240

**ASSIGNEE**:

**ATX LENDER 5, LLC,**
a Texas limited liability company

By:_____
Name:_____
Title:_____

State of _____          )
County of _____          )

On _____, before me, _____,
personally appeared _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _____ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
NOTARY              PUBLIC              OF              _____
Printed              Name:              _____
My Commission Expires: _____

**EXHIBIT A**
**TO ASSIGNMENT OF MORTGAGE/DEED OF TRUST AND**
**ASSIGNMENT OF LEASES AND RENTS**

1.  Deed of Trust, Security Agreement and Financing Statement dated as of September 21, 2018, executed by 900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC, each a Delaware limited liability company (collectively, "Borrower"), as trustor, to Cyrus N. Ansari, Esq., as trustee, for the benefit of U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership (the "Original Lender"), filed as Instrument No. 2018151772 in the Official Public Records of Travis County, Texas ("Official Records).

2.  Uniform Commercial Code – National Financing Statement – Form UCC-1, showing Borrower, as debtor, and Original Lender, as secured party, filed with the Secretary of State of the State of Delaware under Initial Filing No. 2018 6624163.

3.  Uniform Commercial Code – National Financing Statement – Form UCC-1, showing Borrower, as debtor, and Original Lender, as secured party, filed as Instrument No. 2018151899 in the Official Records.

4.  Assignment of Leases and Rents (World Class – Austin Portfolio) dated as of September 21, 2018, executed by Borrower for the benefit of Original Lender, filed as Instrument No. 2018151773 in the Official Records.

5.  The following loan assignment documents, each dated as of December 13, 2018, unless otherwise set forth below:

    a.  Assignment of Deed of Trust, Security Agreement and Financing Statement from Original Lender, as assignor, to Assignor, as assignee thereunder, filed as Instrument No. 2018192494 in the Official Records on December 14, 2018;

    b.  Assignment of Assignment of Leases from Original Lender, as assignor, to Assignor, as assignee thereunder, filed as Instrument No. 2018192493 in the Official Records on December 14, 2018;

    c.  Uniform Commercial Code – National Financing Statement – Form UCC-3 (Amendment), showing Borrower, as debtor, and Assignor, as secured party, filed with the Secretary of State of the State of Delaware under Initial Filing No. 20188147933; and

    d.  Uniform Commercial Code – National Financing Statement – UCC-3 (Amendment), showing Borrower, as debtor, and Assignor, as secured party, filed as Instrument No. 2018194163 in the Official Records.

[END OF EXHIBIT]

## EXHIBIT H

## FORM OF PURCHASER'S NOTICE TO BORROWER

[INSERT PURCHASER'S LETTERHEAD]

September ___, 2019

900 Cesar Chavez, LLC,
905 Cesar Chavez, LLC,
5th and Red River, LLC,
7400 South Congress, LLC
c/o World Class Capital Group, LLC
401 Congress, 33rd Floor
Austin, Texas 78701
Attention:  Natin "Nate" Paul

900 Cesar Chavez, LLC,
905 Cesar Chavez, LLC,
5th and Red River, LLC,
7400 South Congress, LLC
c/o World Class
814 Lavaca St.
Austin, Texas 78701
Attention:  Natin Paul

900 Cesar Chavez, LLC,
905 Cesar Chavez, LLC,
5th and Red River, LLC,
7400 South Congress, LLC
c/o Cogency Global Inc.
1601 Elm St., Suite 4360
Dallas, Texas 75201

c/o World Class Capital Group, LLC
401 Congress, 33rd Floor
Austin, Texas
Attention:  Nate Paul
Email: npaul@wccapitalgroup.com

c/o World Class Capital Group, LLC
767 Fifth Avenue, 16th Floor
New York, NY 10153
Attention:  Legal Department

Re:    Loan to 900 CESAR CHAVEZ, LLC, 905 CESAR CHAVEZ, LLC, 5TH AND RED RIVER, LLC and 7400 SOUTH CONGRESS, LLC, each a Delaware limited liability company (jointly, severally and collectively, as the context may require, "Borrower") in the original principal amount of $22,932,250.00 evidenced by, among other things, that certain Promissory Note, dated September 21, 2018

Ladies and Gentlemen:

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,** an Irish limited partnership ("Seller") as successor in interest to U.S. Real Estate Credit Holdings III-A, LP, an Irish limited partnership and **ATX LENDER 5, LLC**, a Texas limited liability company ("Purchaser"), hereby notify Borrower that on the date hereof, Seller sold its entire right, title and interest in, and all obligations and liability in connection with, the above referenced loan ("Loan") to Purchaser.  Seller and Purchaser irrevocably and unconditionally authorize and direct Borrower to make each payment of interest, principal, escrows, impounds and all other amounts payable with respect to the Loan payable to the order of:  Purchaser at the following address:

ATX000243

ATX LENDER 5, LLC
[_____]
[_____]
Attention: [_____]

Seller hereby also notifies Borrower that any and all funds currently held and maintained by or on behalf of Seller in any escrow account established pursuant to the terms of any document or agreement evidencing and/or securing the Loan has been or will be transferred and conveyed to Purchaser.

If Borrower makes any payments other than in accordance with this authorization and direction, Borrower will not receive credit for the payment until otherwise properly directed.

Purchaser has assumed any and all Funding Obligation (as defined in the Loan Agreement between Seller and Borrower) under said Loan Agreement and such agreement to assume may be enforced directly by Borrower.  Seller shall have no further obligation for any Funding Obligations.

Borrower should notify Purchaser at the address listed in this notice if Borrower has any questions with respect to this matter.

ATX000244

Thank you very much for your cooperation.

Very truly yours

**ATX LENDER 5, LLC,**
a Texas limited liability company

By:_____
Name:_____
Title:_____


AND

**U.S. REAL ESTATE CREDIT HOLDINGS III, LP,**
an Irish limited partnership, acting by its
General Partner, U.S. Real Estate Credit
Holdings III GP Limited

By:    **CALMWATER ASSET MANAGEMENT, LLC,**
a Delaware limited liability company,
its Investment Manager

By:_____
Name:_____
Title:_____

ATX000245